Exhibit A

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

_____

Grand Strand Water and Sewer Authority,

                                    *Plaintiff*,
                        v.

Burlington Industries, Inc.; Fiber Industries, LLC;
and Sonoco Products Company,

                                    *Defendants*.

C.A. No. 2025-CP-26-_____

**SUMMONS**
(JURY TRIAL DEMANDED)

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this Complaint upon the subscribers at 291 S. Pine Street, Spartanburg, South Carolina 29302, within 30 days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com

mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

December 4, 2025

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

_____

Grand Strand Water and Sewer Authority,

*Plaintiff*,

v.

Burlington Industries, Inc.; Fiber Industries, LLC;
and Sonoco Products Company,

*Defendants*.

C.A. No. 2025-CP-26-_____

**COMPLAINT**
(JURY TRIAL DEMANDED)

Plaintiff, GRAND STRAND WATER AND SEWER AUTHORITY, by and through the undersigned counsel, brings this action against the above-named Defendants for compensatory and punitive damages, injunctive relief, and abatement of a nuisance, and alleges as follows:

## STATEMENT OF THE CASE

1.      Plaintiff, Grand Strand Water and Sewer Authority, brings this action to address Defendants' ongoing contamination of the Great Pee Dee River, Black Creek, and Bull Creek (collectively the "Pee Dee River Watershed"); the Waccamaw River; the Intracoastal Waterway; and Plaintiff's properties with certain toxic per- and polyfluoroalkyl substances ("PFAS"): perfluorooctanoic acid ("PFOA"); perfluorooctanesulfonic acid ("PFOS"); perfluorononanoic acid ("PFNA"); perfluorobutane sulfonate ("PFBS"); perfluorohexane sulfonate ("PFHxS"); and hexafluoropropylene oxide dimer acid ("HFPO-DA" or "GenX Chemicals").

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

2.      Plaintiff is a special purpose district that provides potable water to residents of various counties in South Carolina, including Horry County. The region served by Plaintiff has and continues to experience rapid population growth, particularly in the South Strand and Socastee areas. In order to meet the increasing water demand, Plaintiff must construct a new surface water treatment plant ("SWTP"), raw water intake, and related infrastructure improvements.

3.      Plaintiff is presently designing the new Socastee SWTP and a new raw water intake (hereinafter the "Socastee intake") and pump station to serve the facility. The Socastee intake is to be sited at the confluence of the Intracoastal Waterway and the Waccamaw River. The Socastee SWTP is to be sited roughly one mile from the planned intake location, on what is presently a turf farm owned by Plaintiff.

4.      As Plaintiff has recently discovered, Defendants have discharged and continue to discharge products that contain or degrade to PFOA, PFOS, PFNA, PFBS, PFHxS, and/or GenX Chemicals to the Pee Dee River Watershed, which travel downstream to Plaintiff's water intake on Bull Creek, pass through Plaintiff's water and wastewater treatment systems, and thereby enter the Waccamaw River to contaminate the water supply at the location of the planned Socastee intake. Plaintiff seeks a declaratory judgment, injunctive relief, abatement, damages, and an award of costs, including attorneys' fees, for Defendants' repeated and ongoing PFAS contamination.

5.      Defendants own and/or operate industrial facilities upstream of Plaintiff's water intakes and have in the past and/or currently use products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in their industrial processes. Defendants then discharge wastewater contaminated with these products to surface waters in the Pee Dee River Watershed upstream of Plaintiff's water sources and planned intake.

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

6.      Industrial wastewater from Discharger Defendants' facilities contains high levels of PFAS, which cannot be adequately removed by conventional wastewater treatment processes and are discharged to the Pee Dee River Watershed, which flows downstream to the confluence of the Waccamaw River and the Intracoastal Waterway. As a direct and proximate result of Defendants' actions, Plaintiff has suffered losses to the use and enjoyment of its property rights, as Plaintiff's ability to use its property to treat potable water has already been and will continue to be impaired by Defendants' contamination of Plaintiff's water sources. Plaintiff must design around and respond to the contamination now.

7.      Defendants' PFAS contaminate Plaintiff's water sources at concentrations exceeding what the U.S. Environmental Protection Agency ("EPA") deems unsafe for consumption, and conventional water treatment processes cannot remove them. Instead, Plaintiff requires advanced water treatment technologies to remove, and provide water free from, Defendants' PFAS. Defendants' PFAS contamination has already altered project design decisions and has caused Plaintiff to incur PFAS-related engineering costs.

8.      As a result of Defendants' intentional, willful, wanton, reckless, and/or negligent acts and omissions and the nuisance thereby created, maintained, and continued, Plaintiff has suffered injury to its property rights and resulting damages, including compensatory and consequential damages. Plaintiff is also seeking equitable and injunctive relief requiring Defendants to fund the evaluation, testing, acquisition, installation, operation, and maintenance of water treatment technologies at Plaintiff's Socastee SWTP that will remove Defendants' PFAS from drinking water. In addition, based on the Defendants' intentional, willful, wanton, reckless, malicious, and oppressive misconduct, Plaintiff is seeking the recovery of punitive damages.

3

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## DISCLAIMER

9.     Plaintiff makes no assertion of fact concerning, and brings no cause of action based on, the manufacture, sale, distribution, use, or disposal of PFAS associated with aqueous film forming foam ("AFFF"), whether commercial, Mil-Spec, or other variety. Plaintiff expressly disclaims any causes of action, injury, or damages resulting from the manufacture, sale, distribution, use, or disposal of any AFFF by any Defendant or third-party.

10.     Plaintiff's causes of action against Defendants arise under South Carolina law.

11.      Plaintiff brings no cause of action against, and seeks no relief from, any Defendant under federal law or statute.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to Article V of the Constitution of the State of South Carolina; sections 6-11-1610 and 14-1-80 of the South Carolina Code; and Act No. 337, 1971 S.C. Acts 444.

13.     This Court has personal jurisdiction over all Defendants, consistent with due process and South Carolina's long-arm statute, section 36-2-803 of the South Carolina Code.

14.     Venue is also properly in this Court pursuant to sections 15-7-10 and -30 of the South Carolina Code because the subject of the action is for injuries sustained to Plaintiff's property located in Horry County, and the most substantial part of Defendants' alleged acts or omissions giving rise to Plaintiff's claims occurred in Horry County. *See id.* at § 15-7-30(B) ("If there is more than one defendant, the action may be tried in any county where the action properly may be maintained against one of the defendants pursuant to this section.").

4

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## PARTIES

### I. Plaintiff

15. Plaintiff Grand Strand Water and Sewer Authority is a special purpose district created for the distribution of potable water and provision of sewer services. Act No. 337, 1971 S.C. Acts 444.

16. The Socastee SWTP will be sited on property owned by Plaintiff adjacent to Bay Road in Myrtle Beach, South Carolina, and will rely on water drawn from the Intracoastal Waterway at its confluence with the Waccamaw River, via a submerged raw water intake. Raw water will be pumped via a pump station sited on property owned by Plaintiff just off Chamberlin Road, roughly 1,000 feet inland from the intake.

17. The Socastee SWTP will serve customers in the South Strand and Socastee areas of Horry County.

### II. Defendants

18. Defendant **Burlington Industries, Inc.** ("Burlington") was a Delaware corporation authorized to do business in South Carolina until its dissolution in 2004. On May 13, 2022, the South Carolina Circuit Court appointed Peter McCoy, Jr., a resident of Charleston County, South Carolina, as the receiver for Burlington. *See Mimms v. Burlington Indus., Inc. et al.*, C.A. No. 2021-CP-40-05873, Order Appointing Receiver Over Defendant Burlington Industries, Inc. (Richland Cnty. Ct. of Common Pleas May 13, 2022). Burlington was the owner and operator of an industrial facility located at 670 N. Main Street, Society Hill, South Carolina 29593. The facility is a former textile mill and finishing facility bordering Cedar Creek and the Great Pee Dee River, and it encompasses roughly 234 acres. Over the course of the facility's operations, Defendant used products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals

5

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

in the manufacture of textile products. As part of its processes, Defendant discharged industrial wastewater contaminated with these PFAS from its own wastewater treatment plant to Cedar Creek and the Great Pee Dee River upstream of Bull Creek. Wastewater lagoons and other storage basins at the facility have accumulated PFOA, PFOS, PFNA, PFHxS, PFBS, GenX Chemicals, and/or their precursors for decades. These PFAS overflow to the Great Pee Dee River upstream of the confluence of the Intracoastal Waterway and Waccamaw River. Defendant's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water. Burlington also manufactured and distributed agricultural biosolid products contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to farms and other users throughout the Pee Dee River Watershed upstream of Plaintiff's water intake on Bull Creek. PFAS from Burlington's biosolids have accumulated in the Pee Dee River Watershed, continually flow downstream to the confluence of the Intracoastal Waterway and Waccamaw River, and contaminate Plaintiff's water sources and infringe Plaintiff's property rights.

19.     Defendant **Fiber Industries, LLC ("Darling Fibers")** is a South Carolina limited liability company, and it owns and operates a textile manufacturing facility located at 1000 E. McIver Road, Darlington, South Carolina 29532. There, Darling Fibers uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of textile fibers and fabrics. As part of its processes, the Darlington facility directly discharges industrial wastewater contaminated with products that contain or degrade to these PFAS into Black Creek upstream of the Great Pee Dee River and the confluence of the Intracoastal Waterway and Waccamaw River. Darling Fibers' PFAS resist environmental degradation, flow downstream from

6

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Black Creek, the Great Pee Dee River, and to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

20.     Defendant **Sonoco Products Company ("Sonoco")** is a South Carolina corporation, and it owns and operates an industrial complex at and around 1 N 2nd Street, Hartsville, South Carolina 29550. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of packaging products. As part of its processes, the Sonoco facility directly discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to Black Creek upstream of the confluence of the Intracoastal Waterway and Waccamaw River. The treatment processes employed by Sonoco do not remove PFAS prior to their discharge to Black Creek. Sonoco's PFAS resist environmental degradation, flow downstream from Black Creek, the Great Pee Dee River, and to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

## FACTUAL ALLEGATIONS

I.     **Background and Hazards of PFAS**

21.      PFAS are a large group of man-made chemicals that do not occur naturally in the environment. Due to their strong carbon-fluorine bonds, PFAS are extremely stable, repel both oil and water, and are resistant to heat and chemical reactions. As a result of these properties, PFAS have a wide variety of industrial, commercial, and consumer applications.

22.     The stable carbon-fluorine bonds that make PFAS pervasive in industrial, commercial, and consumer products also result in their persistence in the environment. They are colloquially termed "forever chemicals," as terminal PFAS have no known environmental

7

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

breakdown mechanism, are readily absorbed into biota, and tend to bioaccumulate with repeated exposure.

23.     There are both polymer and non-polymer PFAS. Non-polymer PFAS include substances like PFOA, PFOS, PFHxS, PFNA, PFBS, and HFPO-DA (a/k/a GenX Chemicals). Polymer PFAS include fluoropolymers and side-chain fluorinated polymers that are often the active chemistry in the PFAS-containing products sold and utilized by Defendants.

24.     There are also both terminal PFAS and their precursors. Precursors may undergo environmental degradation that ultimately results in the formation of terminal PFAS—meaning no further degradation occurs under normal environmental conditions. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are all terminal PFAS.

25.     Both polymer and non-polymer PFAS can degrade to terminal PFAS. Generally, terminal PFAS are present in or otherwise form from PFAS products via three primary routes: (1) as a direct byproduct of the manufacturing process; (2) the degradation of precursor PFAS that are byproducts of the manufacturing process; and/or (3) the degradation of polymer PFAS into terminal PFAS and precursor PFAS.

26.     Further, PFAS are manufactured by either electrochemical fluorination ("ECF") or telomerization.

27.     PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination. Therefore, a major source of human exposure to PFAS is through ingestion of contaminated drinking water. Exposure is dose-additive, meaning that exposure to low levels of multiple PFAS, which individually would pose little or no risk, can result in a combined dose capable of causing adverse health effects.

28.     While there are thousands of different PFAS chemicals, current scientific evidence shows that harmful health effects can result from consuming drinking water with any level of PFOA or PFOS, and at certain aggregate levels of PFHxS, PFNA, PFBS, and GenX Chemicals. Depending on the type of PFAS, negative health effects include increased risk of certain types of cancer and adverse impacts on fetal growth and development; reproduction; and on liver, thyroid, immune, cardiovascular, and/or nervous system function.

29.     PFOA and PFOS have been the most widely used PFAS, and they are the most studied by regulators and the scientific community. While some industries voluntarily phased out products containing PFOA and PFOS by 2015, their limited use continues even in the United States. Due to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use.

30.     Products based on PFAS consisting of shorter fluorinated carbon chains were developed to replace "long-chain" PFAS like PFOA and PFOS, and they are now used in industrial applications to confer similar properties and characteristics. These "short-chain" PFAS are still bioaccumulative and environmentally persistent, and some short-chain PFAS products nevertheless still contain PFOA and PFOS and their precursors.  Terminal short-chain PFAS include PFBS and GenX Chemicals.

31.     Based on the science available in 2009, EPA published provisional drinking water health advisories for short-term exposure to PFOA and PFOS.[1] The advisory levels at that time were 400 parts per trillion ("ppt") for PFOA and 200 ppt for PFOS. In the same publication, EPA reported that it conducted sampling of public drinking water in Alabama communities, finding

---

[1] U.S.E.P.A., Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS) (Jan. 8, 2009), *available at* https://www.epa.gov/sites/default/files/2015-09/documents/pfoa-pfos-provisional.pdf.

9

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

PFOA and PFOS levels lower than 40 ppt. It explained, "Based on its current understanding, EPA believes these levels are not of concern and residents may rely upon public water systems."[2]

32.     On May 16, 2016, due to the evolution of science on the health effects of PFOA and PFOS, EPA published lifetime health advisory levels for each chemical in drinking water.[3] Superseding the 2009 provisional levels, the 2016 levels for PFOA and PFOS were 70 ppt, independently or in the aggregate. EPA explained that its new health advisories "identify the concentration of PFOA and PFOS in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure."[4]

33.     EPA's 2016 Health Advisories were based on peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and epidemiological studies of human populations exposed to PFOA and PFOS. These studies indicated that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental defects to fetuses, cancer (testicular, kidney), liver effects, immune effects, thyroid effects, and other adverse effects. But based on its review of the science, EPA stated that its analysis indicated exposure to PFOA and PFOS at or below health advisory levels "will not result in adverse health effects (including cancer and non-cancer) to the general population over a lifetime (or any shorter period) of exposure to these chemicals."[5]

---

[2] *Id.*

[3] Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 33250 (May 25, 2016).

[4] *Id.*

[5] *Id.*

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

34. On June 15, 2022, EPA again updated health advisory levels for PFOA and PFOS on an interim basis, which replaced the 2016 advisory levels.[6] EPA explained that updated human epidemiological data indicated "that the level at which negative health effects could occur are much lower than previously understood when the agency issued its 2016 health advisories for PFOA and PFOS"—finding "associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, development (e.g., decreased birth weight), and cancer."[7] Concerned with the public health implications of its data, EPA issued interim levels pending determination of maximum contaminant levels and maximum contaminant level goals. The interim levels were 0.004 ppt for PFOA and 0.02 ppt for PFOS.

35. Simultaneously, EPA also issued health advisories for the first time covering PFBS and GenX Chemicals. EPA reported that "GenX Chemicals have been linked to health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer."[8] For PFBS, it noted studies indicating health effects on the thyroid, reproductive system, development, and kidney. Based on its 2021 toxicity studies for these chemicals, EPA released final health advisories for each: GenX Chemicals at 10 ppt and PFBS at 2,000 ppt.

36. In March of 2023, EPA issued proposed maximum contaminant levels ("MCLs") and maximum contaminant level goals ("MCLGs") for PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals.[9] An MCLG is the maximum level of a contaminant in drinking water at which

---

[6] Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances, 87 Fed. Reg. 36848 (June 21, 2022).

[7] *Id.*

[8] *Id.*

[9] PFAS Nat'l Primary Drinking Water Regulation Rulemaking, 88 Fed. Reg. 18638 (Mar. 29, 2023) (to be codified at 40 C.F.R. pt. 141, 142).

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

no known or anticipated adverse effect on the health of persons would occur, allowing an adequate margin of safety. An MCL is the maximum allowable level of a contaminant that may be delivered to any user of a public water system and is based on the feasibility of existing technology to detect PFAS at a threshold level.

37.     At that time, EPA announced that, "[f]ollowing a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either chemical is considered safe."[10] Therefore, it proposed MCLG levels for both chemicals at zero ppt. Enforceable MCL levels for each chemical were proposed at 4 ppt. According to EPA, "[a]ny exceedance of this limit requires action to protect public health, regardless of any mixture in which they are found."[11]

38.     Due to their toxic effects, dose additivity, and presence in drinking water, EPA proposed a hazard index approach covering mixtures of PFHxS, PFNA, PFBS, and GenX Chemicals. The hazard index is the sum of each PFAS's "hazard quotient." Hazard quotients are first calculated by dividing the applicable PFAS's "exposure metric" (i.e., concentration in drinking water) by its "health reference value" (PFHxS: 9 ppt; GenX Chemicals: 10 ppt; PFNA: 10 ppt; PFBS: 2,000 ppt). If the sum of each's hazard quotient is below 1.0, then it "represents a level at which no known or anticipated adverse effects on the health of persons is expected to occur

---

[10] *Id.*

[11] *Id.*

and which allows for an adequate margin of safety."[12] If greater than 1.0, then "potential risk is indicated."[13]

39.     EPA stated that, once its proposed MCLs became final, it would "save thousands of lives and prevent tens of thousands of avoidable illnesses."[14]

40.     EPA finalized its proposed MCLs and MCLGs on April 10, 2024.[15] In accompanying publications, EPA declared, "The science is clear: exposure to these six PFAS is linked to significant health risks" that include "certain cancers and heart impacts in adults, and immune and developmental impacts in infants and children."[16]

41.     The final regulation solidifies MCLs of 4.0 ppt for PFOA and PFOS and 10.0 ppt for PFNA, PFHxS, and GenX Chemicals, including a Hazard Index that covers mixtures of PFBS with PFNA, PFHxS, and GenX Chemicals. It also enshrines MCLGs of zero ppt for PFOA and PFOS, which EPA states "reflects the latest science showing that there is no level of exposure to

---

[12] *Id.*

[13] *Id.*

[14] U.S.E.P.A., *EPA Releases Annual Report Showing Steady Progress to Protect Communities from PFAS Pollution* (Dec. 14, 2023), *available at* https://www.epa.gov/newsreleases/epa-releases-annual-report-showing-steady-progress-protect-communities-pfas-pollution.

[15] U.S.E.P.A., PFAS Nat'l Primary Drinking Water Regulation Rulemaking (Apr. 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_prepubfederalregisternotice_4.8.24.pdf (pre-publication version).

[16] U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024); *see also* U.S.E.P.A., Final PFAS Nat'l Drinking Water Regulation Landing Page, http://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (providing links to EPA PFAS regulation publications).

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

these two PFAS without risk of health impacts."[17] According to EPA, "[t]he more you reduce your exposure to PFAS, the more you reduce your risk."[18]

42. EPA's final regulations mandate several new obligations regarding PFAS, including the implementation of solutions to reduce regulated PFAS concentrations in the drinking water that Plaintiff distributes, maintenance of ongoing compliance monitoring, and informing the public of PFAS levels in the water and of any violations.

43. EPA's April 10, 2024 regulation imposed a deadline of 2027 for Plaintiff to begin conducting and reporting regular PFAS monitoring and a deadline of 2029 for Plaintiff to comply with all MCLs.

44. On May 14, 2025, EPA affirmed its intention to maintain the April 10, 2024 regulation MCLs and MCLGs for PFOA and PFOS, but it announced plans to propose extending the MCL compliance deadline by two years, to 2031, "[t]o allow drinking water systems more time to develop plans for addressing PFOA and PFOS where they are found and implement solutions."[19] Although EPA announced its intention to rescind the MCLs concerning PFNA, PFHxS, and GenX Chemicals, as well as the Hazard Index covering mixtures of PFBS, PFNA, PFHxS, and GenX Chemicals, it did so "to ensure that the determinations and any resulting drinking water regulation follow the legal process laid out in the Safe Drinking Water Act," and EPA did not retract its prior statement that the science shows that exposure to these types of PFAS

---

[17] U.S.E.P.A., *Presentation: Overview EPA PFAS NPDWR* (Apr. 10, 2024).

[18] U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024).

[19] U.S.E.P.A., *EPA Announces It Will Keep Maximum Contaminant Levels for PFOA, PFOS* (May 14, 2025), *available at* https://www.epa.gov/newsreleases/epa-announces-it-will-keep-maximum-contaminant-levels-pfoa-pfos [hereinafter *EPA 2025 MCL Announcement*].

14

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

is linked to significant health risks.[20] At the same time, EPA expressed the importance of protecting public health and "ensur[ing] that polluters are held responsible."[21]

45.    EPA's May 2025 announcement stated that "EPA plans to issue a proposed rule this fall and finalize this rule in the Spring of 2026."[22] Under the April 10, 2024 final National Primary Drinking Water Regulation, Plaintiff must begin conducting and reporting regular PFAS monitoring by 2027, and Plaintiff must comply with all MCLs by 2029. EPA's planned rule would extend Plaintiff's MCL compliance deadline for PFOA and PFOS from 2029 to 2031.

## II.    Contamination of the Waccamaw River and the Intracoastal Waterway with PFAS

46.    The Socastee SWTP will use a submerged raw water intake located in the Intracoastal Waterway at its confluence with the Waccamaw River.

47.    The Intracoastal Waterway and Waccamaw River are hydrologically connected to the Great Pee Dee River and Black Creek (i.e., the Pee Dee River Watershed)—into which Defendants release PFAS. Near Bucksport, South Carolina, Bull Creek branches off the main stem of the Great Pee Dee River and flows south, where it connects with the Waccamaw River.

48.    Defendants' industrial facilities operate in the Pee Dee River Watershed upstream of Bull Creek.

49.    PFAS sampling of the Intracoastal Waterway, Waccamaw River, Bull Creek, Great Pee Dee River, and Black Creek confirms the presence of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals throughout these bodies of water. These PFAS flow downstream from where Defendants release them into the environment to contaminate the surface waters at the location

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

selected for Plaintiff's Socastee intake at concentrations exceeding EPA's MCLs and MCLGs. Indeed, sampling near the confluence of the Intracoastal Waterway and Waccamaw River confirms the presence of PFOA and PFOS at concentrations higher than what EPA deems unsafe for consumption. Defendants are the source.

50.     Defendants are, or were, owners and operators of manufacturing plants and related industrial facilities in the Pee Dee River Watershed. In their industrial processes, Defendants utilize, or utilized, products that contain or degrade to PFOS, PFOA, PFHxS, PFNA, PFBS, and/or GenX Chemicals. Defendants' industrial processes generate industrial wastewater containing these PFAS, which Discharger Defendants discharge to surface waters upstream of the confluence of the Intracoastal Waterway and Waccamaw River.

51.     As part of their industrial processes, Defendants Burlington, Darling Fibers, and Sonoco in the past discharged and/or currently discharge PFAS-contaminated wastewater directly to surface waters upstream of the confluence of the Intracoastal Waterway and Waccamaw River, as follows:

| Defendant(s) | Surface Waters |
|---|---|
| Burlington | Great Pee Dee River |
| Darling Fibers | Black Creek |
| Sonoco | Black Creek |

52.     The Intracoastal Waterway and Waccamaw River are tidally influenced. Flows in these waterways can thus move northward up the Waccamaw River and eastward in the Intracoastal Waterway, towards the Little River Inlet. Hence, the PFAS discharged by Defendants to the Pee Dee River Watershed are transported down Bull Creek and then flow northward up the

16

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Waccamaw and towards its confluence with the Intracoastal Waterway, thereby contaminating the surface waters at the location of Plaintiff's Socastee intake.

53.     In addition, Defendants' PFAS also transport to the confluence of the Waccamaw River and Intracoastal Waterway by passing through Plaintiff's water treatment and wastewater treatment plants.

54.     Plaintiff's Bull Creek SWTP draws raw water from Bull Creek and utilizes conventional water treatment technologies, including coagulation, flocculation, sedimentation, filtration, and chlorination—none of which remove Defendants' PFAS from water.

55.     Plaintiff also owns and operates the Bucksport Regional WWTP and the Conway WWTP, both of which discharge treated effluent to the Waccamaw River at points south and north, respectively, of the River's confluence with the Intracoastal Waterway.

56.     Neither the Bucksport Regional nor the Conway WWTPs have industrial users. Instead, both provide sewer services primarily to residential and commercial customers that use potable water distributed from the Bull Creek SWTP.

57.     Because the Bull Creek SWTP cannot remove Defendants' PFAS from the water Plaintiff draws from Bull Creek, the water that sewer customers send to the Bucksport and Conway WWTPs remains contaminated with Defendants' PFAS.

58.     Like the Bull Creek SWTP, the Bucksport and Conway WWTPs are not equipped to address Defendants' PFAS. Both utilize conventional wastewater treatment methods, including screening and grit removal, aeration, clarification, chlorination, and UV disinfection—none of which remove Defendants' PFAS from the effluent. Once the Bucksport and Conway WWTPs treat the wastewater, both discharge treated effluent that consequently remains contaminated with Defendants' PFAS to the Waccamaw River upstream of the Intracoastal Waterway confluence.

17

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

59.     Plaintiff's Socastee SWTP will draw raw water from the Intracoastal Waterway at its confluence with the Waccamaw River for treatment and distribution to thousands of customers in the South Strand and Socastee areas of Horry County. But because Defendants' PFAS resist environmental degradation and conventional treatment methods, the chemicals contaminate the waters of the Intracoastal Waterway and Waccamaw River at the selected location of Plaintiff's Socastee intake and thereby impair Plaintiff's ability to use its property for the purposes of water treatment. Rather than utilizing conventional water treatment methods, Plaintiff must implement advanced water treatment technologies at the Socastee SWTP, which are more difficult and costly to build and operate, in order to remove Defendants' PFAS from the water treated by this facility. But for Defendants' contamination of the Intracoastal Waterway and Waccamaw River with their PFAS, Plaintiff's Socastee SWTP would not require such additional advanced treatment technologies.

60.     Defendants have so thoroughly polluted the Intracoastal Waterway and lower reaches of the Waccamaw River and Pee Dee River Watershed that any viable alternative location for the new raw water intake and SWTP would likewise be impacted by Defendants' PFAS contamination. Simply selecting a different site for these improvements would not solve the problem.

61.     All Defendants knew or should have known that the conventional wastewater treatment technologies they used cannot remove PFAS from wastewater. All Defendants also knew or should have known that their treated wastewater contaminates surface waters and the water Plaintiff draws for its customers.

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

62.     Defendants knew or should have known that conventional treatment technologies used by public water systems like Plaintiff's cannot remove Defendants' PFAS from water that is treated and distributed as potable drinking water.

63.     All Defendants have long known that PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are environmentally persistent, bioaccumulative, dose-additive, and toxic; that they cannot be removed by conventional water and wastewater treatment methods; and that there is no safe dose for PFOA and PFOS.

## III.     Defendants Have Harmed Plaintiff and Plaintiff's Community.

64.     Defendants have, for decades, discharged PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors into the Pee Dee River Watershed, which has caused, and continues to cause, contamination of these waters and downstream waters with PFAS concentrations exceeding EPA's current health advisories, MCLGs, and MCLs. Indeed, absent advanced treatment technologies, Plaintiff cannot use its property and exercise its property rights to provide water that is either free of all PFOA and PFOS, or compliant with EPA's MCLs.

65.     Defendants' conduct has proximately caused the contamination of the Pee Dee River Watershed, the Waccamaw River, and the Intracoastal Waterway with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals—including PFOA and PFOS at concentrations above EPA's MCLGs and MCLs.

66.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in acts and omissions that have proximately caused unreasonable interference with Plaintiff's right to use and enjoy its properties and its right to use the waters of the Intracoastal Waterway and Waccamaw River, and have caused Plaintiff additional past, present, and future injury to property.

19

67. The pervasive PFAS contamination of the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway caused by Defendants directly prevents Plaintiff from utilizing only conventional water treatment technologies at the Socastee SWTP. Defendants' PFAS contamination instead forces Plaintiff to implement advanced treatment technologies capable of removing PFAS that are more onerous to construct, operate, and maintain. Defendants' PFAS contamination has already significantly altered design decisions for this project, and Plaintiff has presently, and will continue to, incur PFAS-related engineering costs.

68. Despite knowing that there is no safe dose for PFOA or PFOS, and that PFHxS, PFNA, PFBS, and GenX Chemicals are hazardous to human health, Defendants discharged industrial wastewater contaminated with these chemicals into the Pee Dee River Watershed, which they knew or should have known contaminated Plaintiff's water sources and interfered with Plaintiff's property rights.

## FIRST CAUSE OF ACTION

### Private Nuisance

69. Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

70. Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water treatment and distribution system for residents of Horry County and other counties. It uses its properties for those purposes, including the construction of the Socastee SWTP and a raw water intake, raw water pump station, and related infrastructure to withdraw raw water from the Intracoastal Waterway and treat and distribute it as potable drinking water for customers in Horry County.

71. Through the conduct described herein, Defendants created, contributed to, and/or maintained a nuisance; that is, the contamination of the Pee Dee River Watershed, the Waccamaw

20

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

River, and the Intracoastal Waterway with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals at concentrations exceeding those EPA deems unsafe for consumption.

72.     Due to Defendants' contamination, Plaintiff cannot provide water to its customers without PFAS, or even at PFAS concentrations that comply with EPA's MCLs, absent advanced water treatment technology.

73.     Defendants' contamination caused, contributed to, and/or maintains a nuisance that substantially and unreasonably interferes with Plaintiff's use and enjoyment of its properties, interferes with Plaintiff's properties and its property rights, damages Plaintiff's properties, and causes Plaintiff additional inconvenience, annoyance, and harm.

74.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights.

75.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages from Defendants' contamination of the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway, including loss in value, the cost of removing Defendants' PFAS, PFAS-related engineering costs, and other damages to be proved at trial.

76.     Defendants' PFAS contamination of Plaintiff's water sources renders Plaintiff unable to use its property to construct and operate a SWTP equipped with only conventional water treatment technologies. Instead, any SWTP that Plaintiff implements must utilize advanced water treatment technologies that are capable of removing Defendants' PFAS. Defendants' interference with Plaintiff's use of its property for water treatment is direct, current, and concrete, and it has

21

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

and will continue to cause Plaintiff to incur PFAS-related engineering costs that it would not have incurred if Plaintiff was able to build a conventional SWTP that was not forced to address PFAS.

77.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

78.     The ongoing contamination of the Intracoastal Waterway and the resulting interference with Plaintiff's properties constitutes a continuing irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to fund the measures necessary to prevent these PFAS from continuing to interfere with Plaintiff's use and enjoyment of its land and its use of the Intracoastal Waterway to supply potable water to its customers.

79.     Defendants' interference with Plaintiff's use of its properties can be abated by funding the evaluation, testing, acquisition, installation, operation, and maintenance of advanced water treatment technology at Plaintiff's Socastee SWTP to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

80.     Defendants are jointly and severally liable to Plaintiff for all damages resulting from this nuisance, and the costs of its abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

<u>**SECOND CAUSE OF ACTION**</u>

**Public Nuisance**

81.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

82.     Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water treatment and distribution system for residents of Horry County and other counties. It uses its properties for those purposes, including

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

the construction of the Socastee SWTP and a raw water intake, raw water pump station, and related infrastructure to withdraw raw water from the Intracoastal Waterway and treat and distribute it as potable drinking water for customers in Horry County.

83.    Plaintiff's customers use the water Plaintiff provides for many purposes, including drinking, cooking, bathing, cleaning, washing, and watering plants and gardens.

84.    Plaintiff's customers, and indeed all residents in Plaintiff's community, have a right to water that is reasonably pure and safe for their use—and thus free from contamination by Defendants' PFOA, PFOS, PFNA, PFHxS, PFBS, and GenX Chemicals. Defendants' contamination unreasonably interferes with, disrupts, and threatens public health, safety, and order. Indeed, EPA makes clear that there is no safe dose for consuming PFOA and PFOS.

85.    Plaintiff has sustained special injuries as a result of Defendants' public nuisance, including but not limited to, the lost use of its properties; the inability, absent advanced treatment technologies, to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by EPA; expenses associated with the evaluation, testing, acquisition, installation, operation, and maintenance of required treatment technologies to remove unsafe concentrations of these PFAS from water; expenses incurred in discovering and identifying sources of Defendants' contamination; interference with Plaintiff's right to use the Intracoastal Waterway; and interference with Plaintiff's right to use its properties to construct and operate a SWTP and related water treatment and distribution infrastructure.

86.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer special injury and damages related to Defendants' contamination of the Pee Dee River Watershed, the Waccamaw River, and the Intracoastal Waterway.

23

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

87. Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights and endangers the health of Plaintiff's customers, consumers of Plaintiff's drinking water, and Plaintiff's community.

88. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages from Defendants' contamination of the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway, including loss in value, the cost of removing Defendants' PFAS, PFAS-related engineering costs, and other damages to be proved at trial.

89. In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

90. Defendants' ongoing contamination constitutes a continuing threat to public health, safety, and order, and it constitutes irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to fund the measures necessary to prevent these PFAS from continuing to threaten public health and safety and ensure that Plaintiff's customers and residents of Plaintiff's community receive water free from PFAS.

91. Defendants' contamination of potable water with unsafe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals can be abated by requiring Defendants to fund the evaluation, testing, acquisition, installation, operation, and maintenance of advanced water treatment technology at Plaintiff's Socastee SWTP to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

92.    Defendants are jointly and severally liable to Plaintiff for all damages resulting from this nuisance, the costs of abatement in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

### THIRD CAUSE OF ACTION

### Negligence, Gross Negligence, and/or Recklessness

93.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

94.    Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to avoid causing an unreasonable risk of harm to others, which includes preventing the discharge of these PFAS into surface waters upstream of Plaintiff's SWTP, thereby contaminating Plaintiff's water sources and interfering with Plaintiff's property rights.

95.    Defendants knew or should have known that the PFAS they discharged were environmentally persistent, bioaccumulative, dose-additive, and toxic; that conventional wastewater treatment technologies they utilized could not remove their PFAS; and that surface waters—including the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway—were vulnerable to the contamination that has taken and now takes place.

96.    Defendants nonetheless negligently, recklessly, wantonly, and/or willfully breached their duty in causing products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to escape their premises and contaminate the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway, thereby contaminating Plaintiff's water sources and interfering with Plaintiff's property rights.

97.    Additionally, Defendant Burlington had a duty to use due care in the manufacturing, handling, control, disposal, labeling, and instructing for the use and disposal of

25

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

biosolid products that contain PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to ensure the proper use of these products and prevent contamination of surface waters.

98. By continually supplying biosolid products without providing warnings, proper instructions, or direction on the dangers of these PFAS and their properties, or otherwise preventing their contamination of surface waters, Burlington negligently, recklessly, wantonly, and/or willfully created the risk that its PFAS would contaminate the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway, thereby contaminating Plaintiff's water sources and interfering with Plaintiff's property rights.

99. Because Burlington created the risk of harm from PFAS-contaminated water, it had a duty to ensure that users of its biosolid products did not allow PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to escape its users' premises and contaminate the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway. Burlington also had a duty to warn others, including Plaintiff, of the danger presented by water contaminated with its PFAS.

100. Burlington negligently, recklessly, wantonly, and willfully breached its duty by failing to prevent the discharge of these PFAS from its biosolid products into the Pee Dee River Watershed, thereby contaminating Plaintiff's water sources and interfering with Plaintiff's property rights, and by failing to warn Plaintiff of the danger presented by water contaminated by its PFAS.

101. As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, damages from Defendants' contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including but not limited to loss in property value; the costs of removing Defendants'

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals; the costs of evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Defendants' PFAS; and other damages to be proved at trial.

102. Defendants are jointly and severally liable to Plaintiff for all damages resulting from their conduct, practices, actions, omissions, and inactions, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

### FOURTH CAUSE OF ACTION

### Strict Products Liability – Ultrahazardous Activity
### (Burlington)

103. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

104. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

105. Burlington manufactured, handled, sold, and distributed biosolid products containing or degrading to these PFAS chemicals to agricultural and/or other users, knowing that these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water sources and require Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

106. Burlington knew that these PFAS chemicals were environmentally persistent, bioaccumulative, toxic, and dose-additive; and Burlington knew that there was no safe dose of PFOA or PFOS.

27

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

107.     Burlington knew or expected that these hazardous PFAS that it was manufacturing, handling, selling, and distributing would reach Plaintiff's water sources and the location of Plaintiff's Socastee SWTP and related infrastructure projects while in essentially the same condition as when they left Burlington's hands.

108.     Burlington manufactured, handled, sold, and distributed its biosolid products that were dangerous and unsafe for the uses and purposes for which they were intended, despite knowing the consequences of the use and of, and exposure to, its products.

109.     Burlington and/or its agents were responsible for the unreasonably dangerous products that it sold and distributed, and Burlington and received financial benefits from their sales and distribution.

110.     As a direct and proximate result of Burlington's ultrahazardous activities, its PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

111.     As a direct, proximate, and foreseeable result of Burlington's ultrahazardous activities, Plaintiff has suffered, and will continue to suffer, damages from Burlington's contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including loss in property value; the costs of removing Burlington's PFAS; the costs of evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Burlington's PFAS; and other damages to be proved at trial.

112.     Burlington committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice. Burlington's conduct was performed to

28

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

promote sales of their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in conscious disregard of the probable dangerous consequences of their conduct and the reasonably foreseeable impacts on public health and property.

### FIFTH CAUSE OF ACTION

#### Strict Products Liability – Design Defect
#### (Burlington)

113. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

114. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

115. Burlington knew that agricultural users would purchase and use its biosolid products containing these PFAS and their precursors without inspection for defects.

116. Burlington's biosolid products containing or degrading to these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water sources and require Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

117. Burlington's biosolid products containing these PFAS and their precursors were used in a reasonably foreseeable manner and without substantial change in their condition.

118. Burlington knew that the use of its biosolid products in their intended manner would result in PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals damaging Plaintiff's water sources and Plaintiff's SWTPs and forcing Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

29

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

119.    Burlington's biosolid products were and are defective in design and unreasonably dangerous for their intended use because:

(a)     PFAS resist environmental degradation;

(b)     PFAS leach from soil to groundwater, are highly mobile and water soluble, making groundwater and surface water vulnerable to contamination;

(c)     Applying PFAS-contaminated biosolids to soil near surface waters exposes surface waters to PFAS contamination via overland and groundwater flow;

(d)     PFAS contamination in drinking water poses significant threats to public health and property; indeed, there is no safe dose of PFOA or PFOS in drinking water;

(e)     Burlington failed to conduct and/or failed to disclose reasonable, appropriate, and/or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of PFAS; and

(f)     There are and were safe or safer feasible alternatives to PFAS-contaminated biosolids that Burlington could have employed in its products.

120.    Burlington's products containing or degrading to these PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals were and are dangerous beyond that which was and is contemplated by the ordinary consumer.

121.    The foreseeable risk of harm to public health and property posed by Burlington's products containing these PFAS outweighed and outweigh the utility of such products and the cost to Burlington of reducing or eliminating those risks.

122.    A reasonable product manufacturer knew or should have known of the significant dangers posed by Burlington's products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

30

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

123.    As a direct and proximate result of the sale and application of Burlington's defective and unsafe biosolid products, these PFAS have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

124.    As a direct, proximate, and foreseeable result of the sale and application of Burlington's defective and unsafe biosolid products, Plaintiff has suffered, and will continue to suffer, damages from Burlington's contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including loss in property value; the costs of removing Burlington's PFAS; the costs of  evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Burlington's PFAS; and other damages to be proved at trial.

125.    Burlington committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice. Burlington's conduct was performed to promote sales of their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in conscious disregard of the probable dangerous consequences of their conduct and the reasonably foreseeable impacts on public health and property.

## SIXTH CAUSE OF ACTION

### Strict Products Liability – Failure to Warn
### (Burlington)

126.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

127.    Burlington manufactured, formulated, promoted, marketed, and/or distributed biosolid products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

128.    Burlington's biosolid products were used by agricultural users in a reasonably foreseeable manner and without substantial change in the condition of such products, and Burlington knew that agricultural users purchased and used its products without inspection for defects.

129.    Burlington knew or should have known that the use of its biosolid products would result in these PFAS being discharged to surface waters, and thereby entering and contaminating Plaintiff's water sources and requiring Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

130.    Burlington knew that these PFAS in its biosolid products were environmentally persistent and bioaccumulative, that use of its biosolids would cause PFAS to accumulate in soil and groundwater, and that its PFAS would infiltrate surface waters that Plaintiff relies on to supply potable water to the public—making Burlington's biosolid products unreasonably dangerous.

131.    Despite the known and/or foreseeable risk of contaminating potable water sources and Plaintiff's properties, Burlington failed to provide adequate warnings to its customers and other users or to take any other precautionary measures to mitigate those hazards.

132.    Burlington failed to adequately describe such dangers or provide precautionary statements regarding such hazards, and it failed to provide instruction or direction on the proper use and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS,

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

and/or GenX Chemicals in the labeling of such products. As a result of these failures, Burlington's biosolid products were sold and distributed in an unreasonably dangerous and defective condition.

133.    As a direct and proximate result of Burlington's failure to warn of the dangers and hazards posed by its biosolid products, PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

134.    As a direct, proximate, and foreseeable result of Burlington's conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, damages from Burlington's contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including loss in property value; the cost of removing Burlington's PFAS; the costs of evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Burlington's PFAS; and other damages to be proved at trial.

135.    Burlington committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice. Burlington's conduct was performed to promote sales of their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in conscious disregard of the probable dangerous consequences of their conduct and the reasonably foreseeable impacts on public health and property.

<u>**SEVENTH CAUSE OF ACTION**</u>

**Breach of Implied Warranties**
**(Burlington)**

136.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

137.    Burlington manufactured, sold, and distributed its biosolid products to be used in ordinary agricultural applications with knowledge of those applications.

138.    Burlington's biosolid products include PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors, and Burlington knew or had reason to know that such biosolids were not fit for the known and ordinary uses on agricultural lands.

139.    Burlington knew that agricultural users of its biosolid products would apply its biosolids to lands nearby or abutting surface waters in the Pee Dee River Watershed, causing Burlington's PFAS to infiltrate these surface waters.

140.    Burlington knew that these PFAS chemicals are environmentally persistent, bioaccumulative, toxic, and dose-additive, and Burlington knew that there is no safe dose of PFOA or PFOS.

141.    Burlington breached applicable implied warranties, and as a result, Burlington's PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

142.    As a direct, proximate, and foreseeable result of Burlington's breach of implied warranties, Plaintiff has suffered, and will continue to suffer, damages from Burlington's contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including loss in property value; the cost of removing Burlington's PFAS; the costs of evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Burlington's PFAS; and other damages to be proved at trial. Plaintiff is entitled to damages in an amount that will address its damages caused by Burlington's breaches of implied warranties.

34

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands trial by jury, and respectfully requests that the Court grant the following relief where available:

(a)      Enter a judgment and decree against all Defendants, jointly and severally, requiring them to abate the nuisance they have caused, created, and maintained;

(b)      Enter a judgment and decree against all Defendants, jointly and severally, requiring them to remedy the contamination of Plaintiff's water supply with their PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals by funding the evaluation, testing, acquisition, installation, operation, and maintenance of treatment technology capable of removing them;

(c)      Enter a judgment against all Defendants, jointly and severally, for past, present, and future compensatory damages in such amounts as the evidence shows Plaintiff to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages, as applicable, in an amount sufficient to punish and penalize Defendants, and to deter them from repeating their wrongful conduct, and all costs; and

(d)      Award such other relief and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com

ELECTRONICALLY FILED - 2025 Dec 04 5:00 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

December 4, 2025

ELECTRONICALLY FILED - 2025 Dec 22 10:15 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN RE:
PFAS LITIGATION COORDINATED DOCKET

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

C.A. No. 2025-CP-26-09305

Grand Strand Water and Sewer Authority,

Plaintiff,

v.

Burlington Industries, Inc.; Fiber Industries, LLC; and Sonoco Products Company,

Defendants.

**ACCEPTANCE OF SERVICE
ON BEHALF OF
SONOCO PRODUCTS COMPANY**

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Summons and Complaint in the above captioned matter on behalf of Defendant Sonoco Products Company, effective this 19th day of December 2025, with no further service on Sonoco Products Company being necessary.

_____
Robert Y. Knowlton
HAYNSWORTH SINKLER BOYD, PA
PO Box 11889
Columbia, SC 29211
803-540-7843
bknowlton@hsblawfirm.com

*Counsel for Sonoco Products Company*

## AFFIDAVIT OF SERVICE

**State of South Carolina**                **County of Horry**                **Common Pleas Court**

Case Number: 2025-CP-26-09305

Plaintiff:
**Grand Strand Water and Sewer Authority**

vs.

Defendant:
**Burlington Industries, Inc.; Fiber Industries, LLC; and Sonoco Products Company**

Received by FALCON EXPRESS SERVICES, LLC on the 17th day of December, 2025 at 9:28 am to be served on **Fiber Industries, LLC c/o Corporation Service Company as Registered Agent, 100 Coastal Drive, Suite 210, Charleston, SC 29492.**

I, Margaret B. Buchanan, being duly sworn, depose and say that on the **17th day of December, 2025** at **3:38 pm, I:**

served a **CORPORATION** by delivering a true copy of the **LETTER, SUMMONS and COMPLAINT** to: **Corporation Service Company** as **Registered Agent** for **Fiber Industries, LLC**, accepted by **Andrew Mingledorff** as **Law Clerk** at the address of: **100 Coastal Drive, Suite 210, Charleston, SC 29492**, and informed said person of the contents therein, in compliance with state statutes.

Any and all physical description details are approximations.

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the __21__ day of __December__, __2025__ by the affiant who is personally known to me.

_____
NOTARY PUBLIC
My Commission Expires: __8/9/2034__

**Margaret B. Buchanan**
Process Server

**FALCON EXPRESS SERVICES, LLC**
**(843) 577-9696**

Our Job Serial Number: FES-2025012517



Copyright © 1992-2025 DreamBuilt Software, LLC. - Process Server's Toolbox V9.0e

ELECTRONICALLY FILED - 2025 Dec 22 11:27 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

_____

Grand Strand Water and Sewer Authority,

        *Plaintiff*,

      v.

AGC Chemicals Americas, Inc.; Aladdin Manufacturing Corporation; Archroma U.S., Inc.; Arkema, Inc.; Burlington Industries, Inc.; Clariant Corporation; Corteva, Inc.; Daikin America, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; DuPont de Nemours, Inc.; EIDP, Inc.; Elevate Textiles, Inc.; Fiber Industries, LLC; Huntsman International, LLC; International Paper Company; INV Performance Surfaces, LLC; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc.; Nan Ya Plastics Corporation, America; PRET Advanced Materials, LLC; Red Rock Disposal, LLC; Sampson County Disposal, LLC; Sonoco Products Company; Syensqo Specialty Polymers USA, LLC (f/k/a Solvay Specialty Polymers USA, LLC); The Chemours Company; and WestRock CP, LLC,

        *Defendants*.

C.A. No. 2025-CP-26-09305

**AMENDED SUMMONS**
(JURY TRIAL DEMANDED)

TO THE DEFENDANTS ABOVE-NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Amended Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this Amended Complaint upon the subscribers at 291 S. Pine Street, Spartanburg, South Carolina 29302, within 30 days after service hereof, exclusive of the day of such service, and if you fail to

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

answer the Amended Complaint, judgment by default will be rendered against you for the relief demanded in the Amended Complaint.

Respectfully submitted,

*/s/ John B. White, Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

December 29, 2025

2

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

STATE OF SOUTH CAROLINA
COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS
FIFTEENTH JUDICIAL CIRCUIT

IN RE:
PFAS LITIGATION COORDINATED DOCKET

_____

Grand Strand Water and Sewer Authority,

*Plaintiff*,

v.

AGC Chemicals Americas, Inc.; Aladdin Manufacturing Corporation; Archroma U.S., Inc.; Arkema, Inc.; Burlington Industries, Inc.; Clariant Corporation; Corteva, Inc.; Daikin America, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; DuPont de Nemours, Inc.; EIDP, Inc.; Elevate Textiles, Inc.; Fiber Industries, LLC; Huntsman International, LLC; International Paper Company; INV Performance Surfaces, LLC; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc.; Nan Ya Plastics Corporation, America; PRET Advanced Materials, LLC; Red Rock Disposal, LLC; Sampson County Disposal, LLC; Sonoco Products Company; Syensqo Specialty Polymers USA, LLC (f/k/a Solvay Specialty Polymers USA, LLC); The Chemours Company; and WestRock CP, LLC,

*Defendants*.

C.A. No. 2025-CP-26-09305

**AMENDED COMPLAINT**
(JURY TRIAL DEMANDED)

Plaintiff, GRAND STRAND WATER AND SEWER AUTHORITY, by and through the undersigned counsel, brings this action against the above-named Defendants for compensatory and punitive damages, injunctive relief, and abatement of a nuisance, and alleges as follows:

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

**STATEMENT OF THE CASE**

1.    Plaintiff, Grand Strand Water and Sewer Authority, brings this action to address Defendants' ongoing contamination of the Great Pee Dee River, Lynches River, Lumber River, Little Pee Dee River, Lynches Lake Swamp, Black Creek, and Bull Creek (collectively the "Pee Dee River Watershed"); the Waccamaw River; the Intracoastal Waterway; and Plaintiff's properties with certain toxic per- and polyfluoroalkyl substances ("PFAS"): perfluorooctanoic acid ("PFOA"); perfluorooctanesulfonic acid ("PFOS"); perfluorononanoic acid ("PFNA"); perfluorobutane sulfonate ("PFBS"); perfluorohexane sulfonate ("PFHxS"); and hexafluoropropylene oxide dimer acid ("HFPO-DA" or "GenX Chemicals").

2.    Plaintiff is a special purpose district that provides potable water to residents of various counties in South Carolina, including Horry County. The region served by Plaintiff has and continues to experience rapid population growth, particularly in the South Strand and Socastee areas. In order to meet the increasing water demand, Plaintiff must construct a new surface water treatment plant ("SWTP"), raw water intake, and related infrastructure improvements.

3.    Plaintiff is presently designing the new Socastee SWTP and a new raw water intake (hereinafter the "Socastee intake") and pump station to serve the facility. The Socastee intake is to be sited at the confluence of the Intracoastal Waterway and the Waccamaw River. The Socastee SWTP is to be sited roughly one mile from the planned intake location, on what is presently a turf farm owned by Plaintiff.

4.    As Plaintiff has recently discovered, Defendants have discharged and continue to discharge products that contain or degrade to PFOA, PFOS, PFNA, PFBS, PFHxS, and/or GenX Chemicals to the Pee Dee River Watershed, which travel downstream to Plaintiff's water intake on Bull Creek, pass through Plaintiff's water and wastewater treatment systems, and thereby enter

2

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

the Waccamaw River to contaminate the water supply at the location of the planned Socastee intake. Plaintiff seeks a declaratory judgment, injunctive relief, abatement, damages, and an award of costs, including attorneys' fees, for Defendants' repeated and ongoing PFAS contamination.

5. Defendants own and/or operate industrial facilities upstream of Plaintiff's water intakes and have in the past used and/or currently use products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in their industrial processes ("Discharger Defendants") or otherwise supply these products to Discharger Defendants' manufacturing facilities ("Supplier Defendants"). Discharger Defendants then discharge wastewater contaminated with these products to surface waters in the Pee Dee River Watershed upstream of Plaintiff's water sources and planned intake. Some Defendants directly discharge PFAS-contaminated wastewater, while others do so indirectly via certain wastewater treatment plants ("WWTPs"). These WWTPs include the Johnsonville WWTP, the Lake City WWTP, and the Lumberton WWTP.

6. Industrial wastewater from Discharger Defendants' facilities contains high levels of PFAS, which cannot be adequately removed by conventional wastewater treatment processes and are discharged to the Pee Dee River Watershed, which flows downstream to the confluence of the Waccamaw River and the Intracoastal Waterway. As a direct and proximate result of Defendants' actions, Plaintiff has suffered losses to the use and enjoyment of its property rights, as Plaintiff's ability to use its property to treat potable water has already been and will continue to be impaired by Defendants' contamination of Plaintiff's water sources. Plaintiff must design around and respond to the contamination now.

7. Defendants' PFAS contaminate Plaintiff's water sources at concentrations exceeding what the U.S. Environmental Protection Agency ("EPA") deems unsafe for

3

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

consumption, and conventional water treatment processes cannot remove them. Instead, Plaintiff requires advanced water treatment technologies to remove, and provide water free from, Defendants' PFAS. Defendants' PFAS contamination has already altered project design decisions and has caused Plaintiff to incur PFAS-related engineering costs.

8.     As a result of Defendants' intentional, willful, wanton, reckless, and/or negligent acts and omissions and the nuisance thereby created, maintained, and continued, Plaintiff has suffered injury to its property rights and resulting damages, including compensatory and consequential damages. Plaintiff is also seeking equitable and injunctive relief requiring Defendants to fund the evaluation, testing, acquisition, installation, operation, and maintenance of water treatment technologies at Plaintiff's Socastee SWTP that will remove Defendants' PFAS from drinking water. In addition, based on the Defendants' intentional, willful, wanton, reckless, malicious, and oppressive misconduct, Plaintiff is seeking the recovery of punitive damages.

## **DISCLAIMER**

9.     Plaintiff makes no assertion of fact concerning, and brings no cause of action based on, the manufacture, sale, distribution, use, or disposal of PFAS associated with aqueous film forming foam ("AFFF"), whether commercial, Mil-Spec, or other variety. Plaintiff expressly disclaims any causes of action, injury, or damages resulting from the manufacture, sale, distribution, use, or disposal of any AFFF by any Defendant or third-party.

10.     Plaintiff's causes of action against Sampson County Disposal, LLC; Red Rock Disposal, LLC; Elevate Textiles, Inc.; and International Paper Company arise under North Carolina Law. Plaintiff brings no cause of action against these Defendants under South Carolina law.

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

11.    Plaintiff's causes of action against the remaining Defendants arise under South Carolina law.

12.    Plaintiff brings no cause of action against, and seeks no relief from, any Defendant under federal law or statute.

## JURISDICTION AND VENUE

13.    This Court has subject matter jurisdiction over this action pursuant to Article V of the Constitution of the State of South Carolina; sections 6-11-1610 and 14-1-80 of the South Carolina Code; and Act No. 337, 1971 S.C. Acts 444.

14.    This Court has personal jurisdiction over all Defendants, consistent with due process and South Carolina's long-arm statute, section 36-2-803 of the South Carolina Code.

15.    Venue is also properly in this Court pursuant to sections 15-7-10 and -30 of the South Carolina Code because the subject of the action is for injuries sustained to Plaintiff's property located in Horry County, and the most substantial part of Defendants' alleged acts or omissions giving rise to Plaintiff's claims occurred in Horry County. *See id.* at § 15-7-30(B) ("If there is more than one defendant, the action may be tried in any county where the action properly may be maintained against one of the defendants pursuant to this section.").

## PARTIES

### I.    Plaintiff

16.    Plaintiff Grand Strand Water and Sewer Authority is a special purpose district created for the distribution of potable water and provision of sewer services. Act No. 337, 1971 S.C. Acts 444.

17.    The Socastee SWTP will be sited on property owned by Plaintiff adjacent to Bay Road in Myrtle Beach, South Carolina, and will rely on water drawn from the Intracoastal Waterway at its confluence with the Waccamaw River, via a submerged raw water intake. Raw

5

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

water will be pumped via a pump station sited on property owned by Plaintiff just off Chamberlin Road, roughly 1,000 feet inland from the intake.

18.     The Socastee SWTP will serve customers in the South Strand and Socastee areas of Horry County.

## II.     Discharger Defendants

19.     Defendant **Burlington Industries, Inc.** ("Burlington") was a Delaware corporation authorized to do business in South Carolina until its dissolution in 2004. On May 13, 2022, the South Carolina Circuit Court appointed Peter McCoy, Jr., a resident of Charleston County, South Carolina, as the receiver for Burlington. *See Mimms v. Burlington Indus., Inc. et al.*, C.A. No. 2021-CP-40-05873, Order Appointing Receiver Over Defendant Burlington Industries, Inc. (Richland Cnty. Ct. of Common Pleas May 13, 2022). Burlington was the owner and operator of an industrial facility located at 670 N. Main Street, Society Hill, South Carolina 29593. The facility is a former textile mill and finishing facility bordering Cedar Creek and the Great Pee Dee River, and it encompasses roughly 234 acres. Over the course of the facility's operations, Defendant used products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in the manufacture of textile products. As part of its processes, Defendant discharged industrial wastewater contaminated with these PFAS from its own wastewater treatment plant to Cedar Creek and the Great Pee Dee River upstream of Bull Creek. Wastewater lagoons and other storage basins at the facility have accumulated PFOA, PFOS, PFNA, PFHxS, PFBS, GenX Chemicals, and/or their precursors for decades. These PFAS overflow to the Great Pee Dee River upstream of the confluence of the Intracoastal Waterway and Waccamaw River. Defendant's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water

6

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water. Burlington also manufactured and distributed agricultural biosolid products contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to farms and other users throughout the Pee Dee River Watershed upstream of Plaintiff's water intake on Bull Creek. PFAS from Burlington's biosolids have accumulated in the Pee Dee River Watershed, continually flow downstream to the confluence of the Intracoastal Waterway and Waccamaw River, and contaminate Plaintiff's water sources and infringe Plaintiff's property rights.

20. Defendant **Elevate Textiles, Inc. ("Elevate")** is a Delaware corporation authorized to do business in South Carolina. Elevate owns and operates an industrial facility located at 740 Old Cheraw Highway, Rockingham, NC 28379 ("Richmond Plant"), which was previously owned and operated by Defendant Burlington. Throughout the facility's operation, both Burlington and Elevate used, and Elevate continues to use, products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals. As part of their processes, Burlington and Elevate discharged, and Elevate continues to discharge, industrial wastewater contaminated with products that contain or degrade to these PFAS from the Richmond Plant to Hitchcock Creek upstream of the Great Pee Dee River and the confluence of the Intracoastal Waterway and Waccamaw River. The Richmond Plant does not remove Defendants' PFAS, and it discharged and continues to discharge their PFAS into the Great Pee Dee River upstream of the confluence of the Intracoastal Waterway and Waccamaw River. Defendants' PFAS resist environmental degradation, flow downstream from the Great Pee Dee River to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

7

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

21.     Defendant **Fiber Industries, LLC ("Darling Fibers")** is a South Carolina limited liability company, and it owns and operates a textile manufacturing facility located at 1000 E. McIver Road, Darlington, South Carolina 29532. There, Darling Fibers uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of textile fibers and fabrics. As part of its processes, the Darlington facility directly discharges industrial wastewater contaminated with products that contain or degrade to these PFAS into Black Creek upstream of the Great Pee Dee River and the confluence of the Intracoastal Waterway and Waccamaw River. Darling Fibers' PFAS resist environmental degradation, flow downstream from Black Creek, the Great Pee Dee River, and to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

22.     Defendant **International Paper Company ("IP")** is a New York corporation authorized to do business in South Carolina. IP owns and operates an industrial facility located at 820 Canton Road, Lumberton, North Carolina 28358. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of paper-based packaging products. As part of its processes, IP's facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lumberton WWTP. The Lumberton WWTP cannot remove IP's PFAS, which it discharges to the Lumber River upstream of the confluence of the Intracoastal Waterway and Waccamaw River. IP's PFAS resist environmental degradation, flow downstream from the Lumber River, Little Pee Dee River, Great Pee Dee River, and to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

8

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

23.    Defendant **J.P. Stevens & Company, Inc.** was a Delaware corporation authorized to do business in the State of South Carolina until 1999. J.P. Stevens & Company, Inc. and its predecessors, successors, assigns, and/or responsible parties are collectively referenced as **"JPS."** From 1946 to 1987, JPS operated the Delta Mills industrial facility located at 4351 Brickyard Road, Wallace, South Carolina 29596. JPS transferred the Delta Mills facility to Defendant **Delta Mills, Inc.**, which owned and operated the facility from 1987 to 2006. Delta Mills, Inc. was a Delaware corporation with its principal place of business located at 700 North Woods Drive, Fountain Inn, South Carolina 29644. Delta Mills, Inc. and its predecessors, successors, assigns, and/or responsible parties are collectively referenced as **"Delta Mills."** Over the course of the Delta Mills facility operations, Defendants JPS and Delta Mills used products that contain or degrade to PFOA, PFOS, PFNA, PFHxS, PFBS, and/or GenX Chemicals in the finishing of textile products. As part of their processes, JPS and Delta Mills discharged industrial wastewater contaminated with these PFAS from the facility's own WWTP to the Great Pee Dee River upstream of the confluence of the Intracoastal Waterway and Waccamaw River. JPS and Delta Mills also created wastewater lagoons on the facility property, which were contaminated with high levels of these PFAS that accumulated over decades. Delta Mills did not remediate this contamination when it ceased operations in 2006, and the PFAS continually overflow and/or migrate to the Great Pee Dee River upstream of the confluence of the Intracoastal Waterway and Waccamaw River. JPS's and Delta Mills' PFAS resist environmental degradation, flow downstream from the Great Pee Dee River and to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

24. Defendants **Mohawk Industries, Inc.** and **Aladdin Manufacturing Corporation** are Delaware corporations authorized to do business in the State of South Carolina (collectively **"Mohawk"**). Mohawk owns Oak River Mill located at 2118 Marlboro Road, Blenheim, South Carolina 29516, which Mohawk operated until its closing in October 2022. For nearly sixty years, Mohawk used products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of carpet products at Oak River Mill. As part of its processes, Oak River Mill discharged industrial wastewater contaminated with products that contain or degrade to these PFAS directly into the Great Pee Dee River upstream of the confluence of the Intracoastal Waterway and Waccamaw River. Oak River Mill also utilized wastewater lagoons on the bank of the Great Pee Dee River contaminated with high levels of these PFAS and/or their precursors. These lagoons currently and continually overflow and/or release contaminated wastewater into the Great Pee Dee River upstream of the confluence of the Intracoastal Waterway and Waccamaw River. PFAS and/or their precursors from both Mohawk's legacy discharges and continuing lagoon discharges resist environmental degradation, flow downstream from the Great Pee Dee River to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

25. Defendant **Nan Ya Plastics Corporation, America ("Nan Ya")** is a Delaware corporation authorized to do business in the State of South Carolina. Nan Ya owns and operates an industrial facility located at 140 E. Beulah Road, Lake City, South Carolina 29560, where it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of plastics, polyester chips, resin, fibers, and yarns. As part of its processes, the Nan Ya facility discharges industrial wastewater contaminated with products that

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

contain or degrade to these PFAS to the Lake City WWTP. The Lake City WWTP cannot remove Nan Ya's PFAS, and the WWTP discharges water contaminated with Nan Ya's PFAS into Lake Swamp upstream of the confluence of the Intracoastal Waterway and Waccamaw River. Nan Ya's PFAS resist environmental degradation, flow downstream from Lake Swamp, the Lynches River, the Great Pee Dee River, and to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

26.    Defendant **PRET Advanced Materials, LLC ("PRET")** is a Delaware limited liability company that does business in South Carolina. PRET owns and operates an industrial facility located at 520 Kingsburg Highway, Johnsonville, South Carolina 29555, where it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of plastics and resins. As part of its processes, the PRET facility discharges industrial wastewater with products that contain or degrade to these PFAS to the Johnsonville WWTP. The Johnsonville WWTP cannot remove PRET's PFAS, and the WWTP discharges water contaminated with PRET's PFAS into the Lynches River upstream of the confluence of the Intracoastal Waterway and Waccamaw River. PRET's PFAS resist environmental degradation, flow downstream from the Lynches River, the Great Pee Dee River, and to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

27.    Defendants **Red Rock Disposal, LLC ("RRD")** and **Sampson County Disposal, LLC ("SCD") (together, "GFL Landfills")** operate landfills in North Carolina that have transported and/or continue to transport leachate to the Lumberton WWTP in Lumberton, NC for disposal. Defendant RRD is a North Carolina limited liability company and operates the Red Rock

11

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Disposal Landfill located at 7130 New Landfill Drive, Holly Springs, North Carolina 27540. Defendant SCD is a North Carolina limited liability company and operates the Sampson County Landfill located at 7434 Roseboro Highway, Roseboro, North Carolina 28382. Leachate generated by the two landfills operated by the respective GFL Landfills contains significant amounts of PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors, and has been transported to Lumberton WWTP for disposal. In or around December 2024, RRD ceased transporting leachate from the Red Rock Disposal Landfill to the Lumberton WWTP for disposal; however, its legacy discharges of leachate containing high levels of PFAS continue to contaminate Plaintiff's water sources and interfere with Plaintiff's property rights. The Lumberton WWTP could not and cannot remove the GFL Landfills' PFAS from the leachate they generate before the WWTP discharged and/or discharges their PFAS into the Lumber River upstream of the confluence of the Intracoastal Waterway and Waccamaw River. GFL Landfills' PFAS resist environmental degradation, flow downstream from the Lumber River, Little Pee Dee River, Great Pee Dee River, and to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

28. Defendant **Sonoco Products Company ("Sonoco")** is a South Carolina corporation, and it owns and operates an industrial complex at and around 1 N 2nd Street, Hartsville, South Carolina 29550. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of packaging products. As part of its processes, the Sonoco facility directly discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to Black Creek upstream of the confluence of the Intracoastal Waterway and Waccamaw River. The treatment processes employed by Sonoco do

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

not remove PFAS prior to their discharge to Black Creek. Sonoco's PFAS resist environmental degradation, flow downstream from Black Creek, the Great Pee Dee River, and to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

29.    Defendant **WestRock CP, LLC ("WestRock")** is a Delaware limited liability company authorized to do business in South Carolina. WestRock owns and operates a paper mill at 7320 Paper Mill Road, Florence, South Carolina 29506. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of containerboard, kraft linerboard, and/or related paper-based packaging products. As part of its processes, the WestRock facility directly discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Great Pee Dee River upstream of the confluence of the Intracoastal Waterway and Waccamaw River. The treatment processes employed by WestRock do not remove PFAS prior to their discharge to the Great Pee Dee River. WestRock's PFAS resist environmental degradation, flow downstream from the Great Pee Dee River to the confluence of the Intracoastal Waterway and Waccamaw River, and thereby contaminate Plaintiff's water sources and interfere with Plaintiff's ability to use its property to treat and supply potable drinking water.

## III.    Supplier Defendants

30.    Defendant **AGC Chemicals Americas, Inc. ("Asahi")** is a foreign Delaware corporation authorized to do business in South Carolina. Among other acts and omissions, Asahi has manufactured and supplied products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to one or more of the Discharger Defendants in this action.

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

31.     Defendant **Archroma U.S., Inc. ("Archroma")** is a Delaware corporation authorized to do business in South Carolina. Among other acts and omissions, Archroma has for many years manufactured and supplied products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to one or more of the Discharger Defendants in this action.

32.     Defendant **Arkema, Inc. ("Arkema")** is a Pennsylvania corporation authorized to do business in South Carolina. Among other acts and omissions, Arkema has for many years manufactured and supplied products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to one or more of the Discharger Defendants in this action.

33.     Defendant **Clariant Corporation ("Clariant")** is a New York corporation authorized to do business in South Carolina. Among other acts and omissions, Clariant has for many years manufactured and supplied products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to one or more of the Discharger Defendants in this action.

34.     Defendant **Daikin America, Inc. ("Daikin")** is a Delaware corporation authorized to do business in South Carolina. Among other acts and omissions, Daikin has for many years manufactured and supplied products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to one or more of the Discharger Defendants in this action.

35.     Defendant **EIDP, Inc. ("Old DuPont")**, f/k/a E.I. du Pont de Nemours and Company, is a Delaware corporation authorized to do business in South Carolina. Among other acts and omissions, Old DuPont has manufactured and supplied products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to one or more of the Discharger Defendants in this action.

36.     Defendant **The Chemours Company ("Chemours")** is a Delaware limited liability company authorized to do business in South Carolina. Among other acts and omissions,

14

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Chemours has manufactured and supplied products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to one or more of the Discharger Defendants in this action.

37.     Defendant **Corteva, Inc. ("Corteva")** is a Delaware corporation that conducts business in South Carolina. Among other acts and omissions, Corteva has assumed PFAS-related liabilities from Old DuPont.

38.     Defendant **DuPont de Nemours, Inc. ("New DuPont")**, f/k/a DowDuPont, Inc., is a Delaware corporation that conducts business in South Carolina. Among other acts and omissions, New DuPont has assumed PFAS-related liabilities from Old DuPont.

39.     Defendant **INV Performance Surfaces, LLC ("Invista")** is a Delaware limited liability company authorized to do business in South Carolina. Among other acts and omissions, Invista has manufactured and supplied products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to one or more of the Discharger Defendants in this action.

40.     Defendant **Huntsman International, LLC ("Huntsman")** is a Delaware limited liability company authorized to do business in South Carolina. Among other acts and omissions, Huntsman has manufactured and supplied products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to one or more of the Discharger Defendants in this action.

41.     Defendant **Syensqo Specialty Polymers USA, LLC (f/k/a Solvay Specialty Polymers USA, LLC) ("Solvay")** is a Delaware limited liability company authorized to do business in South Carolina. Among other acts and omissions, Solvay has manufactured and supplied products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to one or more of the Discharger Defendants in this action.

15

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## FACTUAL ALLEGATIONS

### I.     Background and Hazards of PFAS

42.     PFAS are a large group of man-made chemicals that do not occur naturally in the environment. Due to their strong carbon-fluorine bonds, PFAS are extremely stable, repel both oil and water, and are resistant to heat and chemical reactions. As a result of these properties, PFAS have a wide variety of industrial, commercial, and consumer applications.

43.     The stable carbon-fluorine bonds that make PFAS pervasive in industrial, commercial, and consumer products also result in their persistence in the environment. They are colloquially termed "forever chemicals," as terminal PFAS have no known environmental breakdown mechanism, are readily absorbed into biota, and tend to bioaccumulate with repeated exposure.

44.     There are both polymer and non-polymer PFAS. Non-polymer PFAS include substances like PFOA, PFOS, PFHxS, PFNA, PFBS, and HFPO-DA (a/k/a GenX Chemicals). Polymer PFAS include fluoropolymers and side-chain fluorinated polymers that are often the active chemistry in the PFAS-containing products sold and utilized by Defendants.

45.     There are also both terminal PFAS and their precursors. Precursors may undergo environmental degradation that ultimately results in the formation of terminal PFAS—meaning no further degradation occurs under normal environmental conditions. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are all terminal PFAS.

46.     Both polymer and non-polymer PFAS can degrade to terminal PFAS. Generally, terminal PFAS are present in or otherwise form from PFAS products via three primary routes: (1) as a direct byproduct of the manufacturing process; (2) the degradation of precursor PFAS that are byproducts of the manufacturing process; and/or (3) the degradation of polymer PFAS into terminal PFAS and precursor PFAS.

16

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

47.     Further, PFAS are manufactured by either electrochemical fluorination ("ECF") or telomerization.

48.     PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination. Therefore, a major source of human exposure to PFAS is through ingestion of contaminated drinking water. Exposure is dose-additive, meaning that exposure to low levels of multiple PFAS, which individually would pose little or no risk, can result in a combined dose capable of causing adverse health effects.

49.     While there are thousands of different PFAS chemicals, current scientific evidence shows that harmful health effects can result from consuming drinking water with any level of PFOA or PFOS, and at certain aggregate levels of PFHxS, PFNA, PFBS, and GenX Chemicals. Depending on the type of PFAS, negative health effects include increased risk of certain types of cancer and adverse impacts on fetal growth and development; reproduction; and on liver, thyroid, immune, cardiovascular, and/or nervous system function.

50.     PFOA and PFOS have been the most widely used PFAS, and they are the most studied by regulators and the scientific community. While some industries voluntarily phased out products containing PFOA and PFOS by 2015, their limited use continues even in the United States. Due to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use.

51.     Products based on PFAS consisting of shorter fluorinated carbon chains were developed to replace "long-chain" PFAS like PFOA and PFOS, and they are now used in industrial applications to confer similar properties and characteristics. These "short-chain" PFAS are still bioaccumulative and environmentally persistent, and some short-chain PFAS products

17

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

nevertheless still contain PFOA and PFOS and their precursors.  Terminal short-chain PFAS include PFBS and GenX Chemicals.

52.     Based on the science available in 2009, EPA published provisional drinking water health advisories for short-term exposure to PFOA and PFOS.[1] The advisory levels at that time were 400 parts per trillion ("ppt") for PFOA and 200 ppt for PFOS. In the same publication, EPA reported that it conducted sampling of public drinking water in Alabama communities, finding PFOA and PFOS levels lower than 40 ppt. It explained, "Based on its current understanding, EPA believes these levels are not of concern and residents may rely upon public water systems."[2]

53.     On May 16, 2016, due to the evolution of science on the health effects of PFOA and PFOS, EPA published lifetime health advisory levels for each chemical in drinking water.[3] Superseding the 2009 provisional levels, the 2016 levels for PFOA and PFOS were 70 ppt, independently or in the aggregate. EPA explained that its new health advisories "identify the concentration of PFOA and PFOS in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure."[4]

54.     EPA's 2016 Health Advisories were based on peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and epidemiological studies of human populations exposed to PFOA and PFOS. These studies indicated that exposure to PFOA and PFOS over

---

[1] U.S.E.P.A., Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS) (Jan. 8, 2009), *available at* https://www.epa.gov/sites/default/files/2015-09/documents/pfoa-pfos-provisional.pdf.

[2] *Id.*

[3] Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 33250 (May 25, 2016).

[4] *Id.*

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

certain levels may result in adverse health effects, including developmental defects to fetuses, cancer (testicular, kidney), liver effects, immune effects, thyroid effects, and other adverse effects. But based on its review of the science, EPA stated that its analysis indicated exposure to PFOA and PFOS at or below health advisory levels "will not result in adverse health effects (including cancer and non-cancer) to the general population over a lifetime (or any shorter period) of exposure to these chemicals."[5]

55.     On June 15, 2022, EPA again updated health advisory levels for PFOA and PFOS on an interim basis, which replaced the 2016 advisory levels.[6] EPA explained that updated human epidemiological data indicated "that the level at which negative health effects could occur are much lower than previously understood when the agency issued its 2016 health advisories for PFOA and PFOS"—finding "associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, development (e.g., decreased birth weight), and cancer."[7] Concerned with the public health implications of its data, EPA issued interim levels pending determination of maximum contaminant levels and maximum contaminant level goals. The interim levels were 0.004 ppt for PFOA and 0.02 ppt for PFOS.

56.     Simultaneously, EPA also issued health advisories for the first time covering PFBS and GenX Chemicals. EPA reported that "GenX Chemicals have been linked to health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer."[8] For

---

[5] *Id.*

[6] Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances, 87 Fed. Reg. 36848 (June 21, 2022).

[7] *Id.*

[8] *Id.*

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

PFBS, it noted studies indicating health effects on the thyroid, reproductive system, development, and kidney. Based on its 2021 toxicity studies for these chemicals, EPA released final health advisories for each: GenX Chemicals at 10 ppt and PFBS at 2,000 ppt.

57.     In March of 2023, EPA issued proposed maximum contaminant levels ("MCLs") and maximum contaminant level goals ("MCLGs") for PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals.[9] An MCLG is the maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, allowing an adequate margin of safety. An MCL is the maximum allowable level of a contaminant that may be delivered to any user of a public water system and is based on the feasibility of existing technology to detect PFAS at a threshold level.

58.     At that time, EPA announced that, "[f]ollowing a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either chemical is considered safe."[10] Therefore, it proposed MCLG levels for both chemicals at zero ppt. Enforceable MCL levels for each chemical were proposed at 4 ppt. According to EPA, "[a]ny exceedance of this limit requires action to protect public health, regardless of any mixture in which they are found."[11]

59.     Due to their toxic effects, dose additivity, and presence in drinking water, EPA proposed a hazard index approach covering mixtures of PFHxS, PFNA, PFBS, and GenX

---

[9] PFAS Nat'l Primary Drinking Water Regulation Rulemaking, 88 Fed. Reg. 18638 (Mar. 29, 2023) (to be codified at 40 C.F.R. pt. 141, 142).

[10] *Id.*

[11] *Id.*

20

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Chemicals. The hazard index is the sum of each PFAS's "hazard quotient." Hazard quotients are first calculated by dividing the applicable PFAS's "exposure metric" (i.e., concentration in drinking water) by its "health reference value" (PFHxS: 9 ppt; GenX Chemicals: 10 ppt; PFNA: 10 ppt; PFBS: 2,000 ppt). If the sum of each's hazard quotient is below 1.0, then it "represents a level at which no known or anticipated adverse effects on the health of persons is expected to occur and which allows for an adequate margin of safety."[12] If greater than 1.0, then "potential risk is indicated."[13]

60.     EPA stated that, once its proposed MCLs became final, it would "save thousands of lives and prevent tens of thousands of avoidable illnesses."[14]

61.     EPA finalized its proposed MCLs and MCLGs on April 10, 2024.[15] In accompanying publications, EPA declared, "The science is clear: exposure to these six PFAS is linked to significant health risks" that include "certain cancers and heart impacts in adults, and immune and developmental impacts in infants and children."[16]

---

[12] *Id.*

[13] *Id.*

[14] U.S.E.P.A., *EPA Releases Annual Report Showing Steady Progress to Protect Communities from PFAS Pollution* (Dec. 14, 2023), *available at* https://www.epa.gov/newsreleases/epa-releases-annual-report-showing-steady-progress-protect-communities-pfas-pollution.

[15] U.S.E.P.A., PFAS Nat'l Primary Drinking Water Regulation Rulemaking (Apr. 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_prepubfederalregisternotice_4.8.24.pdf (pre-publication version).

[16] U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024); *see also* U.S.E.P.A., Final PFAS Nat'l Drinking Water Regulation Landing Page, http://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (providing links to EPA PFAS regulation publications).

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

62.     The final regulation solidifies MCLs of 4.0 ppt for PFOA and PFOS and 10.0 ppt for PFNA, PFHxS, and GenX Chemicals, including a Hazard Index that covers mixtures of PFBS with PFNA, PFHxS, and GenX Chemicals. It also enshrines MCLGs of zero ppt for PFOA and PFOS, which EPA states "reflects the latest science showing that there is no level of exposure to these two PFAS without risk of health impacts."[17] According to EPA, "[t]he more you reduce your exposure to PFAS, the more you reduce your risk."[18]

63.     EPA's final regulations mandate several new obligations regarding PFAS, including the implementation of solutions to reduce regulated PFAS concentrations in the drinking water that Plaintiff distributes, maintenance of ongoing compliance monitoring, and informing the public of PFAS levels in the water and of any violations.

64.     EPA's April 10, 2024 regulation imposed a deadline of 2027 for Plaintiff to begin conducting and reporting regular PFAS monitoring and a deadline of 2029 for Plaintiff to comply with all MCLs.

65.     On May 14, 2025, EPA affirmed its intention to maintain the April 10, 2024 regulation MCLs and MCLGs for PFOA and PFOS, but it announced plans to propose extending the MCL compliance deadline by two years, to 2031, "[t]o allow drinking water systems more time to develop plans for addressing PFOA and PFOS where they are found and implement solutions."[19] Although EPA announced its intention to rescind the MCLs concerning PFNA,

---

[17] U.S.E.P.A., *Presentation: Overview EPA PFAS NPDWR* (Apr. 10, 2024).

[18] U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024).

[19] U.S.E.P.A., *EPA Announces It Will Keep Maximum Contaminant Levels for PFOA, PFOS* (May 14, 2025), *available at* https://www.epa.gov/newsreleases/epa-announces-it-will-keep-maximum-contaminant-levels-pfoa-pfos [hereinafter *EPA 2025 MCL Announcement*].

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

PFHxS, and GenX Chemicals, as well as the Hazard Index covering mixtures of PFBS, PFNA, PFHxS, and GenX Chemicals, it did so "to ensure that the determinations and any resulting drinking water regulation follow the legal process laid out in the Safe Drinking Water Act," and EPA did not retract its prior statement that the science shows that exposure to these types of PFAS is linked to significant health risks.[20] At the same time, EPA expressed the importance of protecting public health and "ensur[ing] that polluters are held responsible."[21]

66.     EPA's May 2025 announcement stated that "EPA plans to issue a proposed rule this fall and finalize this rule in the Spring of 2026."[22] Under the April 10, 2024 final National Primary Drinking Water Regulation, Plaintiff must begin conducting and reporting regular PFAS monitoring by 2027, and Plaintiff must comply with all MCLs by 2029. EPA's planned rule would extend Plaintiff's MCL compliance deadline for PFOA and PFOS from 2029 to 2031.

**II.     Contamination of the Waccamaw River and the Intracoastal Waterway with PFAS**

67.     The Socastee SWTP will use a submerged raw water intake located in the Intracoastal Waterway at its confluence with the Waccamaw River.

68.     The Intracoastal Waterway and Waccamaw River are hydrologically connected to the Pee Dee River Watershed, which includes the Great Pee Dee River, Little Pee Dee River, Lumber River, Lynches River, Lake Swamp, and Black Creek, into which Discharger Defendants release PFAS. Near Bucksport, South Carolina, Bull Creek branches off the main stem of the Great Pee Dee River and flows south, where it connects with the Waccamaw River.

---

[20] *Id.*

[21] *Id.*

[22] *Id.*

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

69.     Discharger Defendants' industrial facilities, and/or their applicable WWTPs, operate in the Pee Dee River Watershed upstream of Bull Creek.

70.     PFAS sampling of the Intracoastal Waterway, Waccamaw River, Bull Creek, Great Pee Dee River, Little Pee Dee River, Lumber River, Lynches River, and Black Creek confirms the presence of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals throughout these bodies of water. These PFAS flow downstream from where Defendants release them into the environment to contaminate the surface waters at the location selected for Plaintiff's Socastee intake at concentrations exceeding EPA's MCLs and MCLGs. Indeed, sampling near the confluence of the Intracoastal Waterway and Waccamaw River confirms the presence of PFOA and PFOS at concentrations higher than what EPA deems unsafe for consumption. Defendants are the source.

71.     Discharger Defendants are, or were, owners and operators of manufacturing plants and related industrial facilities throughout the Pee Dee River Watershed. In their industrial processes, Discharger Defendants utilize, or utilized, products that contain or degrade to PFOS, PFOA, PFHxS, PFNA, PFBS, and/or GenX Chemicals. Discharger Defendants' industrial processes generate industrial wastewater containing these PFAS, which Discharger Defendants ultimately discharge to surface waters upstream of the confluence of the Intracoastal Waterway and Waccamaw River.

72.     As part of their industrial processes, Defendants Burlington, Darling Fibers, Delta Mills, Elevate, JP Stevens, Mohawk, Sonoco, and WestRock in the past discharged and/or currently discharge PFAS-contaminated wastewater directly to surface waters upstream of the confluence of the Intracoastal Waterway and Waccamaw River, as follows:

| Defendant(s) | Surface Waters |
| --- | --- |
| Burlington | Great Pee Dee River; Hitchcock Creek |

24

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

| | |
|---|---|
| Darling Fibers | Black Creek |
| Delta Mills & JP Stevens | Great Pee Dee River |
| Elevate | Hitchcock Creek |
| Mohawk | Great Pee Dee River |
| Sonoco | Black Creek |
| WestRock | Great Pee Dee River |

73.    As part of their industrial processes, Defendants Nan Ya, PRET, and IP indirectly discharge PFAS-contaminated wastewater to WWTPs that lack filtration technologies to remove their PFAS. The WWTPs then discharge water contaminated with these Defendants' PFAS to surface waters upstream of the confluence of the Intracoastal Waterway and Waccamaw River, as follows:

| Defendant | WWTP | Surface Waters |
|---|---|---|
| Nan Ya | Lake City WWTP | Lynches Lake Swamp |
| PRET | Johnsonville WWTP | Lynches River |
| IP | Lumberton WWTP | Lumber River |

74.    Defendants GFL Landfills operate landfills in North Carolina, and they transported and/or continue to transport PFAS-contaminated leachate to the Lumberton WWTP, which lacks filtration technologies to remove their PFAS. The Lumberton WWTP then discharged and/or discharges water contaminated with the GFL Landfills' PFAS to the Lumber River upstream of the confluence of the Intracoastal Waterway and Waccamaw River.

75.    The Intracoastal Waterway and Waccamaw River are tidally influenced. Flows in these waterways can thus move northward up the Waccamaw River and eastward in the Intracoastal Waterway, towards the Little River Inlet. Hence, the PFAS discharged by Defendants

25

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

to the Pee Dee River Watershed are transported down Bull Creek and then flow northward up the Waccamaw and towards its confluence with the Intracoastal Waterway, thereby contaminating the surface waters at the location of Plaintiff's Socastee intake.

76.    In addition, Defendants' PFAS also transport to the confluence of the Waccamaw River and Intracoastal Waterway by passing through Plaintiff's water treatment and wastewater treatment plants.

77.    Plaintiff's Bull Creek SWTP draws raw water from Bull Creek and utilizes conventional water treatment technologies, including coagulation, flocculation, sedimentation, filtration, and chlorination—none of which remove Defendants' PFAS from water.

78.    Plaintiff also owns and operates the Bucksport Regional WWTP and the Conway WWTP, both of which discharge treated effluent to the Waccamaw River at points south and north, respectively, of the River's confluence with the Intracoastal Waterway.

79.    Neither the Bucksport Regional nor the Conway WWTPs have industrial users. Instead, both provide sewer services primarily to residential and commercial customers that use potable water distributed from the Bull Creek SWTP.

80.    Because the Bull Creek SWTP cannot remove Defendants' PFAS from the water Plaintiff draws from Bull Creek, the water that sewer customers send to the Bucksport and Conway WWTPs remains contaminated with Defendants' PFAS.

81.    Like the Bull Creek SWTP, the Bucksport and Conway WWTPs are not equipped to address Defendants' PFAS. Both utilize conventional wastewater treatment methods, including screening and grit removal, aeration, clarification, chlorination, and UV disinfection—none of which remove Defendants' PFAS from the effluent. Once the Bucksport and Conway WWTPs

26

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

treat the wastewater, both discharge treated effluent that consequently remains contaminated with Defendants' PFAS to the Waccamaw River upstream of the Intracoastal Waterway confluence.

82.     Plaintiff's Socastee SWTP will draw raw water from the Intracoastal Waterway at its confluence with the Waccamaw River for treatment and distribution to thousands of customers in the South Strand and Socastee areas of Horry County. But because Defendants' PFAS resist environmental degradation and conventional treatment methods, the chemicals contaminate the waters of the Intracoastal Waterway and Waccamaw River at the selected location of Plaintiff's Socastee intake and thereby impair Plaintiff's ability to use its property for the purposes of water treatment. Rather than utilizing conventional water treatment methods, Plaintiff must implement advanced water treatment technologies at the Socastee SWTP, which are more difficult and costly to build and operate, in order to remove Defendants' PFAS from the water treated by this facility. But for Defendants' contamination of the Intracoastal Waterway and Waccamaw River with their PFAS, Plaintiff's Socastee SWTP would not require such additional advanced treatment technologies.

83.     Defendants have so thoroughly polluted the Intracoastal Waterway and lower reaches of the Waccamaw River and Pee Dee River Watershed that any viable alternative location for the new raw water intake and SWTP would likewise be impacted by Defendants' PFAS contamination. Simply selecting a different site for these improvements would not solve the problem.

84.     All Defendants knew or should have known that conventional wastewater treatment technologies used by direct discharger Defendants and WWTPs cannot remove PFAS from wastewater. All Defendants also knew or should have known that their treated wastewater contaminates surface waters and the water Plaintiff draws for its customers.

27

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

85.     Despite knowing of the adverse health and environmental effects of PFAS, particularly the chemicals' capacity to endanger drinking water supplies when released to surface waters, Supplier Defendants did not require, instruct, advise, or otherwise direct the Discharger Defendants to dispose of their PFAS-containing wastewater in a manner that would prevent this effluent from entering surface waters and interfering with Plaintiff's use and enjoyment of its property.

86.     All Defendants knew or should have known that conventional treatment technologies used by public water systems like Plaintiff's cannot remove Defendants' PFAS from water that is treated and distributed as potable drinking water.

### III.     Supplier Defendants Had Superior Knowledge of PFAS's Hazardous Properties.

87.     All Defendants have long known that PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are environmentally persistent, bioaccumulative, dose-additive, and toxic; that they cannot be removed by conventional water and wastewater treatment methods; and that there is no safe dose for PFOA and PFOS.

88.     Old DuPont pioneered the field of PFAS chemistry in the middle of the twentieth century, and it was long a leader in the industry. Old DuPont's knowledge of the properties of PFAS, including knowledge of the compounds' chemistry, toxicology, environmental fate, and effects on human health has been virtually unmatched, typically exceeding that of government regulators, the scientific community, and the public.

89.     Old DuPont has maintained an in-house staff of doctors, environmental engineers, industrial hygienists, and scientists in health-related fields, as well as a corporate industrial medicine program. Old DuPont was thus well equipped to understand the potential dangers of exposing people to PFAS via drinking water.

28

90.     By the early 1960s, Old DuPont understood PFOA and PFNA to be toxic based on studies that found exposure to the chemicals to increase liver size in rats, and by the mid-1960s, if not earlier, Old DuPont knew that PFOA could leach from waste into water and groundwater.

91.     In 1978, Old DuPont began to review and monitor the health conditions of its workers who were potentially being exposed to PFOA. Old DuPont subsequently found that PFOA is "toxic" and that "continued exposure is not tolerable," but it did not disclose this to the public or to EPA. Three years later, Old DuPont again failed to disclose data demonstrating the transplacental movement of PFOA to fetuses. It also failed to disclose widespread PFOA contamination in public drinking water sources resulting from discharges at its Washington Works facility near Parkersburg, West Virginia, where PFOA concentrations exceeded Old DuPont's own Community Exposure Guideline.

92.     In 1991, Old DuPont researchers recommended following up a study from ten years earlier of employees who might have been exposed to PFOA. The prior study showed elevated liver enzymes in the blood of Old DuPont workers. On information and belief, for the purpose of avoiding or limiting liability, Old DuPont chose not to conduct the follow-up study, instead postponing it until after it was sued.

93.     By 1999, at the latest, Old DuPont knew that PFOA was present in its products based on telomer PFAS chemistry.

94.     In or around December 2005, Old DuPont agreed to pay a $10.25 million fine to the federal government arising from its failures to disclose information to EPA about PFOA's health risks. Upon information and belief, in statements to the public and government regulators, Old DuPont has repeatedly and falsely claimed that human exposure to PFOA has no adverse health consequences. In a May/June 2008 publication, for example, Old DuPont stated that "the

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

weight of the evidence indicates that PFOA exposure does not pose a health risk to the general public," and "there are no human health effects known to be caused by PFOA, although study of the chemical continues." Old DuPont made those statements against the advice of its own Epidemiology Review Board, which urged it not to make public statements asserting that PFOA does not pose any health risks. In 2005, EPA levied a record-setting $16.5 million civil penalty against Old DuPont for failing to disclose to EPA information about the health risks of PFOA and about the company's environmental releases of PFOA in West Virginia and Ohio.

95.     For decades, Old DuPont purchased the PFOA it used in the manufacture of Teflon and other products from 3M Company ("3M").

96.     In May 2000, 3M announced it would phase out its manufacture and sale of products based on long-chain PFAS, including PFOA and PFOS, by 2002. In its public announcement of the phaseout, 3M cited the chemicals' environmental persistence and its finding that PFOS was present in the blood of the general public.

97.     In response to 3M's phaseout announcement, and despite the public concerns 3M cited for its phaseout decision and Old DuPont's own internal knowledge of the risks to human health and the environment posed by PFOA, Old DuPont did not cease using PFOA or eliminate PFOA from its products. Instead, Old DuPont opened its own plant to manufacture PFOA to use in the manufacture of Old DuPont's products.

98.     As demonstrated by its material safety data sheet for PFOA, Old DuPont knew PFOA required disposal by incineration by at least 1991.

99.     Old DuPont participated in the Telomer Research Program ("TRP") that was convened by EPA in the early 2000s to coordinate research and data on PFOA and PFAS manufactured by the telomerization process. The TRP consisted of the leading telomer-based

30

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

PFAS manufacturers. Through its participation in the TRP, Old DuPont obtained and shared with other PFAS manufacturers information about various aspects of PFOA and telomer PFAS, such as their chemical degradation pathways, the fate and transport of PFAS products from customer facilities to the environment and public water supplies, and human health risks associated with exposure to these chemicals.

100.    In 2015, Old DuPont spun off its Performance Chemicals business (which included the design, manufacture, marketing, and sale of PFAS, as well as the environmental liabilities) to Chemours. Chemours inherited Old DuPont's expertise, resources, and knowledge of PFAS, and PFOA in particular.

101.    Invista was formed in 2004 through the sale of Old DuPont's Textiles & Interiors division to Koch Industries and conducted bundled sales of textile products with Old DuPont PFAS products that it knew could degrade to PFOA. Invista inherited Old DuPont's expertise, resources, and knowledge of PFAS, and PFOA in particular.

102.    Huntsman uses PFAS manufactured by other Supplier Defendants, including Old DuPont and Chemours, to blend with other non-PFAS components in the manufacture of the PFAS products it sells. Upon information and belief, Huntsman has long known that PFAS are persistent, bioaccumulative, and toxic, and that terminal PFAS such as PFOA, and/or their precursors, are present in the products it manufactures and sells.

103.    Daikin is a subsidiary of Daikin Industries, Ltd., which has been in the PFAS business in Japan since the 1940s. It entered the U.S. market in the early 1990s, establishing manufacturing operations in Decatur, Alabama, adjacent to 3M's plant there.

31

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

104. Daikin purchased PFOA from 3M for use as a processing chemical in its manufacture of fluoropolymers. Daikin knew from the early 1990s that PFOA was carcinogenic, bioaccumulative, environmentally persistent, and soluble in water.

105. Though fully aware of the reasons that 3M decided to withdraw its products based on long-chain PFAS in 2000, Daikin rushed to fill as much of the PFAS market left by 3M as possible, with the specific intent to prevent customers from shifting to non-PFAS products.

106. Underscoring its position as one of the world's leading PFAS manufacturers, Daikin participated in the TRP during the 2000s, through which it obtained and shared with other PFAS manufacturers information about various aspects of PFOA and telomer PFAS, such as their chemical degradation pathways, the fate and transport of PFAS products from customer facilities to the environment and public water supplies, and human health risks associated with exposure to these chemicals.

107. Daikin was well aware of the need to incinerate or otherwise treat wastewater to remove PFAS; indeed, Daikin practiced incineration for the PFAS-containing wastewater generated at its Decatur, Alabama facility by or around the mid-2000s.

108. Asahi is a subsidiary of AGC, Inc., f/k/a Asahi Glass Co., Ltd., a Japanese company that has manufactured and sold PFAS products since at least the 1970s. Upon information and belief, Asahi has long known that PFAS are persistent, bioaccumulative, and toxic, and that terminal PFAS such as PFOA, and/or their precursors, are present in the products it manufactures and sells.

109. Underscoring its position as one of the world's leading PFAS manufacturers, Asahi participated in the TRP during the 2000s, through which it obtained and shared with other PFAS manufacturers information about various aspects of PFOA and telomer PFAS, such as their

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

chemical degradation pathways, the fate and transport of PFAS products from customer facilities to the environment and public water supplies, and human health risks associated with exposure to these chemicals.

110.    Arkema is a subsidiary of Arkema S.A., a French company formed in 2004 from a reorganization of Total S.A.'s chemicals business. Arkema S.A. and its predecessors have been manufacturing PFAS since at least the 1950s. Upon information and belief, Arkema has long known that PFAS are persistent, bioaccumulative, and toxic, and that terminal PFAS such as PFOA, and/or their precursors, are present in the products it manufactures and sells.

111.    Clariant was formed in 1995 and was previously known as Sandoz Chemical Corporation and as Sodeyco, Inc. Upon information and belief, Clariant has long known that PFAS are persistent, bioaccumulative, and toxic, and that terminal PFAS such as PFOA, and/or their precursors, are present in the products it manufactures and sells.

112.    Underscoring its position as one of the world's leading PFAS manufacturers, Clariant participated in the TRP during the 2000s, through which it obtained and shared with other PFAS manufacturers information about various aspects of PFOA and telomer PFAS, such as their chemical degradation pathways, the fate and transport of PFAS products from customer facilities to the environment and public water supplies, and human health risks associated with exposure to these chemicals.

113.    Archroma was formed in 2013 through the sale of Clariant's textile, paper, and emulsions business to SK Capital Partners. Archroma inherited Clariant's expertise, resources, and knowledge of PFAS.

114.    Solvay is the successor of Solvay Solexis, Inc. and Ausimont USA, Inc. Upon information and belief, Solvay has long known that PFAS are persistent, bioaccumulative, and

33

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

toxic, and that terminal PFAS such as PFOA, and/or their precursors, are present in the products it manufactures and sells. At its Gloucester County, New Jersey facility, Solvay's use of PFOA and PFNA in the manufacture of fluoropolymer products has caused severe contamination of drinking water, surface waters, groundwater, and soils in the surrounding vicinity. In 2023, Solvay settled a lawsuit brought by the State of New Jersey arising from this contamination for $393 million.

115.    Safe or safer nonfluorinated alternatives to PFAS-based products exist, as demonstrated by some of Supplier Defendants' own current product offerings. Such nonfluorinated alternatives could have been commercially viable much earlier (and the harm to Plaintiff mitigated) if Supplier Defendants had not chosen to ignore the clear evidence of health and environmental dangers they possessed many years ago.

116.    Despite Supplier Defendants' knowledge that their products contained or degraded to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals; that these PFAS were environmentally persistent, bioaccumulative, dose-additive, and toxic; that conventional wastewater treatment technologies utilized by wastewater treatment facilities could not remove their PFAS from wastewater; and that Discharger Defendants discharged these PFAS to the Pee Dee River Watershed, damaging and interfering with Plaintiff's property rights and public health, Supplier Defendants continued to sell products containing or degrading to these PFAS to Discharger Defendants. Specifically:

(a)     Asahi continued to sell products containing or degrading to these PFAS to Discharger Defendants under brand names including Asahiguard and Surflon;

(b)     Arkema continued to sell products containing or degrading to these PFAS to Discharger Defendants under brand names including Kynar;

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

(c)    Clariant continued to sell products containing or degrading to these PFAS to Discharger Defendants under brand names including Nuva;

(d)    Archroma continued to sell products containing or degrading to these PFAS to Discharger Defendants under brand names including Nuva and Fluowet;

(e)    Daikin continued to sell products containing or degrading to these PFAS to Discharger Defendants under brand names including Unidyne;

(f)    Old DuPont continued to sell products containing or degrading to these PFAS to Discharger Defendants under brand names including Teflon, Zonyl, and Capstone;

(g)    Chemours continued to sell products containing or degrading to these PFAS to Discharger Defendants under brand names including Capstone;

(h)    Invista continued to sell products containing or degrading to these PFAS to Discharger Defendants under brand names including Stainmaster and Antron;

(i)    Huntsman continued to sell products containing or degrading to these PFAS to Discharger Defendants under brand names including Phobol and Oleophobol; and

(j)    Solvay continued to sell products containing or degrading to these PFAS to Discharger Defendants under brand names including Algoflon and Halar.

## IV.    Supplier Defendants Were Directly Involved in Discharger Defendants' PFAS Use and Disposal.

117.    At all times relevant hereto, Supplier Defendants were directly involved in, and exercised control over, Discharger Defendants' use, handling, application, and disposal of Supplier Defendants' products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals.

35

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

118. Supplier Defendants specified the type and amount of PFAS-containing products to be used or applied, and the manner in which PFAS-containing products were to be used or applied, at Discharger Defendants' facilities upstream from the confluence of the Intracoastal Waterway and Waccamaw River.

119. Supplier Defendants designed and provided equipment for the use of their PFAS-containing products at Discharger Defendants' facilities upstream from the confluence of the Intracoastal Waterway and Waccamaw River.

120. Supplier Defendants jointly conducted research with Discharger Defendants for new PFAS-containing products as well as methods of using or applying these products.

121. Supplier Defendants monitored the products manufactured by Discharger Defendants for the amount of PFAS-containing products used in the manufacture of Discharger Defendants' products in order to ensure those products met Supplier Defendants' specifications on the amount of PFAS-containing products to be used or applied.

122. Some Supplier Defendants, including Archroma, Arkema, Invista, and Huntsman, maintained offices and/or laboratories near Discharger Defendants' facilities upstream from the confluence of the Intracoastal Waterway and Waccamaw River, and all Supplier Defendants were in constant contact with the Discharger Defendants concerning the use, handling, application, and disposal of their PFAS-containing products.

123. Employees of the Supplier Defendants were routinely present in Discharger Defendants' facilities to provide direction, support, and technical assistance concerning the use, handling, application, and disposal of Supplier Defendants' PFAS-containing products.

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

124. Supplier Defendants provided information to the Discharger Defendants concerning the health and environmental impacts of Supplier Defendants' PFAS-containing products, and the Discharger Defendants, at least in part, relied on this information.

125. Supplier Defendants were familiar with the wastewater disposal practices of the Discharger Defendants' facilities, including that a portion of the Supplier Defendants' PFAS-containing products went into the Discharger Defendants' wastewater streams and that the treatment methods used by the Discharger Defendants' on-site treatment works and/or receiving WWTPs could not remove Defendants' PFAS from the effluent. Supplier Defendants nevertheless failed to require, instruct, advise, or otherwise direct the Discharger Defendants to dispose of their PFAS-containing wastewater in a manner that would prevent this effluent from entering surface waters and interfering with Plaintiff's property rights. Supplier Defendants continued to sell their PFAS-containing products to Discharger Defendants they knew or should have known were disposing of the products in an environmentally irresponsible manner.

126. Supplier Defendants have been aware for many years of the presence of their PFAS chemicals in the Pee Dee River Watershed upstream of the confluence of the Intracoastal Waterway and Waccamaw River.

## V.    Supplier Defendants Delayed, Suppressed, and Interfered with the Advance of Scientific Understanding and Regulation of Their PFAS Products.

127. Supplier Defendants actively worked to suppress and delay scientific understanding and government regulation of PFAS by, among other things, suppressing and altering critical internal studies documenting the harms of their PFAS-containing products, distorting public discourse on and downplaying the harmful effects of PFAS, misleading EPA on the safety of their PFAS-containing products and PFAS more generally, and hiring leaders in the scientific community to exert influence and suppress unwanted information contrary to their position.

37

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

128. Supplier Defendants, by agreement and/or tacit understanding between them, each knowingly pursued a common plan and design and/or acted in concert to market and promote products they knew to be dangerous to the environment and human health. Supplier Defendants engaged in concerted conduct for the purpose of suppressing, concealing, and minimizing information on the risks to human health and the environment posed by PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals, and for the purpose of delaying, obstructing, and interfering with regulators' investigation and regulation of these chemicals.

129. The delay in PFAS regulation resulted directly from Supplier Defendants' concerted efforts, over decades, to conceal critical studies from the scientific community and simultaneously introduce studies and media downplaying the adverse effects of PFAS.

## VI. Old DuPont Orchestrated a Multi-Step Corporate Restructuring Designed to Shield Its Valuable Assets from Its PFAS Liabilities.

130. By 2013, Old DuPont understood that it faced massive, mounting environmental liabilities arising from its decades-long manufacture, use, marketing, sale, and distribution of PFAS, likely totaling in the billions of dollars.

131. Beginning in or around 2013, Old DuPont sought to isolate these PFAS-related liabilities from its billions of dollars in valuable assets and to evade responsibility for the environmental harms it caused. This scheme unfolded over several years and involved the creation of multiple new corporate entities.

132. The first major step in this scheme was the 2015 spinoff of Chemours, a newly formed entity that received Old DuPont's Performance Chemicals business. Along with this transfer, Old DuPont saddled Chemours with a significant portion of Old DuPont's environmental liabilities.

38

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

133. Per the separation agreement between Old DuPont and Chemours, Chemours assumed liabilities related to Old DuPont's manufacture, use, and sale of PFAS and agreed to indemnify Old DuPont against all liabilities associated with the Performance Chemicals business—regardless of when those liabilities arose and against whom those liabilities are asserted or determined.

134. Internally, Old DuPont knew that Chemours lacked the financial resources to adequately cover the PFAS-related liabilities Old DuPont had transferred to Chemours.

135. In 2017, Old DuPont completed a merger with The Dow Chemical Company ("Old Dow") to create DowDuPont, Inc. This so-called "merger of equals" was carefully structured to avoid exposing Old Dow's assets to Old DuPont's PFAS liabilities. Rather than a true integration, this transaction served as a temporary restructuring vehicle by which Old DuPont sought to further separate the company's valuable assets from its PFAS liabilities and other environmental obligations.

136. Following the merger, assets were stripped out of Old DuPont and transferred to DowDuPont, which then mixed and combined the assets of Old DuPont with the assets of Old Dow. DowDuPont then reorganized its business into three distinct business segments: Agriculture, Materials Science, and Specialty Products.

137. This restructuring paved the way for the creation of three independent companies by 2019: (1) Corteva, which holds the Agriculture business and became the parent holding company of Old DuPont; (2) Dow, Inc. ("New Dow"), which holds the Materials Science business and became the parent company of Old Dow; and (3) DuPont de Nemours, Inc. (i.e., New DuPont), which was formerly known as DowDuPont and retained the Specialty Products business as well as some non-core business segments and product lines once belonging to Old DuPont.

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

138.     Pursuant to the separation agreement between Corteva, New Dow, and DowDuPont/New DuPont, Corteva and New DuPont have each assumed responsibility for certain Old DuPont liabilities, including Old DuPont liabilities related to PFAS.

**VII.     Defendants Have Harmed Plaintiff and Plaintiff's Community.**

139.     Discharger Defendants have, for decades, discharged PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors into the Pee Dee River Watershed, which has caused, and continues to cause, contamination of these waters and downstream waters with PFAS concentrations exceeding EPA's current health advisories, MCLGs, and MCLs. Indeed, absent advanced treatment technologies, Plaintiff cannot use its property and exercise its property rights to provide water that is either free of all PFOA and PFOS, or compliant with EPA's MCLs.

140.     Supplier Defendants have supplied products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to Discharger Defendants, while knowing that Discharger Defendants discharge wastewater laden with these PFAS to wastewater treatment facilities that cannot remove them from the wastewater before it is discharged to the Pee Dee River Watershed upstream of the confluence of the Intracoastal Waterway and Waccamaw River.

141.     Defendants' conduct has proximately caused the contamination of the Pee Dee River Watershed, the Waccamaw River, and the Intracoastal Waterway with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals—including PFOA and PFOS at concentrations above EPA's MCLGs and MCLs.

142.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in acts and omissions that have proximately caused unreasonable interference with Plaintiff's right

40

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

to use and enjoy its properties and its right to use the waters of the Intracoastal Waterway and Waccamaw River, and have caused Plaintiff additional past, present, and future injury to property.

143. The pervasive PFAS contamination of the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway caused by Defendants directly prevents Plaintiff from utilizing only conventional water treatment technologies at the Socastee SWTP. Defendants' PFAS contamination instead forces Plaintiff to implement advanced treatment technologies capable of removing PFAS that are more onerous to construct, operate, and maintain. Defendants' PFAS contamination has already significantly altered design decisions for this project, and Plaintiff has presently, and will continue to, incur PFAS-related engineering costs.

144. Despite knowing that there is no safe dose for PFOA or PFOS, and that PFHxS, PFNA, PFBS, and GenX Chemicals are hazardous to human health,

(a) Discharger Defendants, directly or indirectly, discharged industrial wastewater contaminated with these chemicals into the Pee Dee River Watershed or tributaries thereof, which they knew or should have known contaminated Plaintiff's water sources and interfered with Plaintiff's property rights; and

(b) Supplier Defendants continued to supply these chemicals to Discharger Defendants, knowing that they discharged these chemicals into the Pee Dee River Watershed or tributaries thereof, which Supplier Defendants knew or should have known contaminated Plaintiff's water sources and interfered with Plaintiff's property rights.

## FIRST CAUSE OF ACTION

### Private Nuisance

145. Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

146. Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water treatment and distribution system for

41

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

residents of Horry County and other counties. It uses its properties for those purposes, including the construction of the Socastee SWTP and a raw water intake, raw water pump station, and related infrastructure to withdraw raw water from the Intracoastal Waterway and treat and distribute it as potable drinking water for customers in Horry County.

147.    Through the conduct described herein, Defendants created, contributed to, and/or maintained a nuisance; that is, the contamination of the Pee Dee River Watershed, the Waccamaw River, and the Intracoastal Waterway with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals at concentrations exceeding those EPA deems unsafe for consumption.

148.    Due to Defendants' contamination, Plaintiff cannot provide water to its customers without PFAS, or even at PFAS concentrations that comply with EPA's MCLs, absent advanced water treatment technology.

149.    Defendants' contamination caused, contributed to, and/or maintains a nuisance that substantially and unreasonably interferes with Plaintiff's use and enjoyment of its properties, interferes with Plaintiff's properties and its property rights, damages Plaintiff's properties, and causes Plaintiff additional inconvenience, annoyance, and harm.

150.    Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights.

151.    As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages from Defendants' contamination of the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway, including loss in value, the cost of removing Defendants' PFAS, PFAS-related engineering costs, and other damages to be proved at trial.

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

152.  Defendants' PFAS contamination of Plaintiff's water sources renders Plaintiff unable to use its property to construct and operate a SWTP equipped with only conventional water treatment technologies. Instead, any SWTP that Plaintiff implements must utilize advanced water treatment technologies that are capable of removing Defendants' PFAS. Defendants' interference with Plaintiff's use of its property for water treatment is direct, current, and concrete, and it has and will continue to cause Plaintiff to incur PFAS-related engineering costs that it would not have incurred if Plaintiff was able to build a conventional SWTP that was not forced to address PFAS.

153.  In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

154.  The ongoing contamination of the Intracoastal Waterway and the resulting interference with Plaintiff's properties constitutes a continuing irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to fund the measures necessary to prevent these PFAS from continuing to interfere with Plaintiff's use and enjoyment of its land and its use of the Intracoastal Waterway to supply potable water to its customers.

155.  Defendants' interference with Plaintiff's use of its properties can be abated by funding the evaluation, testing, acquisition, installation, operation, and maintenance of advanced water treatment technology at Plaintiff's Socastee SWTP to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

156.  Defendants are jointly and severally liable to Plaintiff for all damages resulting from this nuisance, and the costs of its abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

**SECOND CAUSE OF ACTION**

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

**Public Nuisance**

157.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

158.    Plaintiff is a special purpose district created for the purpose of constructing, operating, maintaining, improving, and extending a water treatment and distribution system for residents of Horry County and other counties. It uses its properties for those purposes, including the construction of the Socastee SWTP and a raw water intake, raw water pump station, and related infrastructure to withdraw raw water from the Intracoastal Waterway and treat and distribute it as potable drinking water for customers in Horry County.

159.    Plaintiff's customers use the water Plaintiff provides for many purposes, including drinking, cooking, bathing, cleaning, washing, and watering plants and gardens.

160.    Plaintiff's customers, and indeed all residents in Plaintiff's community, have a right to water that is reasonably pure and safe for their use—and thus free from contamination by Defendants' PFOA, PFOS, PFNA, PFHxS, PFBS, and GenX Chemicals. Defendants' contamination unreasonably interferes with, disrupts, and threatens public health, safety, and order. Indeed, EPA makes clear that there is no safe dose for consuming PFOA and PFOS.

161.    Plaintiff has sustained special injuries as a result of Defendants' public nuisance, including but not limited to, the lost use of its properties; the inability, absent advanced treatment technologies, to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by EPA; expenses associated with the evaluation, testing, acquisition, installation, operation, and maintenance of required treatment technologies to remove unsafe concentrations of these PFAS from water; expenses incurred in discovering and identifying sources of Defendants' contamination; interference with Plaintiff's

44

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

right to use the Intracoastal Waterway; and interference with Plaintiff's right to use its properties to construct and operate a SWTP and related water treatment and distribution infrastructure.

162. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer special injury and damages related to Defendants' contamination of the Pee Dee River Watershed, the Waccamaw River, and the Intracoastal Waterway.

163. Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights and endangers the health of Plaintiff's customers, consumers of Plaintiff's drinking water, and Plaintiff's community.

164. As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages from Defendants' contamination of the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway, including loss in value, the cost of removing Defendants' PFAS, PFAS-related engineering costs, and other damages to be proved at trial.

165. In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

166. Defendants' ongoing contamination constitutes a continuing threat to public health, safety, and order, and it constitutes irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to fund the measures necessary to prevent these PFAS from continuing to threaten public health and safety and ensure that Plaintiff's customers and residents of Plaintiff's community receive water free from PFAS.

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

167.    Defendants' contamination of potable water with unsafe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals can be abated by requiring Defendants to fund the evaluation, testing, acquisition, installation, operation, and maintenance of advanced water treatment technology at Plaintiff's Socastee SWTP to remove PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

168.    Defendants are jointly and severally liable to Plaintiff for all damages resulting from this nuisance, the costs of abatement in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## THIRD CAUSE OF ACTION

### Negligence, Gross Negligence, and/or Recklessness

169.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

170.    Discharger Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to avoid causing an unreasonable risk of harm to others, which includes preventing the direct and/or indirect discharge of these PFAS into surface waters upstream of Plaintiff's SWTP, thereby contaminating Plaintiff's water sources and interfering with Plaintiff's property rights.

171.    Discharger Defendants knew or should have known that the PFAS they discharged were environmentally persistent, bioaccumulative, dose-additive, and toxic; that conventional wastewater treatment technologies utilized by themselves and/or their WWTPs could not remove their PFAS; and that surface waters—including the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway—were vulnerable to the contamination that has taken and now takes place.

172.    Discharger Defendants nonetheless negligently, recklessly, wantonly, and/or willfully breached their duty in causing products containing or degrading to PFOA, PFOS, PFHxS,

46

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

PFNA, PFBS, and/or GenX Chemicals to escape their premises and contaminate the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway, thereby contaminating Plaintiff's water sources and interfering with Plaintiff's property rights.

173.   Supplier Defendants have a duty to use due care in the manufacturing, formulation, handling, control, disposal, labeling, and creation and dissemination of requirements and instructions for the use and disposal of products containing or that degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to ensure the proper use and disposal of these products and prevent their improper use and disposal.

174.   Supplier Defendants had superior knowledge that their PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals contained in or degrading from their products were environmentally persistent, bioaccumulative, dose-additive, and toxic; that conventional wastewater treatment technologies utilized by wastewater treatment facilities could not remove these PFAS; that conventional water treatment technologies utilized by water systems like Plaintiff's could not remove these PFAS; and that surface waters, including the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway, were vulnerable to the contamination that now takes place.

175.   By continually supplying their PFAS-containing products without providing their customers with proper instruction and/or direction on appropriate PFAS disposal measures, or otherwise preventing the discharge of their PFAS to surface waters, Supplier Defendants breached their duty of care and negligently, recklessly, wantonly, and willfully created the risk that their PFAS would contaminate the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway, thereby contaminating Plaintiff's water sources and interfering with Plaintiff's property rights.

47

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

176.    Additionally, Defendant Burlington had a duty to use due care in the manufacturing, handling, control, disposal, labeling, and instructing for the use and disposal of biosolid products that contain PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to ensure the proper use of these products and prevent contamination of surface waters.

177.    By continually supplying biosolid products without providing warnings, proper instructions, or direction on the dangers of these PFAS and their properties, or otherwise preventing their contamination of surface waters, Burlington negligently, recklessly, wantonly, and/or willfully created the risk that its PFAS would contaminate the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway, thereby contaminating Plaintiff's water sources and interfering with Plaintiff's property rights.

178.    Because Burlington created the risk of harm from PFAS-contaminated water, it had a duty to ensure that users of its biosolid products did not allow PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to escape its users' premises and contaminate the Pee Dee River Watershed, Waccamaw River, and Intracoastal Waterway. Burlington also had a duty to warn others, including Plaintiff, of the danger presented by water contaminated with its PFAS.

179.    Burlington negligently, recklessly, wantonly, and willfully breached its duty by failing to prevent the discharge of these PFAS from its biosolid products into the Pee Dee River Watershed, thereby contaminating Plaintiff's water sources and interfering with Plaintiff's property rights, and by failing to warn Plaintiff of the danger presented by water contaminated by its PFAS.

180.    As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, damages from

48

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Defendants' contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including but not limited to loss in property value; the costs of removing Defendants' PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals; the costs of evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Defendants' PFAS; and other damages to be proved at trial.

181.    Defendants are jointly and severally liable to Plaintiff for all damages resulting from their conduct, practices, actions, omissions, and inactions, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

### Strict Products Liability – Ultrahazardous Activity
### (Supplier Defendants)

182.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

183.    PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

184.    Supplier Defendants manufactured, formulated, handled, sold, and/or distributed products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to Discharger Defendants, knowing that these PFAS have been, and are presently, discharged to surface waters, and thereby contaminate Plaintiff's water sources and require Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

185.    Rather than require the proper disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals, Supplier Defendants required or permitted Discharger Defendants to discharge these products, which they knew to be hazardous,

49

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

to surface waters upstream from Plaintiff's water sources and Plaintiff's Socastee SWTP and related infrastructure projects.

186.     Supplier Defendants knew that PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals were environmentally persistent, bioaccumulative, dose-additive, and toxic; and Supplier Defendants knew there was no safe dose of PFOA or PFOS.

187.     Supplier Defendants knew or expected that these hazardous PFAS that they were manufacturing, formulating, handling, selling, and/or distributing would reach Plaintiff's water sources and the location of Plaintiff's Socastee SWTP and related infrastructure projects while in essentially the same condition as when they left the hands of Supplier Defendants.

188.     Supplier Defendants manufactured, formulated, handled, sold, and/or distributed their products that were dangerous and unsafe for the uses and purposes for which they were intended despite knowing the consequences of their use and of exposure to their products.

189.     Supplier Defendants and/or their agents were responsible for the unreasonably dangerous products sold and distributed to Discharger Defendants and received financial benefits from their sale and distribution.

190.     As a direct, proximate, and foreseeable result of Supplier Defendants' ultrahazardous activities, their PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

191.     As a direct, proximate, and foreseeable result of Supplier Defendants' ultrahazardous activities, Plaintiff has suffered, and will continue to suffer, damages from Supplier Defendants' contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Waterway, including loss in property value; the costs of removing Supplier Defendants' PFAS; the costs of evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Supplier Defendants' PFAS; and other damages to be proved at trial.

192. Supplier Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice. Their conduct was performed to promote sales of their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in conscious disregard of the probable dangerous consequences of their conduct and the reasonably foreseeable impacts on public health and property.

## FIFTH CAUSE OF ACTION

### Strict Products Liability – Ultrahazardous Activity
### (Burlington)

193. Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

194. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

195. Burlington manufactured, handled, sold, and distributed biosolid products containing or degrading to these PFAS chemicals to agricultural and/or other users, knowing that these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water sources and require Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

196.     Burlington knew that these PFAS chemicals were environmentally persistent, bioaccumulative, toxic, and dose-additive; and Burlington knew that there was no safe dose of PFOA or PFOS.

197.     Burlington knew or expected that these hazardous PFAS that it was manufacturing, handling, selling, and distributing would reach Plaintiff's water sources and the location of Plaintiff's Socastee SWTP and related infrastructure projects while in essentially the same condition as when they left Burlington's hands.

198.     Burlington manufactured, handled, sold, and distributed its biosolid products that were dangerous and unsafe for the uses and purposes for which they were intended, despite knowing the consequences of the use and of, and exposure to, its products.

199.     Burlington and/or its agents were responsible for the unreasonably dangerous products that it sold and distributed, and Burlington received financial benefits from their sales and distribution.

200.     As a direct and proximate result of Burlington's ultrahazardous activities, its PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

201.     As a direct, proximate, and foreseeable result of Burlington's ultrahazardous activities, Plaintiff has suffered, and will continue to suffer, damages from Burlington's contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including loss in property value; the costs of removing Burlington's PFAS; the costs of evaluating, testing,

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

acquiring, installing, operating, and maintaining water treatment technologies capable of removing Burlington's PFAS; and other damages to be proved at trial.

202.    Burlington committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice. Burlington's conduct was performed to promote sales of their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in conscious disregard of the probable dangerous consequences of their conduct and the reasonably foreseeable impacts on public health and property.

## SIXTH CAUSE OF ACTION

### Strict Products Liability – Design Defect
### (Supplier Defendants)

203.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

204.    PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

205.    Supplier Defendants knew that Discharger Defendants would purchase and use their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals without inspection for defects.

206.    Supplier Defendants' products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water sources and require Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

207.    Supplier Defendants' products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals were used in a reasonably foreseeable manner and without substantial change in their condition.

53

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

208.    Supplier Defendants knew that the use of their products containing or degrading to these PFAS in their intended manner would result in PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals contaminating Plaintiff's water sources and forcing Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

209.    Supplier Defendants' products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals sold and/or distributed to Discharger Defendants were and are defective in design and unreasonably dangerous for their intended use because:

(a)     PFAS resist environmental degradation;

(b)     PFAS cause extensive and persistent surface water contamination when used and discharged to surface waters in their foreseeable and intended manner;

(c)     PFAS contamination in drinking water poses significant threats to public health and property; indeed, there is no safe dose of PFOA or PFOS in drinking water;

(d)     Supplier Defendants failed to conduct and/or failed to disclose reasonable, appropriate, and/or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of PFAS; and

(e)     There are and were safe or safer alternatives to PFAS that Supplier Defendants could have employed in their products.

210.    Supplier Defendants' products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals were and are dangerous to a degree beyond that which was and is contemplated by the ordinary consumer.

211.    The foreseeable risk of harm to public health and property posed by Supplier Defendants' products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or

54

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

GenX Chemicals outweighed and outweigh the utility of such products and the cost to Supplier Defendants of reducing or eliminating those risks.

212.   A reasonable product manufacturer would have known of the significant dangers posed by Supplier Defendants' products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

213.   As a direct, proximate, and foreseeable result of the use of Supplier Defendants' defective and unsafe products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals, these PFAS have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

214.   As a direct, proximate, and foreseeable result of the use of Supplier Defendants' defective and unsafe products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals, Plaintiff has suffered, and will continue to suffer, damages from Supplier Defendants' contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including loss in property value; the costs of removing Supplier Defendants' PFAS; the costs of  evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Supplier Defendants' PFAS; and other damages to be proved at trial.

215.   Supplier Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice. Their conduct was performed to promote sales of their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS,

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

and/or GenX Chemicals in conscious disregard of the probable dangerous consequences of their conduct and the reasonably foreseeable impacts on public health and property.

## SEVENTH CAUSE OF ACTION

### Strict Products Liability – Design Defect
### (Burlington)

216.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

217.    PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are unreasonably dangerous to humans and the environment.

218.    Burlington knew that agricultural users would purchase and use its biosolid products containing these PFAS and their precursors without inspection for defects.

219.    Burlington's biosolid products containing or degrading to these PFAS chemicals have been, and are presently, discharged to surface waters, and thereby enter and contaminate Plaintiff's water sources and require Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

220.    Burlington's biosolid products containing these PFAS and their precursors were used in a reasonably foreseeable manner and without substantial change in their condition.

221.    Burlington knew that the use of its biosolid products in their intended manner would result in PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals damaging Plaintiff's water sources and Plaintiff's SWTPs and forcing Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

56

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

222. Burlington's biosolid products were and are defective in design and unreasonably dangerous for their intended use because:

(a)    PFAS resist environmental degradation;

(b)    PFAS leach from soil to groundwater, are highly mobile and water soluble, making groundwater and surface water vulnerable to contamination;

(c)    Applying PFAS-contaminated biosolids to soil near surface waters exposes surface waters to PFAS contamination via overland and groundwater flow;

(d)    PFAS contamination in drinking water poses significant threats to public health and property; indeed, there is no safe dose of PFOA or PFOS in drinking water;

(e)    Burlington failed to conduct and/or failed to disclose reasonable, appropriate, and/or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of PFAS; and

(f)    There are and were safe or safer feasible alternatives to PFAS-contaminated biosolids that Burlington could have employed in its products.

223. Burlington's products containing or degrading to these PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals were and are dangerous beyond that which was and is contemplated by the ordinary consumer.

224. The foreseeable risk of harm to public health and property posed by Burlington's products containing these PFAS outweighed and outweigh the utility of such products and the cost to Burlington of reducing or eliminating those risks.

225. A reasonable product manufacturer knew or should have known of the significant dangers posed by Burlington's products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

226.    As a direct and proximate result of the sale and application of Burlington's defective and unsafe biosolid products, these PFAS have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

227.    As a direct, proximate, and foreseeable result of the sale and application of Burlington's defective and unsafe biosolid products, Plaintiff has suffered, and will continue to suffer, damages from Burlington's contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including loss in property value; the costs of removing Burlington's PFAS; the costs of  evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Burlington's PFAS; and other damages to be proved at trial.

228.    Burlington committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice. Burlington's conduct was performed to promote sales of their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in conscious disregard of the probable dangerous consequences of their conduct and the reasonably foreseeable impacts on public health and property.

## EIGHTH CAUSE OF ACTION

### Strict Products Liability – Failure to Warn
### (Supplier Defendants)

229.    Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

230.    Supplier Defendants design, manufacture, formulate, promote, market, and/or distribute products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals.

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

231.    Supplier Defendants' products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals are used by Discharger Defendants in a reasonably foreseeable manner and without substantial change in the condition of such products, and Supplier Defendants knew that Discharger Defendants purchase and use their products without inspection for defects.

232.    Supplier Defendants knew that the use of their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals purchased or otherwise acquired from them would result in their products being discharged to surface waters, and thereby enter and contaminate Plaintiff's water sources and require Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

233.    Supplier Defendants knew that their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals were environmentally persistent and bioaccumulative, that not all of their products are exhausted or adhere in Discharger Defendants' applications, that a portion of their products enter wastewater and are thus discharged via Discharger Defendants' sewer pipes, and that wastewater treatment facilities utilize conventional wastewater treatment methods that cannot remove their products from wastewater before it is discharged to surface waters that Plaintiff relies on to supply potable water to the public, making Supplier Defendants' products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals unreasonably dangerous.

234.    Despite the known and/or foreseeable risk of contaminating potable water sources and Plaintiff's properties, Supplier Defendants fail to provide adequate warnings to Discharger Defendants and other users or to take any other precautionary measure to mitigate these hazards.

59

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

235.     Supplier Defendants fail to adequately describe such dangers or provide precautionary statements regarding such hazards, and they fail to provide instruction or direction on the proper disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the labeling of their products.

236.     As a direct and proximate result of Supplier Defendants' failure to warn of the dangers and hazards posed by discharging their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals, such PFAS have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

237.     As a direct, proximate, and foreseeable result of Supplier Defendants' conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, damages from Supplier Defendants' contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including loss in property value; the cost of removing Supplier Defendants' PFAS; the costs of evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Supplier Defendants' PFAS; and other damages to be proved at trial.

238.     Supplier Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice. Their conduct was performed to promote sales of their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in conscious disregard of the probable dangerous consequences of their conduct and the reasonably foreseeable impacts on public health and property.

## NINTH CAUSE OF ACTION

60

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## Strict Products Liability – Failure to Warn
### (Burlington)

239.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

240.    Burlington manufactured, formulated, promoted, marketed, and/or distributed biosolid products containing PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors.

241.    Burlington's biosolid products were used by agricultural users in a reasonably foreseeable manner and without substantial change in the condition of such products, and Burlington knew that agricultural users purchased and used its products without inspection for defects.

242.    Burlington knew or should have known that the use of its biosolid products would result in these PFAS being discharged to surface waters, thereby entering and contaminating Plaintiff's water sources and requiring Plaintiff to evaluate, design, acquire, install, operate, and maintain advanced treatment technologies capable of removing PFAS at Plaintiff's Socastee SWTP and related infrastructure projects.

243.    Burlington knew that these PFAS in its biosolid products were environmentally persistent and bioaccumulative, that use of its biosolids would cause PFAS to accumulate in soil and groundwater, and that its PFAS would infiltrate surface waters that Plaintiff relies on to supply potable water to the public—making Burlington's biosolid products unreasonably dangerous.

244.    Despite the known and/or foreseeable risk of contaminating potable water sources and Plaintiff's properties, Burlington failed to provide adequate warnings to its customers and other users or to take any other precautionary measures to mitigate those hazards.

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

245. Burlington failed to adequately describe such dangers or provide precautionary statements regarding such hazards, and it failed to provide instruction or direction on the proper use and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the labeling of such products. As a result of these failures, Burlington's biosolid products were sold and distributed in an unreasonably dangerous and defective condition.

246. As a direct and proximate result of Burlington's failure to warn of the dangers and hazards posed by its biosolid products, PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

247. As a direct, proximate, and foreseeable result of Burlington's conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, damages from Burlington's contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including loss in property value; the cost of removing Burlington's PFAS; the costs of evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Burlington's PFAS; and other damages to be proved at trial.

248. Burlington committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice. Burlington's conduct was performed to promote sales of their products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in conscious disregard of the probable dangerous consequences of their conduct and the reasonably foreseeable impacts on public health and property.

## TENTH CAUSE OF ACTION

### Breach of Implied Warranties
### (Supplier Defendants)

62

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

249.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

250.     Supplier Defendants manufacture, sell, and distribute products to be used in Discharger Defendants' ordinary industrial applications with knowledge of the purposes for which Discharger Defendants use their products.

251.     Supplier Defendants' products include those that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals, and Supplier Defendants know or have reason to know that such products are not fit for the known and ordinary uses at Discharger Defendants' facilities.

252.     Supplier Defendants know that Discharger Defendants indirectly discharge Supplier Defendants' products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to surface waters, including the Pee Dee River Watershed.

253.     Supplier Defendants know that PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals are environmentally persistent, bioaccumulative, dose-additive, and toxic, and Supplier Defendants know there is no safe dose of PFOA or PFOS.

254.     Supplier Defendants have breached applicable implied warranties, and as a result, Supplier Defendants' PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

255.     As a direct, proximate, and foreseeable result of Supplier Defendants' breaches of implied warranties, Plaintiff has suffered, and will continue to suffer, damages from Supplier Defendants' contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including loss in property value; the cost of removing Supplier Defendants' PFAS; the

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

costs of evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Supplier Defendants' PFAS; and other damages to be proved at trial. Plaintiff is entitled to damages in an amount that will address its damages caused by Supplier Defendants' breaches of implied warranties.

## ELEVENTH CAUSE OF ACTION

### Breach of Implied Warranties
### (Burlington)

256.    Plaintiff incorporates the allegations of the preceding paragraphs as if fully set forth herein.

257.    Burlington manufactured, sold, and distributed its biosolid products to be used in ordinary agricultural applications with knowledge of those applications.

258.    Burlington's biosolid products include PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors, and Burlington knew or had reason to know that such biosolids were not fit for the known and ordinary uses on agricultural lands.

259.    Burlington knew that agricultural users of its biosolid products would apply its biosolids to lands nearby or abutting surface waters in the Pee Dee River Watershed, causing Burlington's PFAS to infiltrate these surface waters.

260.    Burlington knew that these PFAS chemicals are environmentally persistent, bioaccumulative, toxic, and dose-additive, and Burlington knew that there is no safe dose of PFOA or PFOS.

261.    Burlington breached applicable implied warranties, and as a result, Burlington's PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors have contaminated Plaintiff's water sources and Plaintiff's Socastee SWTP will be unable to provide potable water

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

free from contamination with these chemicals at concentrations reasonably safe for consumption absent costly advanced treatment technologies.

262. As a direct, proximate, and foreseeable result of Burlington's breach of implied warranties, Plaintiff has suffered, and will continue to suffer, damages from Burlington's contamination of the Pee Dee Watershed, Waccamaw River, and Intracoastal Waterway, including loss in property value; the cost of removing Burlington's PFAS; the costs of evaluating, testing, acquiring, installing, operating, and maintaining water treatment technologies capable of removing Burlington's PFAS; and other damages to be proved at trial. Plaintiff is entitled to damages in an amount that will address its damages caused by Burlington's breaches of implied warranties.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands trial by jury, and respectfully requests that the Court grant the following relief where available:

(a) Enter a judgment and decree against all Defendants, jointly and severally, requiring them to abate the nuisance they have caused, created, and maintained;

(b) Enter a judgment and decree against all Defendants, jointly and severally, requiring them to remedy the contamination of Plaintiff's water supply with their PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals by funding the evaluation, testing, acquisition, installation, operation, and maintenance of treatment technology capable of removing them;

(c) Enter a judgment against all Defendants, jointly and severally, for past, present, and future compensatory damages in such amounts as the evidence shows Plaintiff to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages, as applicable, in an amount sufficient to punish and penalize Defendants, and to deter them from repeating their wrongful conduct, and all costs; and

ELECTRONICALLY FILED - 2025 Dec 29 3:03 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

(d)     Award such other relief and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

*/s/ John B. White, Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

December 29, 2025

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN THE COURT OF COMMON PLEAS

FIFTEENTH JUDICIAL CIRCUIT

IN RE:

PFAS LITIGATION COORDINATED DOCKET

_____

Grand Strand Water and Sewer Authority,

*Plaintiff*,

v.

Burlington Industries, Inc.; Fiber Industries, LLC;
and Sonoco Products Company,

*Defendants*.

C.A. No. 2025-CP-26-09305

**PROOF OF SERVICE**

Plaintiff Grand Strand Water and Sewer Authority ("Plaintiff") served the Summons and Complaint on Defendant Burlington Industries, Inc. ("Burlington") via certified mail, mailed on December 17, 2025, from Spartanburg, SC to Burlington's receiver, Peter M. McCoy, Jr., McCoy Law Group, LLC, 15 Prioleau Street, Charleston, South Carolina 29401. The date of delivery was December 23, 2025, as shown on the attached signed USPS Return Receipt Card.

*/s/ John B. White, Jr.*
John B. White, Jr. (SC Bar No. 05996)
Marghretta H. Shisko (SC Bar No. 100106)
Christopher R. Jones (SC Bar No. 101265)
Griffin L. Lynch (SC Bar No. 72518)
JOHN B. WHITE, JR., PA
PO Box 2465 (29304)
291 S. Pine Street
Spartanburg, SC 29302

ELECTRONICALLY FILED - 2025 Dec 29 2:27 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

Spartanburg, SC
December 29, 2025

ELECTRONICALLY FILED - 2025 Dec 29 2:27 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2025 Dec 29 2:27 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Burlington Industries, Inc.
c/o Receiver, Peter M. McCoy Jr.
McCoy Law Group LLC
15 Prioleau Street
Charleston SC 29401

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 6821 1074 1805 70

2. Article Number *(Transfer from service label)*

9589 0710 5270 3452 0726 84

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by *(Printed Name)*  |  C. Date of Delivery
Frank Cennely  |  12/23/25

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ___ail
☐ ___ail Restricted Delivery
(over $___)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053        Domestic Return Receipt

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

| | |
|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF HORRY<br><br>IN RE:<br>PFAS LITIGATION COORDINATED<br>DOCKET<br><br><br>Grand Strand Water and Sewer Authority,<br><br>               Plaintiff,<br><br>v.<br><br>AGC Chemicals Americas, Inc.; Aladdin Manufacturing Corporation; Archroma U.S., Inc; Arkema, Inc.; Burlington Industries, Inc.; Clariant Corporation; Corteva, Inc.; Daikin America, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; DuPont de Nemours, Inc.; EIDP, Inc.; Elevate Textiles, Inc.; Fiber Industries, LLC; Huntsman International, LLC; International Paper Company; INV Performance Surfaces, LLC; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc.; Nan Ya Plastics Corporation, America; PRET Advanced Materials, LLC; Red Rock Disposal, LLC; Sampson County Disposal, LLC; Sonoco Products Company; Syensqo Specialty Polymers USA, LLC (f/k/a Solvay Specialty Polymers USA, LLC); The Chemours Company; and WestRock CP, LLC,<br><br>               Defendants. | IN THE COURT OF COMMON PLEAS<br><br>FIFTEENTH JUDICIAL CIRCUIT<br><br><br>C.A. No.: 2025-CP-26-09305<br><br><br>**DEFENDANT SONOCO PRODUCTS COMPANY'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT** |

Defendant Sonoco Products Company ("Sonoco"), denying each and every allegation not specifically admitted herein, hereby submits its Answer to Plaintiff Grand Strand Water and Sewer Authority's ("Plaintiff" or "GSWSA") Amended Complaint (the "Complaint").[1]

---

[1] Sonoco accepted service of Plaintiff's original Complaint, and thereafter Plaintiff filed its Amended Complaint before the deadline for Sonoco to respond to the original Complaint. By

Page **1** of **53**

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## STATEMENT OF THE CASE[2]

1.      Sonoco denies each and every allegation in Paragraph 1.

2.      Sonoco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint, and therefore denies them.

3.      Sonoco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint, and therefore denies them.

4.      Sonoco denies each and every allegation in Paragraph 4.

5.      Sonoco denies each and every allegation in Paragraph 5.

6.      Sonoco denies each and every allegation in Paragraph 6.

7.      Sonoco denies each and every allegation in Paragraph 7.

8.      Sonoco denies each and every allegation in Paragraph 8.

## DISCLAIMER

9.      Paragraph 9 sets forth legal conclusions to which no response is required.  To the extent a response is required, Sonoco denies each and every allegation in Paragraph 9.

10.      The allegations in Paragraph 10 sets forth legal conclusions to which no response is required.  The allegations in Paragraph 10 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco denies each and every allegation in Paragraph 10.

---

agreement with counsel for Plaintiff, the Amended Complaint supersedes and/or replaces the original Complaint and Sonoco need not respond to the original Complaint.

[2] The headers used in this Answer are for ease of reference and correspond to the headers set forth in Plaintiff's Amended Complaint.  They do not constitute an admission by Sonoco as to any allegation in the Amended Complaint.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

11.    Paragraph 11 sets forth legal conclusions to which no response is required.  To the extent a response is required, Sonoco denies each and every allegation in Paragraph 11.

12.    Paragraph 12 sets forth legal conclusions to which no response is required.  To the extent a response is required, Sonoco denies each and every allegation in Paragraph 12.

## JURISDICTION AND VENUE

13.    Paragraph 13 sets forth legal conclusions to which no response is required.  To the extent a response is required, Sonoco denies each and every allegation in Paragraph 13.

14.    Paragraph 14 sets forth legal conclusions to which no response is required.  To the extent a response is required, Sonoco denies each and every allegation in Paragraph 14.

15.    Paragraph 15 sets forth legal conclusions to which no response is required.  To the extent a response is required, Sonoco denies each and every allegation in Paragraph 15.

## PARTIES

**I.    Plaintiff**

16.    Sonoco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint, and therefore denies them.

17.    Sonoco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint, and therefore denies them.

18.    Sonoco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint, and therefore denies them.

**II.    Discharger Defendants.**

19.    The allegations in Paragraph 19 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint, and therefore denies them.

20.     The allegations in Paragraph 20 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and therefore denies them.

21.     The allegations in Paragraph 21 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint, and therefore denies them.

22.     The allegations in Paragraph 22 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint, and therefore denies them.

23.     The allegations in Paragraph 23 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint, and therefore denies them.

24.     The allegations in Paragraph 24 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

25.     The allegations in Paragraph 25 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint, and therefore denies them.

26.     The allegations in Paragraph 26 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint, and therefore denies them.

27.     The allegations in Paragraph 27 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint, and therefore denies them.

28.     In response to Paragraph 28 of the Complaint, Sonoco admits that it is a South Carolina corporation that owns and operates a facility located at 1 N 2nd Street, Hartsville, South Carolina 29550.  Sonoco denies the each and every remaining allegation in Paragraph 28 that is directed at Sonoco.

29.     The allegations in Paragraph 29 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint, and therefore denies them.

## III.     Supplier Defendants.

30.     The allegations in Paragraph 30 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint, and therefore denies them.

31.     The allegations in Paragraph 31 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint, and therefore denies them.

32.     The allegations in Paragraph 32 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 of the Complaint, and therefore denies them.

33.     The allegations in Paragraph 33 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint, and therefore denies them.

34.     The allegations in Paragraph 34 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint, and therefore denies them.

35.     The allegations in Paragraph 35 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

36.     The allegations in Paragraph 36 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint, and therefore denies them.

37.     The allegations in Paragraph 37 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint, and therefore denies them.

38.     The allegations in Paragraph 38 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint, and therefore denies them.

39.     The allegations in Paragraph 39 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 39 of the Complaint, and therefore denies them.

40.     The allegations in Paragraph 40 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 40 of the Complaint, and therefore denies them.

41.     The allegations in Paragraph 41 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 41 of the Complaint, and therefore denies them.

## FACTUAL ALLEGATIONS

### I.　　Background and Hazards of PFAS

42.　　Sonoco lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 42 of the Complaint, and therefore denies them.

43.　　Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 43 of the Complaint, and therefore denies them.

44.　　Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 44 of the Complaint, and therefore denies them.

45.　　Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 45 of the Complaint, and therefore denies them.

46.　　Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 46 of the Complaint, and therefore denies them.

47.　　Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 47 of the Complaint, and therefore denies them.

48.　　Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 48 of the Complaint, and therefore denies them.

49.　　Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 49 of the Complaint, and therefore denies them.

50.　　Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 50 of the Complaint, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

51.    Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 51 of the Complaint, and therefore denies them.

52.    In response to Paragraph 52 of the Complaint, Sonoco states that the publication referred to in Paragraph 52 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 52.

53.    In response to Paragraph 53 of the Complaint, Sonoco states that the publication referred to in Paragraph 53 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 53.

54.    In response to Paragraph 54 of the Complaint, Sonoco states that the publication referred to in Paragraph 54 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 54.

55.    In response to Paragraph 55 of the Complaint, Sonoco states that the publication referred to in Paragraph 55 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 55.

56.    In response to Paragraph 56 of the Complaint, Sonoco states that the publication referred to in Paragraph 56 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 56.

57.    In response to Paragraph 57 of the Complaint, Sonoco states that the publication referred to in Paragraph 57 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 57.

58.    In response to Paragraph 58 of the Complaint, Sonoco states that the publication referred to in Paragraph 58 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 58.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

59.     In response to Paragraph 59 of the Complaint, Sonoco states that the publication referred to in Paragraph 59 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 59.

60.     In response to Paragraph 60 of the Complaint, Sonoco states that the publication referred to in Paragraph 60 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 60.

61.     In response to Paragraph 61 of the Complaint, Sonoco states that the publication referred to in Paragraph 61 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 61.

62.     In response to Paragraph 62 of the Complaint, Sonoco states that the publication referred to in Paragraph 62 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 62.

63.     In response to Paragraph 63 of the Complaint, Sonoco states that the publication referred to in Paragraph 63 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 63.

64.     In response to Paragraph 64 of the Complaint, Sonoco states that the publication referred to in Paragraph 64 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 64.

65.     In response to Paragraph 65 of the Complaint, Sonoco states that the publication referred to in Paragraph 65 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 65.

66.     In response to Paragraph 66 of the Complaint, Sonoco states that the publication referred to in Paragraph 66 speaks for itself and denies any mischaracterization of the same.  To the extent any additional response is required, Sonoco denies the allegations in Paragraph 66.

**II.     Contamination of Waccamaw River and the Intracoastal Waterway with PFAS**

67.     Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 67, and therefore denies them.

68.     Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 68, and therefore denies them.

69.     In response to Paragraph 69 of the Complaint, Sonoco admits only that it owns and operates a facility located at 1 N 2nd Street, Hartsville, South Carolina 29550.  Sonoco denies the each and every remaining allegation in Paragraph 28 that is directed at Sonoco.

70.     Sonoco denies the allegations in Paragraph 70 of the Complaint as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 70, and therefore denies them.

71.     Sonoco denies the allegations in Paragraph 71 of the Complaint as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 71, and therefore denies them.

72.     In response to Paragraph 72 of the Complaint, Sonoco admits only that it owns and operates a facility in Hartsville, South Carolina and denies the remaining allegations as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 72, and therefore denies them.  Further answering the allegations of Paragraph 72, Sonoco asserts that, with respect to PFAS, it complied with government permits issued to it relating to wastewater.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

73. The allegations in Paragraph 73 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 73, and therefore denies them.

74. The allegations in Paragraph 74 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 74, and therefore denies them.

75. Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 75 of the Complaint, and therefore denies them.

76. Sonoco denies each and every allegation in Paragraph 76 of the Complaint as it relates to Sonoco. Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 76 of the Complaint, and therefore denies them.

77. Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 77 of the Complaint, and therefore denies them.

78. Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 78 of the Complaint, and therefore denies them.

79. Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 79 of the Complaint, and therefore denies them.

80. Sonoco denies each and every allegation in Paragraph 80 of the Complaint.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

81.     Sonoco denies the allegations in Paragraph 81 of the Complaint as they relate to Sonoco. Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 81 of the Complaint, and therefore denies them.

82.     Sonoco denies the allegations in Paragraph 82 of the Complaint as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 82, and therefore denies them.

83.     Sonoco denies the allegations in Paragraph 83 of the Complaint as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 83, and therefore denies them.

84.     Sonoco denies the allegations in Paragraph 84 of the Complaint as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 84, and therefore denies them.

85.     Sonoco denies the allegations in Paragraph 85 of the Complaint as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 85, and therefore denies them.

86.     Sonoco denies each and every allegation in Paragraph 86 of the Complaint.

### III.     Supplier Defendants Had Superior Knowledge of PFAS's Hazardous Properties.

87.     Sonoco denies each and very allegation in Paragraph 87 of the Complaint.

88.     The allegations in Paragraph 88 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 88, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

89.    The allegations in Paragraph 89 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 89, and therefore denies them.

90.    The allegations in Paragraph 90 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 90, and therefore denies them.

91.    The allegations in Paragraph 91 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 91, and therefore denies them.

92.    The allegations in Paragraph 92 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 92, and therefore denies them.

93.    The allegations in Paragraph 93 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 93, and therefore denies them.

94.    The allegations in Paragraph 94 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 94, and therefore denies them.

95.    The allegations in Paragraph 95 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 95, and therefore denies them.

96.    The allegations in Paragraph 96 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 96, and therefore denies them.

97.    The allegations in Paragraph 97 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 97, and therefore denies them.

98.    The allegations in Paragraph 98 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 98, and therefore denies them.

99.    The allegations in Paragraph 99 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 99, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

100.    The allegations in Paragraph 100 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 100, and therefore denies them.

101.    The allegations in Paragraph 101 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 101, and therefore denies them.

102.    The allegations in Paragraph 102 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 102, and therefore denies them.

103.    The allegations in Paragraph 103 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 103, and therefore denies them.

104.    The allegations in Paragraph 104 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 104, and therefore denies them.

105.    The allegations in Paragraph 105 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 105, and therefore denies them.

106. The allegations in Paragraph 106 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 106, and therefore denies them.

107. The allegations in Paragraph 107 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 107, and therefore denies them.

108. The allegations in Paragraph 108 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 108, and therefore denies them.

109. The allegations in Paragraph 109 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 109, and therefore denies them.

110. The allegations in Paragraph 110 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 110, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

111.    The allegations in Paragraph 111 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 111, and therefore denies them.

112.    The allegations in Paragraph 112 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 112, and therefore denies them.

113.    The allegations in Paragraph 113 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 113, and therefore denies them.

114.    The allegations in Paragraph 114 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 114, and therefore denies them.

115.    The allegations in Paragraph 115 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 115, and therefore denies them.

116.    Sonoco denies the allegations in Paragraph 116 of the Complaint as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

remaining allegations set forth in Paragraph 116, and therefore denies them, including subparts (a) – (j).

**IV.     Supplier Defendants Were Directly Involved in Discharger Defendants' PFAS Use and Disposal.**

117.     The allegations in Paragraph 117 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 117, and therefore denies them.

118.     The allegations in Paragraph 118 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 11, and therefore denies them.

119.     The allegations in Paragraph 119 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 119, and therefore denies them.

120.     Sonoco denies the allegations in Paragraph 120 of the Complaint as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 120, and therefore denies them.

121.     Sonoco denies the allegations in Paragraph 121 of the Complaint as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 121, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

122. Sonoco denies the allegations in Paragraph 122 of the Complaint as they relate to Sonoco. Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 122, and therefore denies them.

123. Sonoco denies the allegations in Paragraph 123 of the Complaint as they relate to Sonoco. Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 123, and therefore denies them.

124. Sonoco denies the allegations in Paragraph 124 of the Complaint as they relate to Sonoco. Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 124, and therefore denies them.

125. Sonoco denies the allegations in Paragraph 125 of the Complaint as they relate to Sonoco. Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 125, and therefore denies them.

126. The allegations in Paragraph 126 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 126, and therefore denies them

## V. Supplier Defendants Delayed, Suppressed, and Interfered with the Advance of Scientific Understanding and Regulation of Their PFAS Products.

127. The allegations in Paragraph 127 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 127, and therefore denies them.

128. The allegations in Paragraph 128 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 128, and therefore denies them.

129.    The allegations in Paragraph 129 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 129, and therefore denies them.

**VI.    Old DuPont Orchestrated a Multi-Step Corporate Restructuring Designed to Shield Its Valuable Assets from its PFAS Liabilities.**

130.    The allegations in Paragraph 130 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 130, and therefore denies them.

131.    The allegations in Paragraph 131 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 131, and therefore denies them.

132.    The allegations in Paragraph 132 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 132, and therefore denies them.

133.    The allegations in Paragraph 133 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 133, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

134.     The allegations in Paragraph 134 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 134, and therefore denies them.

135.     The allegations in Paragraph 135 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 135, and therefore denies them.

136.     The allegations in Paragraph 136 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 136, and therefore denies them.

137.     The allegations in Paragraph 137 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 137, and therefore denies them.

138.     The allegations in Paragraph 138 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 138, and therefore denies them.

**VII.     Defendants have harmed Plaintiff and Plaintiff's community.**

139.     Sonoco denies each and every allegation in Paragraph 139 of the Complaint.

140.     Sonoco denies each and every allegation in Paragraph 140 of the Complaint.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

141. Sonoco denies each and every allegation in Paragraph 141 of the Complaint.

142. Sonoco denies each and every allegation in Paragraph 142 of the Complaint.

143. Sonoco denies each and every allegation in Paragraph 143 of the Complaint.

144. Sonoco denies each and every allegation in Paragraph 144 of the Complaint including subparts (a) – (b).

### FIRST CAUSE OF ACTION
**Private Nuisance**

145. Sonoco incorporates its responses to all prior allegations by reference as if fully set forth herein.

146. Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 146 of the Complaint, and therefore denies them.

147. Sonoco denies each and every allegation in Paragraph 147 of the Complaint.

148. Sonoco denies each and every allegation in Paragraph 148 of the Complaint.

149. Sonoco denies each and every allegation in Paragraph 149 of the Complaint.

150. Sonoco denies each and every allegation in Paragraph 150 of the Complaint.

151. Sonoco denies each and every allegation in Paragraph 151 of the Complaint.

152. Sonoco denies each and every allegation in Paragraph 152 of the Complaint.

153. Sonoco denies each and every allegation in Paragraph 153 of the Complaint.

154. Sonoco denies each and every allegation in Paragraph 154 of the Complaint.

155. Sonoco denies each and every allegation in Paragraph 155 of the Complaint.

156. Sonoco denies each and every allegation in Paragraph 156 of the Complaint.

### SECOND CAUSE OF ACTION
**Public Nuisance**

157. Sonoco incorporates its responses to all prior allegations by reference as if fully set forth herein.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

158.    Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 158 of the Complaint, and therefore denies them.

159.    Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 159 of the Complaint, and therefore denies them.

160.    Paragraph 160 sets forth legal conclusions to which no response is required.  To the extent a response is required, Sonoco denies each and every allegation in Paragraph 160.

161.    Sonoco denies each and every allegation in Paragraph 161 of the Complaint.

162.    Sonoco denies each and every allegation in Paragraph 162 of the Complaint.

163.    Sonoco denies each and every allegation in Paragraph 163 of the Complaint.

164.    Sonoco denies each and every allegation in Paragraph 164 of the Complaint.

165.    Sonoco denies each and every allegation in Paragraph 165 of the Complaint.

166.    Sonoco denies each and every allegation in Paragraph 166 of the Complaint.

167.    Sonoco denies each and every allegation in Paragraph 167 of the Complaint.

168.    Sonoco denies each and every allegation in Paragraph 168 of the Complaint.

### THIRD CAUSE OF ACTION
### Negligence, Gross Negligence, and/or Recklessness

169.    Sonoco incorporates its responses to all prior allegations by reference as if fully set forth herein.

170.    Paragraph 170 of the Complaint sets forth legal conclusions to which no response is required.  To the extent a response is required, Sonoco denies each and every allegation in Paragraph 170 of the Complaint.

171.    Sonoco denies each and every allegation in Paragraph 171 of the Complaint.

172.    Sonoco denies each and every allegation in Paragraph 172 of the Complaint.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

173.    The allegations in Paragraph 173 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 173, and therefore denies them.

174.    The allegations in Paragraph 174 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 174, and therefore denies them.

175.    The allegations in Paragraph 175 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 175, and therefore denies them.

176.    The allegations in Paragraph 176 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 176, and therefore denies them.

177.    The allegations in Paragraph 177 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 177, and therefore denies them.

178.    The allegations in Paragraph 178 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 178, and therefore denies them.

179.    The allegations in Paragraph 179 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 179, and therefore denies them.

180.    Sonoco denies each and every allegation in Paragraph 180 of the Complaint.

181.    Sonoco denies each and every allegation in Paragraph 181 of the Complaint.

**FOURTH CAUSE OF ACTION**
**Strict Products Liability – Ultrahazardous Activity**
**(Supplier Defendants)**

182.    Sonoco incorporates its responses to all prior allegations by reference as if fully set forth herein.

183.    Sonoco lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 183, and therefore denies them.

184.    The allegations in Paragraph 184 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 184, and therefore denies them.

185.    The allegations in Paragraph 185 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 185, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

186.     The allegations in Paragraph 186 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 186, and therefore denies them.

187.     The allegations in Paragraph 187 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 187, and therefore denies them.

188.     The allegations in Paragraph 188 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 188, and therefore denies them.

189.     The allegations in Paragraph 189 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 189, and therefore denies them.

190.     The allegations in Paragraph 190 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 190, and therefore denies them.

191.     The allegations in Paragraph 191 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 191, and therefore denies them.

192. The allegations in Paragraph 192 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 192, and therefore denies them.

## FIFTH CAUSE OF ACTION
### Strict Products Liability – Ultrahazardous Activity
### (Burlington)

193. Sonoco incorporates its responses to all prior allegations by reference as if fully set forth herein.

194. The allegations in Paragraph 194 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 194, and therefore denies them.

195. The allegations in Paragraph 195 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 195, and therefore denies them.

196. The allegations in Paragraph 196 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 196, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

197. The allegations in Paragraph 197 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 197, and therefore denies them.

198. The allegations in Paragraph 198 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 198, and therefore denies them.

199. The allegations in Paragraph 199 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 199.

200. The allegations in Paragraph 200 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 200, and therefore denies them.

201. The allegations in Paragraph 201 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 201, and therefore denies them.

202. The allegations in Paragraph 202 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 202, and therefore denies them.

## SIXTH CAUSE OF ACTION
### Strict Products Liability – Design Defect
### (Supplier Defendants)

203.    Sonoco incorporates its responses to all prior allegations by reference as if fully set forth herein.

204.    The allegations in Paragraph 204 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 204, and therefore denies them.

205.    The allegations in Paragraph 205 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 205, and therefore denies them.

206.    The allegations in Paragraph 206 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 206, and therefore denies them.

207.    The allegations in Paragraph 207 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 207, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

208.    The allegations in Paragraph 208 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 208, and therefore denies them.

209.    The allegations in Paragraph 209 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 209, and therefore denies them including subparts (a) – (e).

210.    The allegations in Paragraph 210 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 210, and therefore denies them.

211.    The allegations in Paragraph 211 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 211, and therefore denies them.

212.    The allegations in Paragraph 212 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 212, and therefore denies them.

213.    The allegations in Paragraph 213 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 213, and therefore denies them.

214.    The allegations in Paragraph 214 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 214, and therefore denies them.

215.    The allegations in Paragraph 215 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 215, and therefore denies them.

**SEVENTH CAUSE OF ACTION**
**Strict Products Liability – Design Defect**
**(Burlington)**

216.    Sonoco incorporates its responses to all prior allegations by reference as if fully set forth herein.

217.    Sonoco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 217 of the Complaint, and therefore denies them.

218.    The allegations in Paragraph 218 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 218, and therefore denies them.

219.    The allegations in Paragraph 219 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 219, and therefore denies them.

220.    The allegations in Paragraph 220 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 220, and therefore denies them.

221.    The allegations in Paragraph 221 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 221, and therefore denies them.

222.    The allegations in Paragraph 222 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 222, and therefore denies them including subparts (a) – (f).

223.    The allegations in Paragraph 223 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 223, and therefore denies them.

224.    The allegations in Paragraph 224 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 224, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

225.    The allegations in Paragraph 225 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 225, and therefore denies them.

226.    The allegations in Paragraph 226 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 226, and therefore denies them.

227.    The allegations in Paragraph 227 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 227, and therefore denies them.

228.    The allegations in Paragraph 228 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 228, and therefore denies them.

### EIGHTH CAUSE OF ACTION
**Strict Products Liability – Failure to Warn**
**(Supplier Defendants)**

229.    Sonoco incorporates its responses to all prior allegations by reference as if fully set forth herein.

230.    The allegations in Paragraph 230 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 230, and therefore denies them.

231.    The allegations in Paragraph 231 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 231, and therefore denies them.

232.    The allegations in Paragraph 232 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 232, and therefore denies them.

233.    Sonoco denies the allegations in Paragraph 233 of the Complaint as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 233.

234.    The allegations in Paragraph 234 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 234, and therefore denies them.

235.    The allegations in Paragraph 235 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 235, and therefore denies them.

236.    The allegations in Paragraph 236 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 236, and therefore denies them.

237. The allegations in Paragraph 237 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 237, and therefore denies them.

238. The allegations in Paragraph 238 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 238, and therefore denies them.

**NINTH CAUSE OF ACTION**
**Strict Products Liability – Failure to Warn**
**(Burlington)**

239. Sonoco incorporates its responses to all prior allegations by reference as if fully set forth herein.

240. The allegations in Paragraph 240 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 240, and therefore denies them.

241. The allegations in Paragraph 241 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 241, and therefore denies them.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

242.    The allegations in Paragraph 242 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 242, and therefore denies them.

243.    The allegations in Paragraph 243 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 243, and therefore denies them.

244.    The allegations in Paragraph 244 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 244, and therefore denies them.

245.    The allegations in Paragraph 245 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 245, and therefore denies them.

246.    The allegations in Paragraph 246 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 246, and therefore denies them.

247.    The allegations in Paragraph 247 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 247, and therefore denies them.

248.    The allegations in Paragraph 248 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 248, and therefore denies them.

## TENTH CAUSE OF ACTION
### Breach of Implied Warranties
### (Supplier Defendants)

249.    Sonoco incorporates its responses to all prior allegations by reference as if fully set forth herein.

250.    The allegations in Paragraph 250 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 250, and therefore denies them.

251.    The allegations in Paragraph 251 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 251, and therefore denies them.

252.    Sonoco denies the allegations in Paragraph 252 of the Complaint as they relate to Sonoco.  Sonoco lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in Paragraph 252, and therefore denies them.

253.    The allegations in Paragraph 253 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 253, and therefore denies them.

254.    The allegations in Paragraph 254 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 254, and therefore denies them.

255.    The allegations in Paragraph 255 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 255, and therefore denies them.

### ELEVENTH CAUSE OF ACTION
**Breach of Implied Warranties**
**(Burlington)**

256.    Sonoco incorporates its responses to all prior allegations by reference as if fully set forth herein.

257.    The allegations in Paragraph 257 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 257, and therefore denies them.

258.    The allegations in Paragraph 258 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 258, and therefore denies them.

259.    The allegations in Paragraph 259 are not directed at Sonoco and therefore do not require a response from Sonoco.  To the extent a response is required, Sonoco states that it lacks

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 259, and therefore denies them.

260.　The allegations in Paragraph 260 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 260, and therefore denies them.

261.　The allegations in Paragraph 261 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 261, and therefore denies them.

262.　The allegations in Paragraph 262 are not directed at Sonoco and therefore do not require a response from Sonoco. To the extent a response is required, Sonoco states that it lacks knowledge or information sufficient to form a belief about the truth of the allegations set forth in Paragraph 262, and therefore denies them

## PRAYER FOR RELIEF

In response to the WHEREFORE Paragraph that follows Paragraph 262 of the Complaint, Sonoco denies any liability and further denies that Plaintiff is entitled to any of the relief sought in this Paragraph, including subparts (a) - (d).

## ADDITIONAL DEFENSES

Without assuming the burden of proof where it otherwise rests with Plaintiff or another third party, Sonoco further pleads the following additional defenses to all the individual claims alleged in the Complaint. All of the following defenses are pled in the alternative and none of them constitute an admission that Sonoco is liable to Plaintiff or any third party, that Plaintiff or

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

any third party has been or will be injured or damaged in any way, or that Plaintiff or any third party is entitled to any relief whatsoever.

### FIRST DEFENSE

The Complaint, and each cause of action or count alleged therein, fails to state facts sufficient to constitute a claim upon which relief may be granted against Sonoco.

### SECOND DEFENSE

The Complaint, and each alleged claim contained therein, is barred, in whole or in part, by the applicable statutes of limitations and/or repose.

### THIRD DEFENSE

The Complaint, and each alleged claim contained therein, fails to join necessary and indispensable parties.

### FOURTH DEFENSE

The Complaint, and each alleged claim contained therein, is barred, in whole or in part, by the doctrine of laches, waiver, res judicata, estoppel collateral, estoppel, ratification, and unclean hands.

### FIFTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, because Plaintiff is not the real party in interest.

### SIXTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, to the extent Plaintiff has failed to exhaust administrative remedies.

### SEVENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the doctrine of election of remedies.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

### EIGHTH DEFENSE

Pursuant to the South Carolina Contribution Among Tortfeasors Act, S.C. Code Ann. § 15-38-10, et seq., any damages recoverable from Sonoco should be limited to the percentage of the relative degree of fault of Sonoco as compared with other parties to this action, if any, as well as other persons or entities not presently before this Court.

### NINTH DEFENSE

Any injuries and/or damages alleged by Plaintiff were caused or contributed to by the negligence or actual conduct of other persons, firms, corporations, or entities over whom Sonoco had no control or right of control and for whom Sonoco is not responsible.

### TENTH DEFENSE

Any injuries and/or damages alleged by Plaintiff are barred by the doctrines of intervening cause and/or superseding cause.

### ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because none of the alleged acts or omissions of Defendants proximately caused the purported injuries and damages allegedly sustained by Plaintiff.

### TWELFTH DEFENSE

Plaintiff's claims are not ripe for adjudication and should be dismissed for presenting a contingent, hypothetical, or abstract dispute. Plaintiff alleges that it will be required to incur costs at some future date if the United States Environmental Protection Agency requires plaintiff to upgrade its systems to treat PFAS. Until these costs are incurred, Plaintiff cannot recover.

Plaintiff's claims are premature to the extent that neither the State nor the United States Environmental Protection Agency has set final water quality standards, maximum contaminant

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

levels, acceptable soil cleanup levels, or other regulatory standards that are necessary to evaluate whether natural resources have been injured.

### THIRTEENTH DEFENSE

Plaintiff's claims are or may be barred, in whole or in part, because any alleged levels of contamination did not exceed any applicable laws or binding regulatory standards at the relevant times.

### FOURTEENTH DEFENSE

Plaintiff's claims are or may be barred, in whole or in part, because federal, state, and/or local authorities authorized, ratified, or were aware of and acquiesced in actions by Defendants that are the subject of Plaintiff's claims.  Defendants are not responsible or liable for any acts or omissions undertaken by or at the direction of any governmental authority or agency.

### FIFTEENTH DEFENSE

Plaintiff's claims are barred to the extent the "permit shield" doctrine and "federally permitted release" defense applies because any PFAS leachate was discharged pursuant to lawful permits.

### SIXTEENTH DEFENSE

Plaintiff's claims are or may be barred, in whole or in part, by the doctrine of primary jurisdiction.

### SEVENTEENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, under the doctrines of contributory negligence and/or comparative fault, and/or other applicable common law or statutory doctrines.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## EIGHTEENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, because Sonoco's actions were in conformity with (i) any federal, state or other regulations, standards, guidelines, specifications, and laws in effect; (ii) available knowledge and research of the scientific and industrial communities; (iii) generally recognized and prevailing industry standards; and (iv) state of the art in existence at the time the design was prepared and the products were manufactured, handled, sold, distributed, and/or used.

## NINETEENTH DEFENSE

Any product manufactured, handled, designed, sold, distributed, or used by Sonoco and alleged to have caused harm to Plaintiff was, at the time, safer than any reasonable or feasible alternative designs, and any alternative designs would have been less safe, more likely to have caused injury or otherwise not feasible for their intended use.

## TWENTIETH DEFENSE

Plaintiff's claims may be barred, in whole or in part, because federal, state, and/or local authorities, departments and/or agencies authorized, ratified, or were aware of and acquiesced to actions taken by Sonoco that are the subject of Plaintiff's claims.  Sonoco is not responsible or liable for any acts or omissions undertaken by or at the direction of any governmental authority, department or agency.

## TWENTY-FIRST DEFENSE

Plaintiff's claims may be barred, in whole or in part, under the doctrine of Federal Preemption, including, without limitation, express preemption, implied conflict preemption, and field preemption, pursuant to any applicable statutes, regulations, guidance documents, notices,

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

military specification, and policy statements, enacted and/or promulgated and/or issues by Congress, federal agencies, or the executive branch.

## TWENTY-SECOND DEFENSE

Sonoco asserts its rights to allocation, setoff or apportionment of fault pursuant to applicable law, as well as its rights to a proportionate reduction of any damages found against Sonoco based on the negligence, omissions or other conduct of any settling tortfeasor and/or responsible third party and/or Plaintiff.

## TWENTY-THIRD DEFENSE

An award of judgment rendered in favor of Plaintiff must be reduced by the amount of compensation Plaintiff received, or is entitled to receive, from any source as a result of Plaintiff's alleged injuries.

## TWENTY-FOURTH DEFENSE

Plaintiff may have failed or refused to exercise reasonable care and diligence to avoid loss and minimize damages and, therefore, may not recover for losses that could have been prevented by reasonable efforts on Plaintiff's part, or by expenditures which might reasonably have been made. Recovery, if any, should therefore be reduced by Plaintiff's failure to mitigate damages, if any

## TWENTY-FIFTH DEFENSE

Sonoco and its agents and/or employees acted with due care and otherwise conducted themselves at all relevant times as reasonable people and/or entities under the circumstances.

## TWENTY-SIXTH DEFENSE

Sonoco has satisfied, fulfilled and performed each and every obligation and duty imposed by law, if any, to the full extent of its responsibility with respect to PFAS.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## TWENTY-SEVENTH DEFENSE

Any alleged injury, damage or loss sustained by Plaintiff in connection with the subject matter of this action was not reasonably foreseeable to Sonoco

## TWENTY-EIGHTH DEFENSE

Plaintiff's claims fail as a matter of substantive law and violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution and the South Carolina Constitution to the extent that by relying on market share or other aggregate proof of causation or liability, Plaintiff seeks to deprive Sonoco of procedural and substantive safeguards including, but not limited to, statutory and common law defenses to liability and causation generally.

## TWENTY-NINTH DEFENSE

Plaintiff's claims may be barred for lack of proximate causation between any alleged act, omission, or product of Sonoco and the claims, damages, and harm alleged in Plaintiff's Complaint.

## THIRTIETH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff cannot prove that its alleged injuries were caused by exposure to PFAS allegedly contained in any product(s) manufactured, handled, distributed, used, or sold by Sonoco.

## THIRTY-FIRST DEFENSE

Sonoco affirmatively asserts as a defense, credit, or set-off against the damages claimed by Plaintiff, any payment, voluntary payment, or settlement (and any monies paid pursuant thereto) between Plaintiff and any other person or entity. Sonoco also asserts the affirmative defenses of satisfaction, payment, and release.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## THIRTY-SECOND DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff cannot establish that Plaintiff was exposed to a sufficient concentration or amount of PFAS, and/or for a sufficient duration, that has been reliably established, through scientific means, to be capable of causing Plaintiff's alleged injuries.

## THIRTY-THIRD DEFENSE

To the extent that Plaintiff has split its claims, Plaintiff's claims are barred in whole, or in part, by the doctrine prohibiting claim splitting.

## THIRTY-FOURTH DEFENSE

Plaintiff's purported exposure to products manufactured, handled, distributed, used or sold by Sonoco, if any, was too removed, indefinite, de minimis and insufficient to establish a reasonable degree of probability that any such product caused any alleged injury, damage or loss to Plaintiff.

## THIRTY-FIFTH DEFENSE

Sonoco cannot be held jointly and severally liable for the acts or omissions of third parties or other parties because their acts or omissions were separate and distinct and the alleged harm is divisible from and greater than any harm allegedly caused by acts, omissions, or products of Sonoco.

## THIRTY-SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff seeks to retroactively impose liability for conduct that was not actionable at the time it occurred, and Sonoco may not be held liable under retroactive theories not requiring proof or fault or causation.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

### THIRTY-SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Sonoco neither knew, nor should have known, that any of the chemicals or substances to which Plaintiff was allegedly exposed were hazardous or constituted a reasonable or foreseeable risk of physical harm by virtue of the prevailing state of medical, scientific, technical, and/or industrial knowledge available to Sonoco at all times relevant to the claims or causes of action asserted by Plaintiff.

### THIRTY-EIGHTH DEFENSE

Sonoco is entitled to all procedural, substantive, and other protections, caps, and limitations provided by applicable state statutes and other state laws regarding Plaintiff's claims for compensatory and punitive damages. Sonoco specifically pleads the application of S.C. Code Ann. § 15-32-530 to this action.

### THIRTY-NINTH DEFENSE

The Complaint fails to state a claim upon which punitive damages may be awarded. Nor did Sonoco engage in any conduct that would permit an award of punitive damages. And, any award of punitive damages would violate the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution, the excessive fines clause of the Eighth Amendment to the United States Constitution, and various articles and sections of the South Carolina Constitution.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## FOURTIETH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the political question and separation of powers doctrines because their claims implicate issues of statewide importance that are reserved for state regulation.

## FORTY-FIRST DEFENSE

Plaintiff's claims against Sonoco may not arise out of the same transactions or occurrences as their claims against other defendants, as required for proper joinder of parties.

## FORTY-SECOND DEFENSE

To the extent Plaintiff seeks equitable relief, Plaintiff is not entitled to equitable relief because Plaintiff has an adequate remedy at law, if Plaintiff is entitled to any remedy, and the alleged harm is not irreparable.

## FORTY-THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the free public services doctrine and by the municipal cost recovery doctrine.

## FORTY-FOURTH DEFENSE

Plaintiff's claims are barred to the extent that Plaintiff's alleged damages are speculative, uncertain, and hypothetical.

## FORTY-FIFTH DEFENSE

Plaintiff's damages, if any, may have been the direct and proximate result of facts and circumstances over which Sonoco exercises no control.

## FORTY-SIXTH DEFENSE

Plaintiff's nuisance claims are barred, in whole or in part, because they lack the legal authority or standing to bring a nuisance claim under South Carolina law.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## FORTY-SEVENTH DEFENSE

Plaintiff's private nuisance claim is barred, in whole or in part, because Sonoco did not unreasonably interfere with Plaintiff's ownership or possession of land.

## FORTY-EIGHTH DEFENSE

Plaintiff's nuisance claims against Sonoco are barred by the doctrine of "coming to the nuisance," the prior nuisance doctrine, and/or the doctrine of consent.

## FORTY-NINTH DEFENSE

Plaintiff's public nuisance claim fails because Plaintiff is not a private person bringing an action for damages to real or personal property.

## FIFTIETH DEFENSE

Plaintiff's public nuisance claim fails because Plaintiff failed to plead that it suffered a particular damage beyond that which the public has experienced.

## FIFTY-FIRST DEFENSE

Plaintiff's tort-based claims fail because Sonoco does not owe Plaintiff a duty under governing law.

## FIFTY-SECOND DEFENSE

Plaintiff's tort-based claims fail because Sonoco did not breach any duty allegedly owed to Plaintiff.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## FIFTY-THIRD DEFENSE

Plaintiff's claims are or may be barred, in whole or in part, under applicable common law or statutory doctrines, including but not limited to avoidable consequences, voluntary exposure, assumption of risk, and open and obvious risk.

## FIFTY-FOURTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, because Sonoco complied at all relevant times with all applicable laws, including all legal and regulatory duties.

## FIFTY-FIFTH DEFENSE

Plaintiff's claims may be barred, reduced, or limited pursuant to the applicable South Carolina statutory and common law regarding limitations of awards, caps on recovery, and setoffs.

## FIFTY-SIXTH DEFENSE

To the extent Plaintiff seeks recovery of attorneys' fees and costs, Plaintiff is not entitled to any attorneys' fees or costs associated with this action because no statute or contract exists that would give Plaintiff the right to recover such fees or costs.

## FIFTY-SEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Sonoco did not own, operate, or otherwise control the facilities or activities described in the Complaint at the time that PFAS is alleged to have migrated out of those facilities.

## FIFTY-EIGHTH DEFENSE

The claimed injuries and/or damages of Plaintiff are so remote, speculative, or contingent that Plaintiff's claims must be barred on policy grounds.

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## FIFTY-NINTH DEFENSE

Sonoco adopts by reference any additional applicable defense pled by any other defendant not otherwise pled herein.

## RESERVATION OF RIGHTS

Sonoco hereby reserves the right to amend this Answer, raise additional defenses as may be discovered during the course of this litigation and its continuing factual investigations, add cross-claims, or assert third-party claims pursuant to the provisions of the South Carolina Rules of Civil Procedure, the substantive law of South Carolina, and the inherent authority of this Court to manage the procedural aspects of this litigation.  Any allegation not expressly admitted in this Answer is denied.

**WHEREFORE**, having fully answered Plaintiff's Amended Complaint, Sonoco Products Company denies that Plaintiff is entitled to any of the relief requested in the Amended Complaint, and respectfully prays for the dismissal of Plaintiff's Amended Complaint with prejudice and for such other and further relief as this Court may deem just and proper.

[*Signature Page to Follow*]

Respectfully submitted,

**HAYNSWORTH SINKLER BOYD, P.A.**

  s/ Robert Y. Knowlton
Robert Y. Knowlton, S.C. Bar No. 3589
John P. Boyd, S.C. Bar No. 72412
Sarah A. Hodges, S.C. Bar No. 106253
1201 Main Street, 22nd Floor (29201)
Post Office Box 11889
Columbia, SC 29211-1889
(803) 779-3080
bknowlton@hsblawfirm.com
jboyd@hsblawfirm.com
shodges@hsblawfirm.com

Jonathan D. Klett, S.C. Bar No. 103208
One North Main, 2nd Floor
Greenville, SC  29601
P.O. Box 2048 29602
(864) 240-3211
jklett@hsblawfirm.com

*Attorneys for Defendant Sonoco Products Company*

January 16, 2026

ELECTRONICALLY FILED - 2026 Jan 16 10:57 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2026 Feb 17 10:45 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN RE:
PFAS LITIGATION COORDINATED DOCKET

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

C.A. No. 2025-CP-26-09305

**ACCEPTANCE OF SERVICE
ON BEHALF OF
RED ROCK DISPOSAL, LLC**

Grand Strand Water and Sewer Authority,

*Plaintiff,*

v.

AGC Chemicals Americas, Inc.; Aladdin Manufacturing Corporation; Archroma U.S., Inc.; Arkema, Inc.; Burlington Industries, Inc.; Clariant Corporation; Corteva, Inc.; Daikin America, Inc.; Delta Mills, Inc., its predecessors, successors, assigns, and/or responsible parties; DuPont de Nemours, Inc.; EIDP, Inc.; Elevate Textiles, Inc.; Fiber Industries, LLC; Huntsman International, LLC; International Paper Company; INV Performance Surfaces, LLC; J.P. Stevens & Company, Inc., its predecessors, successors, assigns, and/or responsible parties; Mohawk Industries, Inc.; Nan Ya Plastics Corporation, America; PRET Advanced Materials, LLC; Red Rock Disposal, LLC; Sampson County Disposal, LLC; Sonoco Products Company; Syensqo Specialty Polymers USA, LLC (f/k/a Solvay Specialty Polymers USA, LLC); The Chemours Company; and WestRock CP, LLC,

*Defendants.*

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Amended Summons and Amended Complaint in the above captioned matter on behalf of Defendant Red Rock Disposal, LLC, effective this 2nd day of February, 2026, with no further service on Red Rock Disposal, LLC being necessary.

John Tamasitis
Williams Mullen
1230 Main Street, Ste. 330
Columbia, SC 29201
jtamasitis@williamsmullen.com

*Counsel for Red Rock Disposal, LLC*

ELECTRONICALLY FILED - 2026 Feb 17 10:45 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

2

ELECTRONICALLY FILED - 2026 Feb 17 10:45 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

STATE OF SOUTH CAROLINA

COUNTY OF HORRY

IN RE:
PFAS LITIGATION COORDINATED DOCKET

Grand Strand Water and Sewer Authority,

*Plaintiff*,

v.

AGC Chemicals Americas, Inc.; Aladdin
Manufacturing Corporation; Archroma U.S., Inc.;
Arkema, Inc.; Burlington Industries, Inc.; Clariant
Corporation; Corteva, Inc.; Daikin America, Inc.;
Delta Mills, Inc., its predecessors, successors,
assigns, and/or responsible parties; DuPont de
Nemours, Inc.; EIDP, Inc.; Elevate Textiles, Inc.;
Fiber Industries, LLC; Huntsman International,
LLC; International Paper Company; INV
Performance Surfaces, LLC; J.P. Stevens &
Company, Inc., its predecessors, successors,
assigns, and/or responsible parties; Mohawk
Industries, Inc.; Nan Ya Plastics Corporation,
America; PRET Advanced Materials, LLC; Red
Rock Disposal, LLC; Sampson County Disposal,
LLC; Sonoco Products Company; Syensqo
Specialty Polymers USA, LLC (f/k/a Solvay
Specialty Polymers USA, LLC); The Chemours
Company; and WestRock CP, LLC,

*Defendants*.

IN THE COURT OF COMMON PLEAS

FOR THE FIFTEENTH JUDICIAL CIRCUIT

C.A. No. 2025-CP-26-09305

**ACCEPTANCE OF SERVICE
ON BEHALF OF
SAMPSON COUNTY DISPOSAL, LLC**

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Amended Summons and Amended Complaint in the above captioned matter on behalf of Defendant Sampson County Disposal, LLC, effective this 2nd day of February, 2026, with no further service on Sampson County Disposal, LLC being necessary.

John Tamasitis
Williams Mullen
1230 Main Street, Ste. 330
Columbia, SC 29201
jtamasitis@williamsmullen.com

*Counsel for Sampson County Disposal, LLC*

ELECTRONICALLY FILED - 2026 Feb 17 10:45 AM - HORRY - COMMON PLEAS - CASE#2025CP2609305

2

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | FIFTEENTH JUDICIAL CIRCUIT |
| COUNTY OF HORRY | ) | |
| | ) | |
| IN RE: | ) | C.A. No. 2025-CP-26-09305 |
| PFAS LITIGATION COORDINATED | ) | |
| DOCKET | ) | |
| | ) | |
| | ) | |
| Grand Strand Water and Sewer Authority, | ) | **Fiber Industries, LLC's Answer to** |
| | ) | **Plaintiff's Amended Complaint** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AGC Chemicals Americas, Inc.; Aladdin | ) | |
| Manufacturing Corporation; Achroma U.S., | ) | |
| Inc.; Arkema, Inc.; Burlington Industries, | ) | |
| Inc.; Clariant Corporation; Corteva, Inc.; | ) | |
| Daikin America, Inc.; Delta Mills, Inc., its | ) | |
| predecessors, successors, assigns, and/or | ) | |
| responsible parties; DuPont de Nemours, Inc.; | ) | |
| EIDP, Inc.; Elevate Textiles, Inc.; Fiber | ) | |
| Industries, LLC; Huntsman International, | ) | |
| LLC; International Paper Company; INV | ) | |
| Performance Surfaces, LLC; J.P. Stevens & | ) | |
| Company, Inc., its predecessors, successors, | ) | |
| assigns, and/or responsible parties; Mohawk | ) | |
| Industries, Inc.; Nan Ya Plastics Corporation, | ) | |
| America; PRET Advanced Materials, LLC; | ) | |
| Red Rock Disposal, LLC; Sampson County | ) | |
| Disposal, LLC; Sonoco Products Company; | ) | |
| Syensqo Specialty Polymers USA, LLC (f/k/a | ) | |
| Solvay Specialty Polymers USA, LLC); The | ) | |
| Chemours Company; and WestRock CP, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

Defendant Fiber Industries, LLC ("Darling Fiber") hereby submits its Answer to Plaintiff's

Amended Complaint ("Complaint").

1

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## GENERAL DENIAL

Darling Fiber expressly denies each and every allegation in the Complaint, except those specifically admitted herein.

## FOR A FIRST DEFENSE

### Statement of the Case[1]

1.      Responding to Paragraph 1 of the Complaint, Darling Fiber denies all allegations set forth in that paragraph that relate to Darling Fiber or purport to allege liability against Darling Fiber.  As to the remaining allegations set forth in Paragraph 1 of the Complaint with regards to the nature of the action brought by Plaintiff, Darling Fiber craves references to the allegations set forth in the Complaint and denies any allegations inconsistent therewith.

2.      Responding to Paragraph 2 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 2 of the Complaint and therefore denies same.

3.      Responding to Paragraph 3 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

4.      Responding to Paragraph 4 of the Complaint as it relates to Darling Fiber, Darling Fiber denies the allegations, upon information and belief. Darling Fiber further denies Plaintiff is entitled to the relief sought in Paragraph 4 of the Complaint. As to the remaining allegations set forth in Paragraph 4 of the Complaint which are addressed to other Defendants, Darling Fiber is

---

[1] The headers used in this Answer are for ease of reference and correspond to the headers set forth in Plaintiff's Amended Complaint.  They do not constitute an admission by Darling Fiber as to the validity of Plaintiff's causes of action.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies same.

5.      Responding to Paragraph 5 of the Complaint as it relates to Darling Fiber, Plaintiff's uses of the phrase "use products" and term "industrial processes" are not defined and susceptible of multiple interpretations; therefore, at this present time, and without a definition for the phrase "use products" and term "industrial processes," Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and denies same. As to the remaining allegations set forth in Paragraph 5 of the Complaint which are addressed to other Defendants, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies same.

6.      Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 6 of the Complaint.

7.      Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 7 of the Complaint.

8.      Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 8 of the Complaint and denies Plaintiff is entitled to the relief sought therein.

### Disclaimer

9.      Responding to Paragraph 9 of the Complaint, Darling Fiber craves reference to the allegations set forth in the Complaint and denies any allegations inconsistent therewith.

10.      Responding to Paragraph 10 of the Complaint, Darling Fiber craves reference to the allegations set forth in the Complaint and denies any allegations inconsistent therewith.

11.      Responding to Paragraph 11 of the Complaint, Darling Fiber craves reference to the allegations set forth in the Complaint and denies any allegations inconsistent therewith.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

12.     Responding to Paragraph 12 of the Complaint, Darling Fiber craves reference to the allegations set forth in the Complaint and denies any allegations inconsistent therewith.

## Jurisdiction and Venue

13.     Paragraph 13 of the Complaint purports to state legal conclusions to which no response is required. To the extent a response is required, Darling Fiber reserves its right to contest the Court's subject matter jurisdiction over this matter.

14.     Paragraph 14 of the Complaint purports to state legal conclusions to which no response is required. To the extent a response is required, Darling Fiber reserves its right to contest this Court's personal jurisdiction over Darling Fiber.

15.     Paragraph 15 of the Complaint purports to state legal conclusions to which no response is required. To the extent a response is require, Darling Fiber reserves its right to contest venue in Horry County.

## Parties

16.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Complaint and therefore denies same.

17.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Complaint and therefore denies same.

18.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint and therefore denies same.

19.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Complaint and therefore denies same.

20.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

21.     Responding to Paragraph 21 of the Complaint, Darling Fiber admits it is a South Carolina limited liability company which owns and operates a textile manufacturing facility located at 1000 E. McIver Road, Darlington, South Carolina 29532. Further responding to Paragraph 21 of the Complaint, Plaintiff's use of the term "manufacture" is not defined and susceptible to multiple interpretations when used in this context; therefore, at this present time, and without a definition for the term "manufacture," Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and denies same. Further responding to Paragraph 21 of the Complaint, Darling Fiber, upon information and belief, denies that its current industrial wastewater discharge contains or degrades to the substances identified by Plaintiff as PFAS. With respect to the remaining allegations set forth in Paragraph 21 of the Complaint related to Plaintiff's water sources and ability to use its property and provide potable drinking water, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and denies same.

22.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 22 of the Complaint and therefore denies same.

23.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 of the Complaint and therefore denies same.

24.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the Complaint and therefore denies same.

25.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 of the Complaint and therefore denies same.

26.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

27.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27 of the Complaint and therefore denies same.

28.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint and therefore denies same.

29.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29 of the Complaint and therefore denies same.

30.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 of the Complaint and therefore denies same.

31.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31 of the Complaint and therefore denies same.

32.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 32 of the Complaint and therefore denies same.

33.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 33 of the Complaint and therefore denies same.

34.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 34 of the Complaint and therefore denies same.

35.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 35 of the Complaint and therefore denies same.

36.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 36 of the Complaint and therefore denies same.

37.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 37 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

38.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 38 of the Complaint and therefore denies same.

39.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 39 of the Complaint and therefore denies same.

40.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 40 of the Complaint and therefore denies same.

41.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 41 of the Complaint and therefore denies same.

### Factual Allegations

42.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 42 of the Complaint and therefore denies same.

43.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 43 of the Complaint and therefore denies same.

44.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 44 of the Complaint and therefore denies same.

45.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45 of the Complaint and therefore denies same.

46.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 46 of the Complaint and therefore denies same.

47.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 47 of the Complaint and therefore denies same.

48.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 48 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

49.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49 of the Complaint and therefore denies same.

50.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50 of the Complaint and therefore denies same.

51.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51 of the Complaint and therefore denies same.

52.     Responding to Paragraph 52 of the Complaint, Darling Fiber objects to the allegations therein because they mischaracterize a Provisional Health Advisory article from 16 years ago and Plaintiff attempts to draw legal conclusions from the same. Further responding to Paragraph 52 of the Complaint, Darling Fiber craves reference to the EPA provisional drinking water health advisories referenced therein and denies any allegations inconsistent therewith.

53.     Responding to Paragraph 53 of the Complaint, Darling Fiber craves reference to the EPA health advisories referenced therein and denies any allegations inconsistent therewith.

54.     Responding to Paragraph 54 of the Complaint, Darling Fiber craves reference to the EPA health advisories referenced therein and denies any allegations inconsistent therewith.

55.     Responding to Paragraph 55 of the Complaint, Darling Fiber craves reference to the EPA health advisories referenced therein and denies any allegations inconsistent therewith.

56.     Responding to Paragraph 56 of the Complaint, Darling Fiber craves reference to the EPA health advisories referenced therein and denies any allegations inconsistent therewith.

57.     Responding to Paragraph 57 of the Complaint, Darling Fiber craves reference to the EPA proposed MCLs and MCLGs referenced therein and denies any allegations inconsistent therewith.

8

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

58.     Responding to Paragraph 58 of the Complaint, Darling Fiber craves reference to the EPA proposed MCLs and MCLGs referenced therein and denies any allegations inconsistent therewith.

59.     Responding to Paragraph 59 of the Complaint, Darling Fiber craves reference to the EPA proposed MCLs and MCLGs referenced therein and denies any allegations inconsistent therewith.

60.     Responding to Paragraph 60 of the Complaint, Darling Fiber craves reference to the EPA news release referenced therein and denies any allegations inconsistent therewith.

61.     Responding to Paragraph 61 of the Complaint, Darling Fiber craves reference to the EPA regulation referenced therein and denies any allegations inconsistent therewith.

62.     Responding to Paragraph 62 of the Complaint, Darling Fiber craves reference to the EPA regulation and "frequently asked question" document referenced therein and denies any allegations inconsistent therewith.

63.     Responding to Paragraph 63 of the Complaint, Darling Fiber craves reference to the EPA regulation referenced therein and denies any allegations inconsistent therewith.

64.     Responding to Paragraph 64 of the Complaint, Darling Fiber craves reference to the EPA regulation referenced therein and denies any allegations inconsistent therewith.

65.     Responding to Paragraph 65 of the Complaint, Darling Fiber craves reference to the EPA news release referenced therein and denies any allegations inconsistent therewith.

66.     Responding to Paragraph 66 of the Complaint, Darling Fiber craves reference to the EPA news release referenced therein and denies any allegations inconsistent therewith.

67.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 67 of the Complaint and therefore denies same.

9

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

68. Responding to Paragraph 68 of the Complaint, Plaintiff's use of the terms "hydrologically connected" and "Pee Dee River Watershed" are not defined and susceptible to multiple interpretations in this context; therefore, at this present time, and without a definition for the terms "hydrologically connected" and "Pee Dee River Watershed," Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

69. Responding to Paragraph 69 of the Complaint as it relates to Darling Fiber, Plaintiff's use of the term "Pee Dee River Watershed" is not defined and susceptible to multiple interpretations in this context; therefore, at this present time, and without a definition for the term "Pee Dee River Watershed," Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

70. Responding to Paragraph 70 of the Complaint, the term "PFAS sampling" is undefined and susceptible to multiple interpretations in that Plaintiff does not identify the sampling and analysis method referenced therein, nor the parameters, variables, or laboratory procedures affecting such method, nor whether such data was evaluated against "baseline" or influent data; therefore, at this present time and without any information to substantiate the alleged "PFAS sampling," Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 70 of the Complaint, and therefore denies same.

71. Responding to Paragraph 71 of the Complaint as it relates to Darling Fiber, the terms "Pee Dee River Watershed" and "precursor" and phrases "industrial processes" and "utilize products" are not defined and susceptible to multiple interpretations in this context; therefore, at this present time, and without a definitions for the terms and phrases above, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and

therefore denies same. As to the remaining allegations of Paragraph 71 which are addressed to other Defendants, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies same.

72.     Responding to Paragraph 72 of the Complaint as it relates to Darling Fiber, Darling Fiber admits only that it discharges wastewater to Black Creek. Further responding to Paragraph 51 of the Complaint, Plaintiff's use of the term "PFAS-contaminated wastewater" is not defined and susceptible to multiple interpretations in this context; therefore, at this present time, and without a definition for the term "PFAS-contaminated wastewater," Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 72 of the Complaint, and therefore denies same. As to the remaining allegations of Paragraph 72 of the Complaint which are addressed to other Defendants, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies same.

73.     Paragraph 73 of the Complaint is directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 73 of the Complaint and therefore denies same.

74.     Paragraph 74 of the Complaint relates to a Defendant other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 74 of the Complaint and therefore denies same.

11

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

75.    Responding to Paragraph 75 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

76.    Responding to Paragraph 76 of the Complaint as it relates to Darling Fiber, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

77.    Responding to Paragraph 77 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

78.    Responding to Paragraph 78 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

79.    Responding to Paragraph 79 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

80.    Responding to Paragraph 80 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

81.    Responding to Paragraph 81 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

82.     Responding to Paragraph 82 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

83.     Responding to Paragraph 83 of the Complaint as it relates to Darling Fiber, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

84.     Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 84 of the Complaint.

85.     Responding to Paragraph 85 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 85 and therefore denies same.

86.     Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 86 of the Complaint. Responding to Paragraph 86 of the Complaint as it is directed at Defendants other than Darling Fiber, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

87.     Darling Fiber denies the allegations set forth in Paragraph 87 of the Complaint.

88.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 88 of the Complaint and therefore denies same.

89.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 89 of the Complaint and therefore denies same.

90.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 90 of the Complaint and therefore denies same.

13

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

91.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 91 of the Complaint and therefore denies same.

92.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 92 of the Complaint and therefore denies same.

93.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 93 of the Complaint and therefore denies same.

94.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 94 of the Complaint and therefore denies same.

95.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 95 of the Complaint and therefore denies same.

96.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 96 of the Complaint and therefore denies same.

97.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 97 of the Complaint and therefore denies same.

98.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 98 of the Complaint and therefore denies same.

99.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 99 of the Complaint and therefore denies same.

100.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 100 of the Complaint and therefore denies same.

101.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 101 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

102.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 102 of the Complaint and therefore denies same.

103.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 103 of the Complaint and therefore denies same.

104.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 104 of the Complaint and therefore denies same.

105.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 105 of the Complaint and therefore denies same.

106.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 106 of the Complaint and therefore denies same.

107.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 107 of the Complaint and therefore denies same.

108.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 108 of the Complaint and therefore denies same.

109.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 109 of the Complaint and therefore denies same.

110.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 110 of the Complaint and therefore denies same.

111.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 111 of the Complaint and therefore denies same.

112.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 112 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

113.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 113 of the Complaint and therefore denies same.

114.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 114 of the Complaint and therefore denies same.

115.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 115 of the Complaint and therefore denies same.

116.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 116 of the Complaint, including subparts (a)-(j), and therefore denies same.

117.     Darling Fiber denies the allegations set forth in Paragraph 117 of the Complaint.

118.     Darling Fiber denies the allegations set forth in Paragraph 118 of the Complaint.

119.     Darling Fiber denies the allegations set forth in Paragraph 119 of the Complaint.

120.     Darling Fiber denies the allegations set forth in Paragraph 120 of the Complaint.

121.     Darling Fiber denies the allegations set forth in Paragraph 121 of the Complaint.

122.     The allegations in Paragraph 122 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 122 of the Complaint and therefore denies same.

123.     The allegations in Paragraph 123 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 123 of the Complaint and therefore denies same.

16

124. The allegations in Paragraph 124 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 124 of the Complaint and therefore denies same.

125. The allegations in Paragraph 125 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 125 of the Complaint and therefore denies same.

126. The allegations in Paragraph 126 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 126 of the Complaint and therefore denies same.

127. The allegations in Paragraph 127 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 127 of the Complaint and therefore denies same.

128. The allegations in Paragraph 128 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 128 of the Complaint and therefore denies same.

129. The allegations in Paragraph 129 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required,

17

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 129 of the Complaint and therefore denies same.

130.     The allegations in Paragraph 130 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 130 of the Complaint and therefore denies same.

131.     The allegations in Paragraph 131 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 131 of the Complaint and therefore denies same.

132.     The allegations in Paragraph 132 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 132 of the Complaint and therefore denies same.

133.     The allegations in Paragraph 133 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 133 of the Complaint and therefore denies same.

134.     The allegations in Paragraph 134 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 134 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

135.     The allegations in Paragraph 135 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 135 of the Complaint and therefore denies same.

136.     The allegations in Paragraph 136 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 136 of the Complaint and therefore denies same.

137.     The allegations in Paragraph 137 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 137 of the Complaint and therefore denies same.

138.     The allegations in Paragraph 138 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 138 of the Complaint and therefore denies same.

139.     Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 139 of the Complaint.

140.     The allegations in Paragraph 140 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 140 of the Complaint and therefore denies same.

19

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

141.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 141 of the Complaint.

142.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 142 of the Complaint.

143.    Responding to Paragraph 143 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

144.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 144 of the Complaint, including subparts (a)-(b).

**Plaintiff's First Cause of Action**
**Private Nuisance**

145.    Darling Fiber incorporates all prior responses to the Complaint by reference as if fully set forth herein.

146.    Upon information and belief, Darling Fiber admits the allegations set forth in Paragraph 146 of the Complaint.

147.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 147 of the Complaint.

148.    Darling Fiber denies the allegations set forth in Paragraph 148 of the Complaint.

149.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 149 of the Complaint.

150.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 150 of the Complaint.

151.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 151 of the Complaint.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

152.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 152 of the Complaint.

153.    Responding to Paragraph 153 of the Complaint, Darling Fiber denies the allegations and legal conclusions and denies Plaintiff is entitled to the relief sought therein.

154.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 154 of the Complaint and denies Plaintiff is entitled to injunctive relief as set forth therein.

155.    Darling Fiber denies the allegations set forth in Paragraph 155 of the Complaint.

156.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 156 of the Complaint and denies Plaintiff is entitled to the relief sought therein.

**Plaintiff's Second Cause of Action**
**Public Nuisance**

157.    Darling Fiber incorporates all prior responses to the Complaint by reference as if fully set forth herein.

158.    Responding to Paragraph 158 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

159.    Responding to Paragraph 159 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

160.    Responding to Paragraph 160 of the Complaint, Darling Fiber agrees that Plaintiff's customers have an expectation to potable water that is reasonably pure and safe for their use; however, Darling Fiber denies the remaining allegations and legal conclusions set forth in Paragraph 160 of the Complaint.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

161.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 161 of the Complaint.

162.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 162 of the Complaint.

163.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 163 of the Complaint.

164.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 164 of the Complaint.

165.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 165 of the Complaint and denies Plaintiff is entitled to the relief requested therein.

166.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 166 of the Complaint and denies Plaintiff is entitled to the relief requested therein.

167.    Darling Fiber denies the allegations set forth in Paragraph 167 of the Complaint.

168.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 168 of the Complaint and denies Plaintiff is entitled to the relief sought therein.

## Plaintiff's Third Cause of Action
### Negligence, Gross Negligence, and/or Recklessness

169.    Darling Fiber incorporates all prior responses to the Complaint by reference as if fully set forth herein.

170.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 170 of the Complaint.

171.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 171 of the Complaint.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

172.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 172 of the Complaint.

173.    The allegations set forth in Paragraph 173 of the Complaint are directed at Defendants other than Darling Fiber, therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 173 of the Complaint and therefore denies same.

174.    Responding to the allegations set forth in Paragraph 174 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

175.    The allegations set forth in Paragraph 175 of the Complaint are directed at Defendants other than Darling Fiber, therefore no response is required. To the extent a response is required Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 175 of the Complaint and therefore denies same.

176.    The allegations of Paragraph 176 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 176 and therefore denies same.

177.    The allegations of Paragraph 177 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 177 and therefore denies same.

178.    The allegations of Paragraph 178 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a

23

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 178 and therefore denies same.

179.    The allegations of Paragraph 179 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 179 and therefore denies same.

180.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 180 of the Complaint.

181.    Darling Fiber denies the allegations and legal conclusions set forth in Paragraph 181 of the Complaint and denies Plaintiff is entitled to the relief sought therein.

**Plaintiff's Fourth Cause of Action**
**Strict Products Liability – Ultrahazardous Activity**
**(Supplier Defendants)**

182.    Darling Fiber incorporates all prior responses to the Complaint by reference as if fully restated herein.

183.    Responding to the allegations of Paragraph 183 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

184.    The allegations of Paragraph 184 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 184 of the Complaint and therefore denies same.

185.    The allegations of Paragraph 185 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required,

24

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 185 of the Complaint and therefore denies same.

186.    The allegations of Paragraph 186 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 186 of the Complaint and therefore denies same.

187.    The allegations of Paragraph 187 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 187 of the Complaint and therefore denies same.

188.    The allegations of Paragraph 188 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7188 of the Complaint and therefore denies same.

189.    The allegations of Paragraph 189 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 189 of the Complaint and therefore denies same.

190.    The allegations of Paragraph 190 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 190 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

191.     The allegations of Paragraph 191 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 191 of the Complaint and therefore denies same.

192.     The allegations of Paragraph 192 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 192 of the Complaint and therefore denies same.

**Plaintiff's Fifth Cause of Action**
**Strict Products Liability – Ultrahazardous Activity**
**(Burlington)**

193.     Darling Fiber incorporates all prior responses to the Complaint by reference as if fully stated herein.

194.     Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 194 of the Complaint and therefore denies same.

195.     The allegations of Paragraph 195 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 195 of the Complaint and therefore denies same.

196.     The allegations of Paragraph 196 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief

26

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

as to the truth of the allegations set forth in Paragraph 196 of the Complaint and therefore denies same.

197.    The allegations of Paragraph 197 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 197 of the Complaint and therefore denies same.

198.    The allegations of Paragraph 198 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 198 of the Complaint and therefore denies same.

199.    The allegations of Paragraph 199 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 199 of the Complaint and therefore denies same.

200.    The allegations of Paragraph 200 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 200 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

201.    The allegations of Paragraph 201 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 201 of the Complaint and therefore denies same.

202.    The allegations of Paragraph 202 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 202 of the Complaint and therefore denies same.

**Plaintiff's Sixth Cause of Action**
**Strict Products Liability – Design Defect**
**(Supplier Defendants)**

203.    Darling Fiber incorporates all prior responses to the Complaint by reference as if fully restated herein.

204.    Responding to Paragraph 204 of the Complaint, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies same.

205.    The allegations of Paragraph 205 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 205 of the Complaint and therefore denies same.

206.    The allegations of Paragraph 206 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required,

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 206 of the Complaint and therefore denies same.

207.    The allegations of Paragraph 207 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 207 of the Complaint and therefore denies same.

208.    The allegations of Paragraph 208 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 208 of the Complaint and therefore denies same.

209.    The allegations of Paragraph 209 of the Complaint, including subparts (a)-(e), are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 209 of the Complaint, including subparts (a)-(e), and therefore denies same.

210.    The allegations of Paragraph 210 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 210 of the Complaint and therefore denies same.

211.    The allegations of Paragraph 211 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 211 of the Complaint and therefore denies same.

29

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

212.    The allegations of Paragraph 212 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 212 of the Complaint and therefore denies same.

213.    The allegations of Paragraph 213 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 213 of the Complaint and therefore denies same.

214.    The allegations of Paragraph 214 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 214 of the Complaint and therefore denies same.

215.    The allegations of Paragraph 215 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 215 of the Complaint and therefore denies same.

**Plaintiff's Seventh Cause of Action**
**Strict Products Liability – Design Defect**
**(Burlington)**

216.    Darling Fiber incorporates all prior responses to the Complaint by reference as if fully set forth herein.

217.    Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 217 and therefore denies same.

2:26-cv-00864-RMG    Date Filed 03/02/26    Entry Number 1-1    Page 199 of 223

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

218.    The allegations of Paragraph 218 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 218 of the Complaint and therefore denies same.

219.    The allegations of Paragraph 219 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 219 of the Complaint and therefore denies same.

220.    The allegations of Paragraph 220 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 220 of the Complaint and therefore denies same.

221.    The allegations of Paragraph 221 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 221 of the Complaint and therefore denies same.

222.    The allegations of Paragraph 222 of the Complaint, including subparagraphs (a)-(f), are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information

31

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

sufficient to form a belief as to the truth of the allegations set forth in Paragraph 222 of the Complaint, including subparagraphs (a)-(f), and therefore denies same.

223.    The allegations of Paragraph 223 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 223 of the Complaint and therefore denies same.

224.    The allegations of Paragraph 224 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 224 of the Complaint and therefore denies same.

225.    The allegations of Paragraph 225 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 225 of the Complaint and therefore denies same.

226.    The allegations of Paragraph 226 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 226 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

227.     The allegations of Paragraph 227 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 227 of the Complaint and therefore denies same.

228.     The allegations of Paragraph 228 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 228 of the Complaint and therefore denies same.

**Plaintiff's Eighth Cause of Action**
**Strict Products Liability – Failure to Warn**
**(Supplier Defendants)**

229.     Darling Fiber incorporates all prior responses to the Complaint by reference as if fully restated herein.

230.     The allegations of Paragraph 230 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 230 of the Complaint and therefore denies same.

231.     The allegations of Paragraph 231 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 231 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

232. The allegations of Paragraph 232 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 232 of the Complaint and therefore denies same.

233. The allegations of Paragraph 233 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 233 of the Complaint and therefore denies same.

234. The allegations of Paragraph 234 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 234 of the Complaint and therefore denies same.

235. The allegations of Paragraph 235 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 235 of the Complaint and therefore denies same.

236. The allegations of Paragraph 236 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 236 of the Complaint and therefore denies same.

237. The allegations of Paragraph 237 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required,

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 237 of the Complaint and therefore denies same.

238.    The allegations of Paragraph 238 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 238 of the Complaint and therefore denies same.

**Plaintiff's Ninth Cause of Action**
**Strict Products Liability – Failure to Warn**
**(Burlington)**

239.    Darling Fiber incorporates all prior responses to the Complaint by reference as if fully set forth herein.

240.    The allegations of Paragraph 240 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 240 of the Complaint and therefore denies same.

241.    The allegations of Paragraph 241 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 241 of the Complaint and therefore denies same.

242.    The allegations of Paragraph 242 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

as to the truth of the allegations set forth in Paragraph 242 of the Complaint and therefore denies same.

243.    The allegations of Paragraph 243 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 243 of the Complaint and therefore denies same.

244.    The allegations of Paragraph 244 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 244 of the Complaint and therefore denies same.

245.    The allegations of Paragraph 245 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 245 of the Complaint and therefore denies same.

246.    The allegations of Paragraph 246 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 246 of the Complaint and therefore denies same.

247.    The allegations of Paragraph 247 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 247 of the Complaint and therefore denies same.

248.    The allegations of Paragraph 248 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 248 of the Complaint and therefore denies same.

**Plaintiff's Tenth Cause of Action**
**Breach of Implied Warranties**
**(Supplier Defendants)**

249.    Darling Fiber incorporates all prior responses to the Complaint by reference as if fully set forth herein.

250.    The allegations of Paragraph 250 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 250 of the Complaint and therefore denies same.

251.    The allegations of Paragraph 251 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 251 of the Complaint and therefore denies same.

252.    The allegations of Paragraph 252 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required,

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 252 of the Complaint and therefore denies same.

253. The allegations of Paragraph 253 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 253 of the Complaint and therefore denies same.

254. The allegations of Paragraph 254 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 254 of the Complaint and therefore denies same.

255. The allegations of Paragraph 255 of the Complaint are directed at Defendants other than Darling Fiber, and therefore no response is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 255 of the Complaint and therefore denies same.

**Plaintiff's Eleventh Cause of Action**
**Breach of Implied Warranties**
**(Burlington)**

256. Darling Fiber incorporates all prior responses to the Complaint by reference as if fully set forth herein.

257. The allegations of Paragraph 257 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 257 of the Complaint and therefore denies same.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

258.　　The allegations of Paragraph 258 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 258 of the Complaint and therefore denies same.

259.　　The allegations of Paragraph 259 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 259 of the Complaint and therefore denies same.

260.　　The allegations of Paragraph 260 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 260 of the Complaint and therefore denies same.

261.　　The allegations of Paragraph 261 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 261 of the Complaint and therefore denies same.

262.　　The allegations of Paragraph 262 of the Complaint are directed at Defendant Burlington Industries, Inc. and therefore no response of Darling Fiber is required. To the extent a response is required, Darling Fiber is without knowledge or information sufficient to form a belief

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

as to the truth of the allegations set forth in Paragraph 262 of the Complaint and therefore denies same.

## Plaintiff's Prayer for Relief

263. Responding to the unnumbered paragraph beginning with WHEREFORE, Darling Fiber denies Plaintiff is entitled to the relief sought therein, including subparagraphs (a)-(d).

## AFFIRMATIVE DEFENSES

### For a Second Defense
### (License)

264. Darling Fiber's actions have at all times been pursuant to express permits and directives of various state and federal agencies with which Darling Fiber has at all relevant times and parameters been fully compliant. Accordingly, Darling Fiber pleads license as an affirmative defense to Plaintiff's claims.

### For a Third Defense
### (Failure to Sate a Cause of Action)

265. Plaintiff has failed to state facts sufficient to constitute a cause of action and the Complaint should be dismissed pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure.

### For a Fourth Defense
### (Ripeness)

266. Plaintiff's claims are not ripe for adjudication and should be dismissed for presenting a contingent, hypothetical, or abstract dispute. Plaintiff alleges that it will be required to incur costs at some future date when the Environmental Protection Agency will require it to upgrade its systems to treat PFAS. Until these costs are incurred, Plaintiff cannot recover.

267. Plaintiff's claims are premature to the extent that neither the State nor United States Environmental Protection Agency have set final water quality standards, maximum contaminant

40

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

levels, acceptable soil cleanup levels, or other regulatory standards that are necessary to evaluate whether natural resources have been injured.

## For a Fifth Defense
### (Lack of Standing)

268.    Plaintiff also lacks standing to assert, in whole or in part, under the United States Constitution, the Constitution of South Carolina, state and federal statutes, and common law to bring the claims set forth in the Complaint.

269.    Plaintiff lacks standing to bring the claims set forth in the Complaint under both the public trust doctrine and *parens patriae* doctrine, because the property claimed to be affected is not held in the public trust and/or is not subject to the *parens patriae* doctrine.

270.    Plaintiff lacks standing to bring the claims set forth in the Complaint under both the public trust doctrine and *parens patriae* doctrine, because it does not have exclusive jurisdiction over the resources at issue, or only has partial jurisdiction over such resources and has failed to join other necessary trustees to this action.

271.    Plaintiff lacks standing to bring an action for trespass because Plaintiff has no ownership over and is not entitled to exclusive possession over various property and water bodies referenced in the Complaint, and because Plaintiff cannot establish unreasonable or substantial damage to the resource.

## For a Sixth Defense
### (No Cognizable Injury)

272.    Plaintiff has not demonstrated or pled a legally cognizable injury in the Complaint that is capable of redress.

41

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

**For a Seventh Defense**
**(Speculative Damages)**

273.    Further, Plaintiff's claims for alleged injuries and damages are barred, in whole or in part, because the claims for damages are speculative and conjectural.

**For an Eighth Defense**
**(Statute of Limitations/Repose)**

274.    Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations or repose.

**For a Ninth Defense**
**(Failure to Name an Indispensable Party)**

275.    Plaintiff has failed to name all necessary and indispensable parties in this action.

**For a Tenth Defense**
**(No Duty)**

276.    Plaintiff's claims are barred, in whole or in part, because Darling Fiber does not owe a legal duty to Plaintiff or, if it owed such a duty, did not breach and/or fully discharged that duty.

**For an Eleventh Defense**
**(Exercise of Due care)**

277.    Plaintiff's claims are barred, in whole or in part, because, at all relevant times, Darling Fiber exercised due care with respect to its activities and took reasonable precautions against foreseeable acts or omissions of others.

**For a Twelfth Defense**
**(No Proximate Cause)**

278.    Plaintiff's claims are barred, in whole or in part, because none of the alleged acts or omissions of Darling Fiber proximately caused the purported injuries and damages allegedly sustained by Plaintiff.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

**For a Thirteenth Defense**
**(Intervening Acts)**

279.    Upon information and belief, Plaintiff's injuries, damages, or losses, if any, were directly and proximately caused by the intervening acts, superseding acts, and conduct of others, including Plaintiff, over which Darling Fiber had no control, thereby precluding any recovery against Darling Fiber.

**For a Fourteenth Defense**
**(Comparative Fault)**

280.    Even assuming Darling Fiber was negligent, careless, or reckless in any respect, and that any such conduct on its part operated as a proximate cause of Plaintiff's injuries or damages, all of which are expressly denied, Plaintiff's comparative negligence, carelessness, or recklessness contributed to the cause of Plaintiff's alleged damages. For that reason, Darling Fiber is not liable to Plaintiff in any sum whatsoever, and/or to the extent that a jury finds Plaintiff at fault for less than fifty percent (50%), Plaintiff's recovery should be reduced by that percentage amount.

**For a Fifteenth Defense**
**(Punitive Damages)**

281.    Plaintiff's claims for punitive damages are violative of both the United States Constitution and the South Carolina Constitution, and Darling Fiber pleads that sections 15-32-530 *et seq.*, of the South Carolina Code provide a cap to punitive damages potentially available in this matter.

282.    Plaintiff also fails to state any basis upon which punitive damages are recoverable against Defendants and, accordingly, Plaintiff's prayer for such damages should be dismissed and/or stricken from the claims pursuant to Rule 12(b)(6) and/or 12(f) of the South Carolina Rules of Civil Procedure.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

283.    Pursuant to S.C. Code Ann. § 15-32-520, any proceeding to determine punitive damages should be bifurcated from any trial to determine liability and compensatory damages.

**For a Sixteenth Defense**
**(Plaintiff's Own Conduct)**

284.    Any damages suffered by Plaintiff, which such damages are expressly denied, are the direct and proximate cause of Plaintiff's own conduct, and its recovery should be barred or, alternatively, reduced in proportion to the same degree as to Plaintiff's comparative fault.

**For a Seventeenth Defense**
**(Failure to Mitigate)**

285.    Plaintiff has failed to mitigate its damages as required by law and such failure bars Plaintiff's recovery, in whole or in part, against Darling Fiber.

**For an Eighteenth Defense**
**(Set-Off)**

286.    Darling Fiber is entitled to a set-off and/or credit of any monies or proceeds received by or on behalf of Plaintiff as a result of the claims alleged in the Complaint, regardless of the source of such monies, prior to any dismissal of or judgment in this matter.

**For a Nineteenth Defense**
**(Lack of Control)**

287.    Plaintiff's claims are barred, in whole or in part, because Darling Fiber did not own, operate, or otherwise control the facilities described in the Complaint at certain times that PFAS is alleged to have migrated out of those facilities.

**For a Twentieth Defense**
**(Lack of Traceability)**

288.    Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff cannot establish its alleged injuries were caused by exposure to PFAS from any conduct attributable to Darling Fiber.

44

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

**For a Twenty-First Defense**
**(Lack of Scientific Evidence)**

289.   Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff cannot establish that PFAS has been reliably established through scientific means, to be capable of causing Plaintiff's alleged injuries.

290.   Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff cannot establish that its customers were exposed to sufficient concentration or amount of PFAS, and/or for sufficient duration, which has been reliably established, through scientific means, to be capable of causing alleged injuries.

**For a Twenty-Second Defense**
**(Lack of Foreseeability)**

291.   Any damages Plaintiff may have suffered (which are expressly denied) were not reasonably foreseeable by Darling Fiber at the time of the conduct alleged.

**For a Twenty-Third Defense**
**(Unjust Enrichment)**

292.   Plaintiff's claims against Darling Fiber are barred by the doctrines of unjust enrichment in that Plaintiff seeks to recover costs or damages for construction, operation, and maintenance of public water supply systems after Plaintiff sought and obtained a permit to secure, treat, and distribute public water supplies and for which it received funding from its customers, State, Local, and Federal sources, including but not limited to funding to specifically address unexpected contamination in water supplies under the Emergency Response Plans of the Safe Drinking Water Act, 42 U.S.C. 300f to 300j.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

**For a Twenty-Four Defense**
**(Preemption or Preclusion by State or Federal Law)**

293.    Plaintiff's claims are pre-empted or otherwise precluded by State and Federal law to the extent Plaintiff seeks recovery of costs or damages for contamination of water supplies, the enforcement of which is vested exclusively in State and Federal agencies pursuant to State and Federal statutes, including but not limited to the Safe Drinking Water Act, 42 U.S.C. 300f to 300j and the South Carolina Hazardous Waste Management Act, S.C. Code Ann. § 44-56-10 *et seq.*

**For a Twenty-Fifth Defense**
**(State of the Art)**

294.    Plaintiff's claims are bared, in whole or in part, because Darling Fiber neither knew, nor should have known, that any of the substances to which Plaintiff or Plaintiff's property was allegedly exposed were hazardous or constituted a reasonably foreseeable risk of physical harm by virtue of the prevailing state of the medical, scientific, technical, and/or industrial knowledge available to Darling Fiber at all times relevant to the claims or causes of action asserted by Plaintiff.

295.    Plaintiff's claims are barred, in whole or in part, because the alleged acts or omissions by Darling Fiber, throughout the relevant and material time period, conformed to the then-existing custom and practice, and Darling Fiber exercised due care and acted in accordance with and/or complied with available technological, medical, scientific, and industrial "state-of-the-art" practice, and/or applicable laws, regulations, standards, and orders.

296.    Plaintiff's claims are barred in whole or in part under the bulk supplier, component part supplier, sophisticated-purchaser, sophisticated-user, sophisticated-intermediary, and/or knowledgeable-user doctrines or other similar or related doctrines available under applicable law.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

**For a Twenty-Sixth Defense**
**(Separations of Power)**

297.    Some or all of Plaintiff's claims are not amenable to judicial resolution because of the primary jurisdiction doctrine. *Texas v. Pacific Railway Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426 (1907).

298.    The relief sought is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus the Court should decline to exercise jurisdiction over these matters pursuant to the doctrine of primary jurisdiction, abstention, and/or the doctrine of separation of powers.

**For a Twenty-Seventh Defense**
**(Open and Obvious Conditions)**

299.    The claims and/or damages alleged in the Complaint are barred, in whole or in part, under the doctrine of open and obvious conditions.

**For a Twenty-Eighth Defense**
**(Voluntary Exposure)**

300.    The claims and/or damages alleged in the Complaint are barred, in whole or in part, under the doctrine of voluntary exposure.

**For a Twenty-Ninth Defense**
**(Coming to the Nuisance)**

301.    The claims and/or damages alleged in the Complaint are barred, in whole or in part, under the doctrine of coming to the nuisance.

**For a Thirtieth Defense**
**(Assumption of the Risk)**

302.    The claims and/or damages alleged in the Complaint are barred, in whole or in part, under the doctrine of assumption of risk.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

**For a Thirty-First Defense**
**(Election of Remedies)**

303.    Plaintiff's claims are barred, in whole or in part, by the doctrine of election of remedies.

**For a Thirty-Second Defense**
**(Public Necessity)**

304.    Plaintiff's claims are or may be barred, in whole or in part, because of consent, public necessity, private necessity, and/or privilege.

**For a Thirty-Third Defense**
**(Compliance with Law)**

305.    Darling Fiber is not responsible or liable for any acts or omissions undertaken at the direction of any governmental authority or agency, including without limitation, acts or omissions made in accordance with applicable statutes, regulations, permits, and industry standards.

**For a Thirty-Fourth Defense**
**(Equitable Defenses)**

306.    Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, waiver, res judicata, estoppel, ratification, and unclean hands.

307.    Plaintiff's Complaint is barred, in whole or in part, by the doctrines of acquiescence, consent, justification, accord and satisfaction, ratification, settlement, or release.

**For a Thirty-Fifth Defense**
**(CERCLA)**

308.    Plaintiff's alleged claims are preempted or barred by the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, and the South Carolina Hazardous Waste Management Act, S.C. Code Ann. § 44-56-10 *et seq.*, to the extent such claims include, encompass, or relate to environmental conditions or natural

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

resource damages or losses at any past, present, or future facilities, site, properties, locations, or other areas listed on the United States Environmental Protection Agency's National Priority List (Superfund sites), or from which discharges or releases of materials have otherwise come to be located emanating from such facilities, sites, properties, locations, or areas.

**For a Thirty-Sixth Defense**
**(Failure to Exhaust Administrative Remedies)**

309.    Plaintiff's claims are barred because it failed to exhaust administrative remedies.

**For a Thirty-Seventh Defense**
**(Proportionate Share)**

310.    Plaintiff is not entitled to recover from Darling Fiber more than Darling Fiber's fair, equitable, and proportionate share, if any, of the costs and damages sought by Plaintiff or to otherwise recover from Darling Fiber more than the amount of such relief, if any, for which Darling Fiber is liable.

**For a Thirty-Eighth Defense**
**(Retroactive Application of Law/Ex Post Facto Doctrine)**

311.    Plaintiff's claims are barred, in whole or in part, to the extent they seek to impose retroactive liability.

312.    Darling Fiber may not be held liable under retroactive theories not requiring proof of fault or causation.

**For a Thirty-Ninth Defense**
**(Adequate Remedy at Law)**

313.    All claims for injunctive relief in Plaintiff's Complaint are barred because Plaintiff has adequate remedies at law, to the extent its claims are provable.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

**For a Fortieth Defense**
**(Necessary Expenses)**

314.    Plaintiff's claims are barred to the extent that they seek to recover costs, damages, and expenses including but not limited to, response, assessment, remediation, cleanup and/or removal costs that Plaintiff incurred improperly, or that are not related to natural resource restoration or replacement damages.

**For a Forty-First Defense**
**(Double Recovery)**

315.    The damages sought by Plaintiff, if awarded, should be reduced by any amounts it recovers from any other sources and Plaintiff is barred from any form of double recovery regardless of the nature or source of such recovery.

**For a Forty-Second Defense**
**(40 C.F.R. § 403.5(a)(2))**

316.    Plaintiff's claims are barred, in whole or in part, because Darling Fiber did not know or have reason to know that its wastewater discharge, alone or in conjunction with a discharge or discharges from other sources, would cause pass through or interference, as contemplated by 40 C.F.R. § 403.5(a)(2).

**For a Forty-Third Defense**
**(Municipal Cost Recovery Rule)**

317.    Plaintiff's claims are barred, in whole or in part, by the municipal cost recovery rule or the free public services doctrine. *See United States v. Standard Oil of California*, 332 U.S. 301 (1947).

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

## For a Forty-Fourth Defense
### (Lack of Personal Jurisdiction)

318.   The Court in which the actions were filed lacks personal jurisdiction over Defendant, and the Complaint should therefore be dismissed under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

## For a Forty-Fifth Defense
### (Plaintiff not a Party in Interest)

319.   The Complaint, and each claim alleged therein, is barred, in whole or in part, because Plaintiff is not the real party in interest or lacks capacity to bring its claims.

## For a Forty-Sixth Defense
### (Defenses to Individuals)

320.   Plaintiff's claims are subject to all defenses that could be asserted if Plaintiff's claims were properly made by individuals on whose behalf or for whose alleged damages Plaintiff seeks to recover.

## For a Forty-Seventh Defense
### (Avoidable Consequences)

321.   Plaintiff's claims are or may be barred, in whole or in part, under applicable common law or statutory doctrines, including but not limited to avoidable consequences and voluntary exposure.

## For a Forty-Ninth Defense
### (Economic Loss Rule)

322.   Plaintiff's claims against Defendant are barred or limited by the economic loss rule.

## For a Fiftieth Defense
### (Acquiescence, Accord and Satisfaction, Settlement, and Release)

323.   Plaintiff's claims are barred, in whole or in part, by the doctrines of acquiescence, accord and satisfaction, settlement, and/or release.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

**For a Fifty-First Defense**
**(Claim Splitting)**

324.    To the extent Plaintiff has split its claims, Plaintiff's claims are barred, in whole or in part, by the doctrine prohibiting claim splitting.

**For a Fifty-Second Defense**
**(Discharge of Duty)**

325.    Plaintiff's claims are barred, in whole or in part, because to the extent Defendant owed any cognizable duty to warn, which is denied, Defendant adequately discharged any such duty.

**For a Fifty-Third Defense**
**(Due Process)**

326.    The relief Plaintiff seeks, in whole or in part, violates Defendant's due process rights.

**For a Fifty-Fourth Defense**
**(Joint and Several Liability)**

327.    Defendant cannot be held jointly and severally liable for the acts or omissions of third parties because their acts or omissions were separate and distinct and the alleged harm is divisible from and greater than any harm allegedly caused by the acts or omissions of Defendant.

**For a Fifty-Fifth Defense**
**(Failure to Identify Products)**

328.    Plaintiff's claims are barred, in whole or in part, because Plaintiff fails to identify any specific product of Defendant which was allegedly manufactured, handled, sold, distributed, or used and caused the alleged injury.

329.    Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff cannot establish that its alleged injuries were caused by exposure to PFAS from any product(s)

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

manufactured, handled, distributed, sold, or used by Defendant or wastewater attributable to Defendant.

## For a Fifty-Sixth Defense
### (Reasonableness and Good Faith)

330.   Plaintiff's claims are barred, in whole or in part, because Defendant acted reasonably and in good faith.

## For a Fifty-Seventh Defense
### (Attenuation)

331.   Plaintiff's purported exposure to products manufactured, handled, distributed, used, or sold by Defendant or wastewater attributable to Defendant, if any, was too removed, indefinite, de minimis, and insufficient to establish a reasonable degree of probability that any such product caused any alleged injury, damage, or loss to Plaintiff.

## For a Fifty-Eighth Defense
### (Reliance on Market Share Liability)

332.   Plaintiff's claims fail as a matter of substantive law and violate the Due Process and Equal Protection clauses of the Fourteenth Amendment of the United States Constitution and the South Carolina Constitution to the extent that by relying on market share or other aggregate proof of causation or liability, Plaintiff seeks to deprive Defendant of procedural and substantive safeguards including, but not limited to, statutory and common law defenses to liability and causation generally.

## For a Fifty-Ninth Defense
### (Lack of Alternative Design)

333.   Any product manufactured, handled, designed, sold, distributed, or used by Defendant and alleged to have caused harm to Plaintiff was, at the time, safer than any reasonable

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

or feasible alternative designs, and any alternative designs would have been less safe, more likely to have caused injury, or otherwise not feasible for their intended use.

**For a Sixtieth Defense**
**(Attorney's Fees)**

334.    To the extent Plaintiff seeks recovery of attorney's fees and costs, Plaintiff is not entitled to any attorney's fees or costs associated with this action because no statute or contract exists that would give Plaintiff the right to recover such costs.

**For a Sixty-First Defense**
**(Protections, Caps, and Limitations on Damages)**

335.    Defendant is entitled to all the procedural, substantive, and other protections, caps, and limitations provided by the state statutes and other state and federal law regarding Plaintiff's claims for compensatory and punitive damages.

**For a Sixty-Second Defense**
**(Pre-existing Conditions)**

336.    Plaintiff's claims are barred, in whole or in part, to the extent that the alleged injuries and damages, if any, were due to preexisting conditions, for which Defendant cannot be held liable.

**For a Sixty-Third Defense**
**(Incorporation)**

337.    Darling Fiber asserts and incorporates herein any affirmative defenses asserted or otherwise raised by other defendants in this action to Plaintiff's Complaint.

338.    Darling Fiber asserts and incorporates herein any affirmative defenses asserted or otherwise raised by Darling Fiber and/or any other Defendant in the case of *Grand Strand Water and Sewer Authority v. AGC Chemicals Americas, Inc., et al.*, South Carolina Civil Action Number 2024-CP-26-05523.

ELECTRONICALLY FILED - 2026 Feb 23 12:30 PM - HORRY - COMMON PLEAS - CASE#2025CP2609305

### For a Sixty-Fourth Defense
### (Reservation)

339.　Darling Fiber has not completed its investigation into Plaintiff's allegations. Darling Fiber intends to act as best it can to inform itself of the pertinent facts and circumstances surrounding the allegations contained in Plaintiff's Complaint. Thus, Darling Fiber hereby gives notice of its intent to assert any further affirmative defenses that it may learn to be supported by facts and law, including but not limited to, that this action is barred in whole or in part by any applicable statute, contract, release, covenant, or by the doctrine of laches. Darling Fiber reserves the right to amend this Answer to assert any such defense.

**WHEREFORE**, having fully answered the Complaint, Darling Fiber prays that the Complaint be dismissed with prejudice, that Darling Fiber be awarded its attorneys' fees and costs associated with defending this action, and for such other and further relief as the Court may deem just and proper.

**WILLIAMS MULLEN**

By: s/John G. Tamasitis
Richard H. Willis (SC Bar No. 6159)
Ethan R. Ware (SC Bar No. 7990)
John G. Tamasitis (SC Bar No. 101875)
1230 Main Street, Suite 330
Columbia, SC 29201
Tel. 803.567.4615
Fax: 803.567.4601
*rwillis@williamsmullen.com*
*eware@williamsmullen.com*
*jtamasitis@williamsmullen.com*

*Counsel for Defendant Fiber Industries, LLC*

February 23, 2026
Columbia, South Carolina