# Exhibit E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | MDL No. 2:18-mn-2873-RMG<br><br>**This Document relates to**<br><br>*City of Columbia v. 3M Co.,*<br>Case No. 2:24-cv-03794-RMG;<br><br>*Town of Cheraw v. 3M Co.,*<br>Case No. 2:25-cv-00679-RMG;<br><br>*City of Georgetown v. 3M Co.,*<br>Case No. 2:25-cv-00680-RMG;<br><br>*Georgetown Cnty. Water & Sewer Dist. v. 3M Co.,* Case No. 2:25-cv-00681-RMG;<br><br>*Joint Municipal Water & Sewer Comm'n v. 3M Co.*, Case No. 2:25-cv-00711-RMG;<br><br>*Saluda Cnty. Water & Sewer Auth. v. 3M Co.,*<br>Case No. 2:25-cv-00810-RMG;<br><br>*Town of Whitmire v. 3M Co.,*<br>Case No. 2:25-cv-00811-RMG;<br><br>*Town of Lexington v. 3M Co.,*<br>Case No. 2:25-cv-00827-RMG;<br><br>*Berkeley Cnty. v. 3M Co.,*<br>Case No. 2:25-cv-00825-RMG |

**DEFENDANT 3M COMPANY'S CONSOLIDATED RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS TO REMAND**

i

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ..................................................................................................... 4

ARGUMENT ......................................................................................................... 9

I.      The Court Has Federal Officer Jurisdiction Over These Cases. ....................................... 9

        A.      Section 1442(a)(1) Liberally Favors Removal To Federal Court. ....................... 10

        B.      3M Acted Under Federal Officers In Manufacturing MilSpec AFFF. ................ 12

        C.      Plaintiffs' Claims Are Related To 3M's Manufacture Of MilSpec AFFF. ......... 15

        D.      3M Has Asserted A Colorable Federal Government Contractor Defense. .......... 18

                1.      The Court's Prior MDL Rulings Support 3M's Plausible Defense
                        Based On The MilSpec's "Reasonably Precise" Specifications. ............. 20

                2.      3M Plausibly Pleaded Its Federal Defense Based On "Continuing
                        Use." ..................................................................................... 23

II.     The Court Has Diversity Jurisdiction Over *Town Of Cheraw*. ....................................... 26

III.    The Court Should Not Transfer These Cases Out Of The MDL. ................................... 27

        A.      These Cases Are Related To Cases In The MDL. ............................................. 27

        B.      Denying Transfer Is Consistent With JPML And MDL Precedents. ................... 31

CONCLUSION ..................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  2020 WL 365617 (N.D. Fla. Jan. 22, 2020) ...............................................................21

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  2020 WL 5835311 (N.D. Fla. Oct. 1, 2020) ...........................................................21, 22

*In re 3M Combat Arms Earplug Prods. Liab. Litig.*,
  474 F. Supp. 3d 1231 (N.D. Fla. 2020).....................................................................21

*In re AFFF Prods. Liab. Litig.*,
  2019 WL 2807266 (D.S.C. May 24, 2019).....................................2, 3, 12, 13, 15, 20

*In re AFFF Prods. Liab. Litig.*,
  2022 WL 4291357 (D.S.C Sept. 16, 2022)..............................3, 15, 18, 19, 20, 21, 23, 24, 26

*In re AFFF Prods. Liab. Litig.*,
  2023 WL 3521472 (D.S.C. May 12, 2023)..................................................................23

*In re AFFF Prods. Liab. Litig.*,
  2023 WL 6846676 (D.S.C. Oct. 17. 2023) ................................................................29

*In re AFFF Prods. Liab. Litig.*,
  357 F. Supp. 3d 1391 (J.P.M.L. 2018)........................................................................31

*In re AFFF Prods. Liab. Litig.*,
  MDL No. 2873, ECF No. 541 (J.P.M.L. Dec. 18. 2019).....................................29, 31, 32, 33

*Athena Automotive, Inc. v. DiGregorio*,
  166 F.3d 288 (4th Cir. 1999) ......................................................................................26

*Ayo v. 3M Co.*,
  2018 WL 4781145 (E.D.N.Y. Sept. 30, 2018) .......................................13, 20, 21, 22

*Baker v. Atlantic Richfield Co.*,
  962 F.3d 937 (7th Cir. 2020) .................................................................................16, 25

*Boyle v. United Techs. Corp.*,
  487 U.S. 500 (1988).....................................................18, 19, 20, 21, 23, 24

*Cabalce v. VSE Corp.*,
  922 F. Supp. 2d 1113 (D. Haw. 2013) ........................................................................15

iii

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*,
996 F.3d 243 (4th Cir. 2021) ..................................................................................10

*Cuomo v. Crane Co.*,
771 F.3d 113 (2d Cir. 2014)................................................................................18, 25

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014)...............................................................................................11, 17

*Dowd v. Textron, Inc.*,
792 F.2d 409 (4th Cir. 1986) ..................................................................................24

*Georgia v. Meadows*,
88 F.4th 1331 (11th Cir. 2023) ...........................................................................13, 14

*Goffner v. Avondale Indus., Inc.*,
2024 WL 2844542 (E.D. La. June 5, 2024)...............................................................14

*Grosch v. Tyco Fire Prods. LP*,
2023 WL 5993548 (D. Ariz. Sept. 15, 2023).............................................................13

*Holdren v. Buffalo Pumps, Inc.*,
614 F. Supp. 2d 129 (D. Mass. 2009) ......................................................................15

*Hoschar v. Appalachian Power Co.*,
739 F.3d 163 (4th Cir. 2014) ..................................................................................26

*West Virginia ex rel. Hunt v. Caremark PCS Health, L.L.C.*,
140 F.4th 188 (4th Cir. 2025) .......................................10, 11, 12, 18, 19, 20, 23, 25

*Jamison v. Wiley*,
14 F.3d 222 (4th Cir. 1994) ....................................................................................22

*Jefferson Cnty. v. Acker*,
527 U.S. 423 (1999)................................................................................................11

*Kircher v. Putnam Funds Tr.*,
547 U.S. 633 (2006)................................................................................................11

*Latiolais v. Huntington Ingalls, Inc.*,
951 F.3d 286 (5th Cir. 2020) ..................................................................................18

*LeBlanc v. Huntington Ingalls Inc.*,
2025 WL 1481961 (E.D. La. May 23, 2025)...............................................................22

*LeBoeuf v. Huntington Ingalls, Inc.*,
2025 WL 1403139 (E.D. La. May 15, 2023)...............................................................22

iv

*Maryland v. 3M Co.*,
    130 F.4th 380 (4th Cir. 2025) ........................................................1, 2, 11, 15, 16, 17, 33

*Messer v. American Gems, Inc.*,
    612 F.2d 1367 (4th Cir. 1980) ........................................................................27

*Michigan v. Keely*,
    2024 WL 5066093 (W.D. Mich. Dec. 11, 2024) ..................................................14

*Moore v. Elec. Boat Co.*,
    25 F.4th 30 (1st Cir. 2022)......................................................................18, 23

*Mulchaey v. Columbia Organic Chems. Co.*,
    29 F.3d 148 (4th Cir. 1994) ..........................5, 7, 9, 10, 11, 13, 17, 19, 20, 25

*Nessel v. Chemguard, Inc.*,
    2021 WL 744683 ..............................................................................12, 20

*Parks v. Guidant Corp.*,
    402 F. Supp. 2d 964 (N.D. Ind. 2005) ............................................................14

*Puerto Rico v. Express Scripts, Inc.*,
    119 F.4th 174 (1st Cir. 2024)........................................................................11

*Ramey v. Martin-Baker Aircraft Co.*,
    874 F.2d 946 (4th Cir. 1989) ........................................................................24

*Ripley v. Foster Wheeler LLC*,
    841 F.3d 207 (4th Cir. 2016) ........................................................................11

*Sawyer v. Foster Wheeler LLC*,
    860 F.3d 249 (4th Cir. 2017) ........................................................10, 12, 13, 15, 18

*W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*,
    23 F.4th 288 (4th Cir. 2022) ........................................................................13

*Watson v. Philip Morris Co., Inc.*,
    551 U.S. 142 (2007)........................................................................10, 12, 13, 14

*Williams v. Lockheed Martin Corp.*,
    990 F.3d 852 (5th Cir. 2021) ........................................................................12, 14

*Willingham v. Morgan*,
    395 U.S. 402 (1969)........................................................................3, 10, 16, 18, 23, 25

**Statutes**

28 U.S.C. § 1332(a) ....................................................................................26

28 U.S.C. §§ 1332(a) and 1441(a) ...............................................................................26

28 U.S.C. § 1404(a) .......................................................................................................32

28 U.S.C. § 1442(a) ...............................................................................................1, 22, 26

28 U.S.C. § 1442(a)(1)...........................................................10, 11, 12, 14, 15, 16, 22

28 U.S.C. § 1446(a) .......................................................................................................11

**Other Authorities**

14 C.F.R. § 139.1 .............................................................................................................6

Fed. R. Civ. P. 42...........................................................................................................27

14C *Federal Practice and Procedure* ........................................................................10

Rule 3.01(C), SCRCP ....................................................................................................32

Rule 7.2, SCRCP............................................................................................................28

Rule 26.01, SCRCP.....................................................................................................6, 28

Rule 26.01(E), SCRCP ..................................................................................................29

Transfer Order 2-5, ECF No. 320 ......................................................................2, 12, 20

Transfer Order 2-5, ECF No. 2559 ....................................................................2, 12, 20

Transfer Order 2-6, ECF No. 325 ......................................................................2, 12, 20

Transfer Order, ECF No. 2-3 ...........................................................................29, 31, 32

Transfer Order, ECF No. 4 .............................................................................................33

**INTRODUCTION**

Defendant 3M Company ("3M") properly removed the above-captioned cases from South Carolina state court to the docket of this MDL based on federal officer jurisdiction—and in one case, also based on diversity jurisdiction—and the Court therefore should deny Plaintiffs' motions to remand these cases to state court and their alternative motions to transfer the cases to different divisions of the federal district court for the District of South Carolina.[1]

Plaintiffs are nine South Carolina public water providers that have filed suit against 3M and other defendants to recover for alleged contamination of their drinking water and wastewater from per- and polyfluoroalkyl substances ("PFAS"). 3M removed these cases to this Court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a), based on plausible, case-specific allegations that the PFAS impacting each Plaintiff's drinking water and wastewater had derived at least in part from use of MilSpec AFFF for firefighting and fire training at U.S. military bases and airports. They previously sought remand based on objections to federal jurisdiction over cases like these in which the complaints purport to disclaim relief arising from PFAS-containing aqueous film-forming foams ("AFFF"), including AFFF that 3M manufactured pursuant to U.S. military specifications ("MilSpec AFFF").[2] But the Fourth Circuit now has rejected those remand arguments, holding that an alleged disclaimer of AFFF-related relief does not preclude federal officer jurisdiction over putative "non-AFFF" cases when the plaintiffs seek recovery for alleged contamination where PFAS from AFFF and non-AFFF sources is plausibly commingled. *See Maryland v. 3M Co.*, 130 F.4th 380, 392 (4th Cir. 2025). Plaintiffs thus have abandoned their disclaimer-based objections to federal jurisdiction.

---

[1] Plaintiffs have separately filed nine motions to remand or, alternatively, to transfer. *See* ECF Nos. 6959, 6961, 6962, 6964, 6969, 6970, 6978, 6987, 6998. (Where not otherwise specified, references to "ECF No." are to the Court's MDL docket, No. 2:18-mn-02873.) But each Plaintiff's remand and transfer arguments are nearly word-for-word identical. Accordingly, 3M is opposing them in this consolidated response. For convenience when citing Plaintiffs' briefing, unless otherwise specified, 3M will cite to page numbers for the brief in support of the first-filed motion, Plaintiff The City of Columbia d/b/a Columbia Water's Memorandum In Support of Its Renewed Motion to Remand or, In the Alternative, Motion to Transfer, ECF No. 6959-1 ("Pl. Mem.").

[2] ECF Nos. 5422, 6754, 6756, 6758, 6770; *see* ECF No. 6790 (denying motions without prejudice).

Following the Fourth Circuit's *Maryland* decision, this Court should reject the remaining arguments advanced by Plaintiffs. Each case relates to actions 3M undertook under federal officers in manufacturing MilSpec AFFF—and 3M has a colorable federal government contractor defense in each case—because Plaintiffs seek to recover for claimed PFAS contamination where PFAS from MilSpec AFFF is commingled with PFAS from other alleged sources. This Court has repeatedly ruled that under the federal officer removal statute, AFFF manufacturers properly removed cases seeking to hold them liable for alleged harms from MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2-3 (D.S.C. May 24, 2019) (denying remand of *State of New York I*); Order 2-5, ECF No. 320 (D.S.C. Sept. 27, 2019) (denying remand of *State of New York II*); Order 2-6, ECF No. 325 (D.S.C. Oct. 1, 2019) (denying remand of *Ridgewood Water*); Order 2-5, ECF No. 2559 (D.S.C. Aug. 24, 2022) (denying remand of *Insurance Auto Auctions*). And under the Fourth Circuit's *Maryland* decision, 3M's removal of these cases based on federal officer jurisdiction was proper because 3M plausibly alleged in each case that its "Military AFFF Production is inextricably related to [Plaintiffs'] general allegations of PFAS contamination, notwithstanding their attempts to draw a line between 3M's federal and non-federal work." 130 F.4th at 392.

3M's notices of removal in each case included plausible allegations establishing removability, and even cited publicly available government reports establishing historical MilSpec AFFF use for firefighting and fire training at particular military bases and airports where PFAS releases plausibly would have contributed to the alleged PFAS contamination in each case. Plaintiffs do not purport to offer any factual evidence contradicting these allegations—and even if they had, such evidence would not defeat removability, because the evaluation of competing evidence that will determine the availability of a federal defense must occur in federal court.

Instead, Plaintiffs now advocate for remand based on legal grounds that the Fourth Circuit did not reach in *Maryland* and that are unrelated to their alleged disclaimers—but these backup arguments lack merit. Plaintiffs argue that 3M cannot meet the requirements for federal officer removal and for a government contractor defense because the MilSpec for AFFF supposedly was

2

not reasonably precise insofar as it failed to specify the exact PFAS chemicals that AFFF manufacturers should use in producing MilSpec AFFF. That argument cannot be reconciled with this Court's own prior orders in this MDL. This Court has recognized that, because the U.S. military requires AFFF to conform to MilSpec requirements—including a requirement that AFFF contain PFAS—the MilSpec is sufficiently precise to support AFFF manufacturers' contentions that they acted under federal authority in producing MilSpec AFFF and could assert a colorable government contractor defense. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *2-3. There is neither reason nor legal support for the Court to reach a different conclusion now. Moreover, following summary-judgment briefing on an extensive record, this Court concluded that 3M's government contractor defense raises triable issues of fact, *notwithstanding* the alleged imprecision of the MilSpec, in part because the defense can be established by the military's continued use of AFFF after it had become aware of the specific PFAS chemicals it contained and the alleged risks they posed. *See In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *8-12 (D.S.C. Sept. 16, 2022). Although 3M maintains that the MilSpec is sufficiently and reasonably precise on its face, at a minimum it is plain that, given the Court's summary-judgment order, 3M's federal defense is necessarily colorable and thus sufficient for the removal of each of these cases. Plaintiffs' argument to the contrary is inconsistent with the Supreme Court's instruction that a defendant "need not win his case before he can have it removed." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). Accordingly, 3M properly removed these cases based on federal officer jurisdiction. Additionally, Plaintiffs fail to raise any challenge to 3M's removal of *Town of Cheraw* based on diversity jurisdiction, so it is undisputed that that case was properly removed.

Plaintiffs alternatively move to transfer these cases out of the MDL, but those motions are baseless and cannot possibly be justified by the interests of judicial efficiency. Plaintiffs move to transfer six cases to three different divisions of the District of South Carolina, where they would have to be heard by multiple different judges who are unfamiliar with PFAS litigation (or far less familiar with it than the MDL Court)—and while Plaintiffs concede that three cases would appropriately proceed here in the Charleston Division, Plaintiffs also move to "transfer" those

cases "from the AFFF MDL docket."[3] But it unquestionably would be far more efficient for these water provider cases to be heard by the MDL Court and coordinated with the MDL. Plaintiffs' only argument for transfer is that the Judicial Panel on Multidistrict Litigation ("JPML")—out of concern that the MDL may become unmanageable if it included every PFAS case filed in or removed to federal court nationwide—has declined to transfer to the MDL several putative "non-AFFF" cases filed outside South Carolina. Those JPML orders fail to show that *these* cases—initially filed in South Carolina state court to recover for PFAS contamination in South Carolina—should proceed separately in multiple divisions of this District rather than in coordination with the MDL. All of these cases fall comfortably within the scope of the MDL established by the JPML, and even if that were not the case, these PFAS cases and similar cases in the MDL clearly are "related cases" that should be coordinated before the same judge—*i.e.*, the MDL Court—in the interests of judicial efficiency under this District's local rules, especially when the MDL already includes overlapping cases alleging PFAS contamination of water and wastewater across South Carolina.

The Court therefore should deny Plaintiffs' motions to remand and motions to transfer.

## BACKGROUND

Plaintiffs, all of whom are water systems that opted out of 3M's settlement with a nationwide class of water providers and are represented by the same counsel, initially filed these cases in South Carolina state court. Plaintiff City of Columbia filed its complaint in June 2024 in the Court of Common Pleas for Richland County; Plaintiffs in the other eight actions filed their complaints in January 2025 in Courts of Common Pleas for six different counties (Berkeley County, Chesterfield County, Georgetown County, Lexington County, Newberry County, and Saluda County).[4]

---

[3] Plaintiffs seek to transfer *City of Columbia*, *Town of Cheraw*, *Joint Municipal Water and Sewer Commission*, *Saluda County*, *Town of Lexington*, and (presumably) *Town of Whitmire* to other divisions of this District, but seek to transfer *City of Georgetown*, *Georgetown County Water and Sewer District*, and *Berkeley County* "from the AFFF MDL docket." *See infra* at 27 n. 32.

[4] *See* Compl., *The City of Columbia (dba Columbia Water) v. 3M Co.*, No. 2:24-cv-03794, ECF

The complaints in these nine cases plead substantially similar allegations in support of state-law claims against 3M and numerous other defendants (with different groups of other defendants being named in each case). Plaintiffs allege that they provide drinking water to members of the public; they operate both drinking water and wastewater treatment plants; their drinking water sources and wastewater purportedly have been contaminated with PFAS including PFOS and PFOA; they must remove PFAS from their drinking water and wastewater to comply with new federal regulations; and as a result they incurred and continue to incur costs for which they seek damages in these lawsuits, including the costs of upgrading their drinking water and wastewater treatment plants.[5] They seek to hold 3M liable based on allegations that 3M manufactured and supplied PFAS and PFAS-containing products that were used or released by other defendants in South Carolina, resulting in purported contamination of Plaintiffs' water and wastewater.[6] Each complaint identifies certain alleged "non-AFFF" sources of the PFAS— including industrial releases from nearby manufacturing facilities and wastewater discharges— while also alleging that Plaintiffs purportedly do not seek relief for AFFF contamination.[7]

---

No. 1-1 ("*Columbia* Compl."); Compl., *Town of Cheraw v. 3M Co.*, No. 2:25-cv-00679, ECF No. 1-1 ("*Cheraw* Compl.") (Chesterfield County); Compl., *City of Georgetown v. 3M Co.,* No. 2:25-cv-00680, ECF No., 1-1 ("*Georgetown* Compl.") (Georgetown County); Compl., *Georgetown Cnty. Water & Sewer Dist. v. 3M Co.,* No. 2:25-cv-00681, ECF No. 1-1 ("*GCWSD* Compl.") (Georgetown County); Compl., *Joint Municipal Water & Sewer Comm'n v. 3M Co.*, No. 2:25-cv-00711, ECF No. 1-1 ("*JMWSC* Compl.") (Lexington County); Compl., *Saluda Cnty. Water & Sewer Auth. v. 3M Co.,* No. 2:25-cv-00810, ECF No. 1-1 ("*Saluda County* Compl.") (Saluda County); Compl., *Town of Whitmire v. 3M Co.,* No. 2:25-cv-00811, ECF No. 1-1 ("*Whitmire* Compl.") (Newberry County); Compl., *Town of Lexington v. 3M Co.,* No. 2:25-cv-00827, ECF No. 1-1 ("*Lexington* Compl.") (Lexington County); Compl., *Berkeley Cnty. v. 3M Co.,* No. 2:25-cv-00825, ECF No. 1-1 ("*Berkeley County* Compl.") (Berkeley County).

[5] *Columbia* Compl. ¶¶ 1-10; *Cheraw* Compl. ¶¶ 1-24; *Georgetown* Compl. ¶¶ -12; *GCWSD* Compl. ¶¶ 1-12; *JMWSC* Compl. ¶¶ 1-14; *Saluda County* Compl. ¶¶ 1-12; *Whitmire* Compl. ¶¶ 1-12; *Lexington* Compl. ¶¶ 1-14; *Berkeley County* Compl. at Background ¶¶ 1-16.

[6] *See Columbia* Compl. ¶¶ 21-65; *Cheraw* Compl. ¶¶ 25-35; *Georgetown* Compl. ¶¶ 25-44; *GCWSD* Compl. ¶¶ 26-46; *JMWSC* Compl. ¶¶ 28-57; *Saluda County* Compl. ¶¶ 25-54; *Whitmire* Compl. ¶¶ 24-45; *Lexington* Compl. ¶¶ 26-55; *Berkeley County* Compl. at Parties, Part II ¶¶ 1-12.

[7] *See Columbia* Compl. ¶¶ 5, 68; *Cheraw* Compl. ¶¶ 6, 38; *Georgetown* Compl. ¶¶ 6, 47; *GCWSD* Compl. ¶¶ 6, 49; *JMWSC* Compl. ¶¶ 7, 60; *Saluda County* Compl. ¶¶ 6, 57; *Whitmire* Compl. ¶¶ 6,

3M timely removed each of these cases to this Court.[8] As instructed by this Court pursuant to Case Management Order ("CMO") No. 1 in the MDL, 3M filed each notice of removal directly in the MDL docket. At the time of removal, 3M explained that each case asserted claims to recover for alleged PFAS contamination and was "related" to cases in the MDL.[9]

3M removed each of the nine cases under the federal officer removal statute. 3M's notices of removal in each case pleaded that the alleged PFAS contamination of Plaintiffs' drinking water sources and wastewater plausibly had derived at least in part from the use, storage, or disposal of MilSpec AFFF for firefighting and fire training at particular nearby military bases and "Part 139" airports;[10] PFAS from MilSpec AFFF was commingled with any PFAS from the alleged "non-AFFF" sources in Plaintiffs' water and wastewater; Plaintiffs are thus seeking to hold 3M liable for conduct undertaken at the direction of the federal government in manufacturing AFFF in

---

48; *Lexington* Compl. ¶¶ 7, 58; *Berkeley County* Compl. at Background ¶ 8 & Disclaimer ¶ 15.

[8] *See* Notice of Removal, *The City of Columbia (dba Columbia Water) v. 3M Co.*, No. 2:24-cv-03794, ECF No. 1 ("*Columbia* NOR"); Notice of Removal, *Town of Cheraw v. 3M Co.*, No. 2:25-cv-00679, ECF No. 1 ("*Cheraw* NOR"); Notice of Removal, *City of Georgetown v. 3M Co.,* No. 2:25-cv-00680, ECF No., 1 ("*Georgetown* NOR"); Notice of Removal, *Georgetown Cnty. Water & Sewer Dist. v. 3M Co.,* No. 2:25-cv-00681, ECF No. 1 ("*GCWSD* NOR"); Notice of Removal, *Joint Municipal Water & Sewer Comm'n v. 3M Co.*, No. 2:25-cv-00711, ECF No. 1 ("*JMWSC* NOR"); Notice of Removal, *Saluda Cnty. Water & Sewer Auth. v. 3M Co.,* No. 2:25-cv-00810, ECF No. 1 ("*Saluda County* NOR"); Notice of Removal, *Town of Whitmire v. 3M Co.,* No. 2:25-cv-00811, ECF No. 1 ("*Whitmire* NOR"); Notice of Removal, *Town of Lexington v. 3M Co.,* No. 2:25-cv-00827, ECF No. 1 ("*Lexington* NOR"); Notice of Removal, *Berkeley Cnty. v. 3M Co.,* No. 2:25-cv-00825, ECF No. 1 ("*Berkeley County* NOR"). 3M initially filed each notice of removal in the shell case number for the MDL.

[9] *See* 3M's Resps. To L.R. 26.01 Interrogs., ¶ E, *The City of Columbia (dba Columbia Water) v. 3M Co.*, No. 2:24-cv-03794, ECF No. 1-3; *Town of Cheraw v. 3M Co.*, No. 2:25-cv-00679, ECF No. 1-3; *City of Georgetown v. 3M Co.,* No. 2:25-cv-00680, ECF No. 1-3; *Georgetown Cnty. Water & Sewer Dist. v. 3M Co.,* No. 2:25-cv-00681, ECF No. 1-3; *Joint Municipal Water & Sewer Comm'n v. 3M Co.*, No. 2:25-cv-00711, ECF No. 1-3; *Saluda Cnty. Water & Sewer Auth. v. 3M Co.,* No. 2:25-cv-00810, ECF No. 1-3; *Town of Whitmire v. 3M Co.,* No. 2:25-cv-00811, ECF No. 1-3; *Town of Lexington v. 3M Co.,* No. 2:25-cv-00827, ECF No. 1-3; *Berkeley Cnty. v. 3M Co.,* No. 2:25-cv-00825, ECF No. 1-3.

[10] Part 139 airports are civilian airports certified by the Federal Aviation Administration ("FAA") pursuant to 14 C.F.R. § 139.1. Such airports historically used MilSpec AFFF and were required to use MilSpec (as opposed to commercial) AFFF after 2006. *See* FAA Part 139 CertAlert 06-02, Aqueous Film-Forming Foam (AFFF) meeting MIL-F-24385 (Feb. 8 2006), ECF No. 1971-14.

conformity with a MilSpec imposing strict requirements on any AFFF purchased or used by the military; and 3M accordingly would be asserting its federal government contractor defense as to Plaintiffs' claims.[11] 3M's notices of removal also argued that Plaintiffs' alleged disclaimers of relief relating to AFFF could not prevent 3M from invoking either the federal officer removal statute or 3M's federal defense (an argument the Fourth Circuit endorsed in *Maryland*).

As summarized below, in each case 3M supported its plausible allegations with public government reports documenting that MilSpec AFFF historically was used at particular military installations and Part 139 airports located in the vicinity of Plaintiffs' drinking water sources, where AFFF discharges plausibly had contributed to PFAS in Plaintiffs' water and wastewater.

- ***City of Columbia* and *Berkeley County*.** Plaintiff City of Columbia alleges that it draws its water from the Broad River and Lake Murray (which is a reservoir on the Saluda River). *Columbia* Compl. ¶ 2. Plaintiff Berkeley County alleges that it draws or plans to draw water from Lake Moultrie and Lake Marion, which are downriver from Columbia (which is where the Broad River and Saluda River join to form the Congaree River, which flows into Lake Moultrie and Lake Marion). *Berkeley County* Compl. ¶¶ 2-3. 3M alleged that the claimed PFAS contamination of the City of Columbia's and Berkeley County's water plausibly derived from MilSpec AFFF use at (among other sites) several military installations near Columbia, including Fort Jackson, the McEntire Joint National Guard Base, the McEntire Army Aviation Support Facility, and the McCrady Training Site. *Columbia* NOR ¶¶ 2, 28-30; *Berkeley County* NOR ¶¶ 2, 30-34. 3M cited government reports and court filings showing that MilSpec AFFF was used at those facilities, and PFAS from AFFF had migrated off-site to groundwater and surface water. *Columbia* NOR ¶¶ 28-29; *Berkeley County* NOR ¶¶ 31-33. The reports cited by 3M also showed that PFAS from AFFF plausibly had migrated from those facilities, via groundwater and surface water, both toward Broad River and Lake Murray (where such PFAS would impact the City of Columbia's water), and also toward the Congaree River and surrounding surface waters that flow into Lake Moultrie and Lake Marion (where such PFAS would impact Berkeley County's water). *Columbia* NOR ¶ 29; *Berkeley County* NOR ¶¶ 31-33.

- ***Town of Cheraw*.** Plaintiff Town of Cheraw alleges that it draws its water from the Great Pee Dee River. *Cheraw* Compl. ¶ 15. 3M alleged that PFAS impacting the Town of Cheraw's water on the Great Pee Dee River plausibly derived from MilSpec AFFF use at the Salisbury Army Aviation Support Facility Air National Guard Base, the Stanly County Air National Guard Base, and the Stanly County Airport, all of which are located upriver from Cheraw. *Cheraw* NOR ¶¶ 2, 31-33. 3M cited reports and court filings showing that MilSpec AFFF has been used at

---

[11] *See Columbia* NOR ¶¶ 1-4; *Cheraw* NOR ¶¶ 1-4; *Georgetown* NOR ¶¶ 1-4, 24; *GCWSD* NOR ¶¶ 1-4; *JMWSC* NOR ¶¶ 1-4; *Saluda County* NOR ¶¶ 1-4; *Whitmire* NOR ¶¶ 1-4; *Lexington* NOR ¶¶ 1-4; *Berkeley County* NOR ¶¶ 1-4.

those facilities; that PFAS from AFFF had migrated off-site from the facilities to groundwater and surface water; and that such PFAS would have impacted the upper course of the Great Pee Dee River and its tributaries, thereby contributing to the alleged downriver contamination. *Id*. ¶¶ 31-33.

- **City of Georgetown and Georgetown County Water and Sewer District ("GCWSD").** Plaintiff City of Georgetown alleges that it draws its water from the Great Pee Dee River at the International Paper ("IP") Canal. *Georgetown* Compl. ¶¶ 2, 4. Plaintiff GCWSD alleges that it draws its water from the Waccamaw River (near the IP Canal). *GCWSD* Compl. ¶ 2. 3M alleged that PFAS impacting the City of Georgetown's and GCWSD's water plausibly derived from MilSpec AFFF use at the Shaw Air Force Base, which is upgradient from Georgetown's and GCWSD's water intakes. *Georgetown* NOR ¶¶ 2, 30-31; *GCWSD* NOR ¶¶ 2, 30-31. 3M cited reports and court filings showing that AFFF has been used at Shaw Air Force Base; PFAS from AFFF had migrated off-site to groundwater and surface water including Long Branch Creek; and such PFAS plausibly travelled via groundwater and surface water to where it ultimately would impact the IP Canal and Waccamaw River, thereby contributing to the alleged PFAS contamination. *Georgetown* NOR ¶¶ 30-31; *GCWSD* NOR ¶¶ 30-31.

- **Joint Municipal Water and Sewer Commission ("JMWSC"), Saluda County Water and Sewer Authority ("Saluda County"), and Town of Lexington.** Plaintiffs JMWSC, Saluda County, and Town of Lexington each allege that they draw their water from Lake Murray, a Saluda River reservoir. *JMWSC* Compl. ¶ 3; *Saluda County* Compl. ¶ 2; *Lexington* Compl. ¶ 3. 3M alleged that PFAS in Lake Murray plausibly derived from MilSpec AFFF use at (potentially among other sites) the Army Aviation Support Facility Upstate, which is upgradient of Lake Murray. *JMWSC* NOR ¶¶ 2, 31-33; *Saluda County* NOR ¶¶ 2, 30-32; *Lexington* NOR ¶¶ 2, 31-33. 3M cited government reports showing that MilSpec AFFF has been used at the Army Aviation Support Facility Upstate; PFAS from AFFF use at the Army Aviation Support Facility Upstate had migrated off-site to groundwater and surface water; and such PFAS would have impacted tributaries of the Saluda River, thus contributing to the alleged contamination of Lake Murray. *JMWSC* NOR ¶ 31; *Saluda County* NOR ¶ 30; *Lexington* NOR ¶ 31.

- **Town of Whitmire.** Plaintiff Town of Whitmire alleges that it draws its water from the Enoree River. *Whitmire* Compl. ¶ 2. 3M alleged that PFAS in the Enoree River plausibly derived from MilSpec AFFF use at the Greenville-Spartanburg International Airport, a Part 139 airport located on the Enoree River upriver from Whitmire. *Whitmire* NOR ¶¶ 2, 30-31. 3M cited reports and court records indicating that AFFF was stored at the Greenville-Spartanburg International Airport. *Id*. ¶¶ 30-31. 3M also cited sales records showing that it had sold MilSpec AFFF to the Greenville-Spartanburg International Airport. *Id*. ¶ 30. Accordingly, 3M alleged that PFAS from AFFF at the airport plausibly had contributed to the alleged downriver contamination of the Enoree River. *Id*. ¶ 33.

Notably, several MilSpec AFFF sites identified by 3M as plausible sources of the alleged PFAS contamination in these cases have also been put at issue by the State of South Carolina's AFFF lawsuit pending in the MDL, in which the State broadly seeks to recover for alleged PFAS contamination of statewide natural resources, including water supplies, from AFFF. *See* Compl.

¶ 142, *South Carolina v. 3M Co.*, No. 2:23-cv-05734 (D.S.C.), ECF No. 1-1 ("AG AFFF Compl.") ("AFFF chemicals have appeared in testing and contaminate the surface waters, groundwater, wetlands, soil, and natural resources at and around specific sites, including . . . Shaw Air Force Base, McCrady Training Center, McEntire Joint National Guard Base, [and] Greenville-Spartanburg International Airport . . . ."). As 3M noted in its notices of removal, especially because Plaintiffs' own complaints allege that PFAS migrates long distances through groundwater and surface water,[12] it is plausible that PFAS from the MilSpec AFFF sources identified by 3M in each case had commingled in Plaintiffs' drinking water and wastewater with PFAS from the alleged "non-AFFF" sources—thus establishing a basis for federal officer removal of these cases.

Additionally, 3M's notice of removal in *Town of Cheraw* explained that removal there was also appropriate on the alternative basis of diversity jurisdiction. *Cheraw* NOR ¶¶ 55-74. Plaintiffs do not challenge that additional basis for jurisdiction in *Town of Cheraw*.

Plaintiffs now move to remand these cases (or renew previously filed motions to remand) and alternatively move to transfer the cases out of the MDL. However, Plaintiffs have failed to present any viable arguments to counter the bases for 3M's removal of these cases to this Court.

## ARGUMENT

### I.    The Court Has Federal Officer Jurisdiction Over These Cases.

Because 3M pleaded the required elements of federal officer removal in each of these cases, 3M is entitled to a federal forum to adjudicate Plaintiffs' claims related to 3M's federal conduct in manufacturing MilSpec AFFF and 3M's federal government contractor defense. Plaintiffs' contrary arguments fail—in fact, Plaintiffs do not even address this Court's prior orders holding that AFFF manufacturers properly removed AFFF cases under the federal officer removal statute.

---

[12] *See Columbia* Compl. ¶ 80; *Cheraw* Compl. ¶ 48; *Georgetown* Compl. ¶ 57; *GCWSD* Compl. ¶ 59; *JMWSC* Compl. ¶ 70; *Saluda County* Compl. ¶ 67; *Whitmire* Compl. ¶ 58; *Lexington* Compl. ¶ 68; *Berkeley County* Compl. ¶ 25; *see also* AG AFFF Compl. ¶ 143.

## A.     Section 1442(a)(1) Liberally Favors Removal To Federal Court.

Under the federal officer removal statute, a civil action may be removed to federal court if it is "against or directed to" "any person acting under [any] officer[] of the United States or of any agency thereof," and is "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). A private defendant thus may remove a case by showing that (1) "it acted under a federal officer"; (2) "the charged conduct was carried out for or in relation to the asserted official authority"; and (3) the defendant "has a colorable federal defense." *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 255 (4th Cir. 2017) (internal quotation marks omitted). Section 1442(a)(1) authorizes removal of the entire case even if only a portion of the claims in the case relates to conduct at the direction of a federal officer. *See id*. at 257; *see also Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 247-248, 252 n.8 (4th Cir. 2021) (upholding federal officer removal because the defendant's challenged conduct included conduct pursuant to federal contracts and holding that the complaint's connection to the company's federal work was not too attenuated to remove the case even though such work accounted for only eight percent of the company's revenue); 14C *Federal Practice and Procedure (Wright & Miller)* § 3726 (Rev. 4th ed. April 2025 Update).

The Supreme Court has held that § 1442(a)(1) is "liberally construed" in favor of removal, *Watson v. Philip Morris Co., Inc.*, 551 U.S. 142, 147 (2007), and "should not be frustrated by a narrow, grudging interpretation," *Willingham*, 395 U.S. at 407. Section 1442(a)(1) furthers the important congressionally adopted policy of affording federal agents a "federal forum for a federal defense." *Sawyer*, 860 F.3d at 254; *see Willingham*, 395 U.S. at 407 ("[o]ne of the primary purposes of the [federal officer] removal statute" is to have federal "defenses litigated in the federal courts"). Therefore, the "ordinary 'presumption against removal' does not apply." *Cnty. Bd. of Arlington Cnty.*, 996 F.3d at 251. To be sure, courts "strictly construe removal jurisdiction" in cases removed *under § 1441*, *Mulchaey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994), but in contrast, *§ 1442 "mandates* a liberal construction." *West Virginia ex rel. Hunt v. Caremark PCS Health, L.L.C.*, 140 F.4th 188, 194 (4th Cir. 2025) (emphasis added).

10

Moreover, § 1442(a)(1) is "an exception to the well-pleaded complaint rule." *Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 210 (4th Cir. 2016). Actions against federal agents "may be removed despite the nonfederal cast of the complaint" so long as "the defense depends on federal law." *Jefferson Cnty. v. Acker,* 527 U.S. 423, 431 (1999); *see Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 644 n.12 (2006). A "plaintiff in the § 1442(a)(1) removal context is no longer the master of its complaint," and instead, courts "must credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work." *Maryland*, 130 F.4th at 389; *see also Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 189, 192 (1st Cir. 2024).

As in other contexts, "a defendant's notice of removal need include only . . . *plausible* allegation[s]" supporting removal. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (emphasis added); *see* 28 U.S.C. § 1446(a) (requiring that a notice of removal contain only a "short and plain statement of the grounds for removal"). Although the "[t]he removing party bears the burden" of showing "that the actions belong in federal court," the party will "carry that burden" when its notice of removal contains a "'plausible allegation' that federal jurisdiction is proper." *Maryland*, 130 F.4th at 387; *accord Caremark PCS Health, L.L.C.*, 140 F.4th at 194.

Applying these liberal standards, 3M more than adequately pleaded each required element of federal officer removal in these cases.[13] First, 3M acted under federal officers in producing MilSpec AFFF. Second, these cases are related to 3M's conduct under federal officers and its assertion of its federal defense because 3M plausibly alleged that the claimed PFAS contamination in these cases from purported "non-AFFF" sources is commingled with PFAS from MilSpec AFFF. Third, 3M has a colorable government contractor defense because 3M's AFFF products conformed to the military's reasonably precise MilSpec and the military purchased and used those products for decades while knowing of the alleged hazards of the PFAS in AFFF. As shown below, 3M's plausible allegations sufficed to remove these cases, and Plaintiffs fail to prove otherwise.

---

[13] *See Columbia* NOR ¶¶ 33-48; *Cheraw* NOR ¶¶ 37-53; *Georgetown* NOR ¶¶ 35-51; *GCWSD* NOR ¶¶ 35-51; *JMWSC* NOR ¶¶ 36-52; *Saluda County* NOR ¶¶ 35-51; *Whitmire* NOR ¶¶ 35-51; *Lexington* NOR ¶¶ 36-52; *Berkeley County* NOR ¶¶ 38-54.

### B.     3M Acted Under Federal Officers In Manufacturing MilSpec AFFF.

3M unquestionably qualifies as a "person acting under" a federal officer. 28 U.S.C. § 1442(a)(1). The "acting under" provision requires private defendants to show "an effort to *assist*, or to help *carry out*, the duties or tasks" of a federal officer. *Watson*, 551 U.S. at 152; *accord Caremark PCS Health*, 140 F.4th at 197. The phrase "acting under" is "broad" and "liberally construed." *Watson*, 551 U.S. at 147. As the Fourth Circuit has explained, "courts have unhesitatingly treated the 'acting under' requirement as satisfied where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government*." *Sawyer*, 860 F.3d at 255; *accord Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021) (holding that the "archetypal case" of a private defendant "acting under" the government is when it was "working under a federal contract to produce an item the government needed"). The "acting under" requirement is thus met in these cases, which 3M removed on the basis that the claimed injuries arose in part from MilSpec AFFF that 3M manufactured for the government.

This Court already has repeatedly held that, for purposes of § 1442(a)(1), AFFF manufacturers like 3M were "acting under" federal officers in manufacturing MilSpec AFFF. As the Court has explained, AFFF manufacturers "manufactured and sold AFFF products containing PFOS/PFOA to the U.S. military, which used and stored the products"; "the U.S. military accepts and tests AFFF products against military specifications ('MilSpec') promulgated by Naval Sea Systems Command, including specifications that AFFF product formulations include the chemical class that includes PFOA/PFOS"; and thus an AFFF manufacturer alleging those facts has "demonstrated that it was manufacturing the product under the military's guidance." *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266 at *2 (concluding that AFFF manufacturers met the "acting under" requirement in producing MilSpec AFFF used at military bases and civilian airports); *see* Order 4, ECF No. 320 (holding that AFFF manufacturers were "acting under" the military in producing MilSpec AFFF used at civilian airports); Order 4, ECF No. 325; Order 3, ECF No. 2559; *accord Nessel v. Chemguard, Inc.*, 2021 WL 744683, at *3 ("Defendants have satisfied the 'acting under' requirement" because MilSpec AFFF "is a product that the Government would have

12

had to create if Defendants did not exist"); *Ayo v. 3M Co.*, 2018 WL 4781145, at *9 (E.D.N.Y. Sept. 30, 2018) (holding that AFFF manufacturers were "acting under" Department of Defense).[14]

In these cases, 3M has pleaded the same facts that this Court has relied on to conclude that AFFF manufacturers were "acting under" the U.S. military in producing MilSpec AFFF. Plaintiffs do not and cannot dispute 3M's allegations that it produced MilSpec AFFF for the military for decades; that MilSpec AFFF has been a mission-critical product that the military has used to protect the lives of service members and prevent damage to military property and equipment; that the military tested 3M's MilSpec AFFF products to ensure that they conformed with the requirements of the MilSpec before the military placed the products on its Qualified Products List; and that until 2019, the MilSpec expressly required that AFFF must contain PFAS.[15]

To be sure, "a private actor who merely has a contract with the federal government to produce or provide goods is not sufficient" to meet the "acting under" requirement, *W. Va. State Univ. Bd. of Governors v. Dow Chem. Co.*, 23 F.4th 288 (4th Cir. 2022)—but here 3M has not alleged merely that it was a federal government contractor: 3M has shown that the government exercised the required "subjection, guidance, or control" over its activities (*Watson,* 551 U.S. at 151) because 3M manufactured AFFF pursuant to requirements in the MilSpec. Courts including the Fourth Circuit and this Court have held that the military's issuance of such specifications is more than sufficient control over defendants' manufacturing activities to enable federal officer removal. *See, e.g., Sawyer,* 860 F.3d at 253, 255 (defendant "acted under the Navy" in manufacturing products matching "military specifications provided by the Navy"); *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266 at *2.[16] Plaintiffs argue that the U.S. military did not exert

---

[14] *Grosch v. Tyco Fire Prods. LP*, 2023 WL 5993548 (D. Ariz. Sept. 15, 2023) (cited at Pl. Mem. 24) is not to the contrary: While the court there remanded an AFFF case, the plaintiff was a *civilian* firefighter and (unlike here) there was no showing that the case involved *MilSpec* AFFF.

[15] *See Columbia* NOR ¶¶ 23-26; *Cheraw* NOR ¶¶ 24-28; *Georgetown* NOR ¶¶ 24-28; *GCWSD* NOR ¶¶ 24-28; *JMWSC* NOR ¶¶ 24-28; *Saluda County* NOR ¶¶ 24-28; *Whitmire* NOR ¶¶ 24-28; *Lexington* NOR ¶¶ 24-28; *Berkeley County* NOR ¶¶ 24-28.

[16] In a footnote, Plaintiffs cite *Georgia v. Meadows*, 88 F.4th 1331 (11th Cir. 2023), but that out-of-circuit decision is both unpersuasive and distinguishable. *Meadows* involved the removal of a

13

sufficient control over 3M through issuance of the AFFF MilSpec because the MilSpec supposedly is a specification for AFFF's performance rather than its design (Pl. Mem. 23), but Plaintiffs are wrong about the MilSpec, which contains a critical design element: AFFF must contain "fluorocarbon surfactants," *i.e.* PFAS.[17] And in any case, Plaintiffs cite no cases holding that a defendant cannot "act under" the military in meeting performance standards.[18] Manufacturers *do* meet the "acting under" requirement if they produce products pursuant to government-issued "material, design, *and performance* specifications." *Williams*, 990 F.3d at 860 (emphasis added).

Plaintiffs also argue that this Court's order denying summary judgment for defendants on their government contractor defense has foreclosed 3M's claim that it acted under federal officers (Pl. Mem. 24). The Court's order did no such thing. The Court did not address the "acting under"

---

criminal case under the federal officer removal statute on the basis that the defendant was indicted for actions that occurred while he was Chief of Staff. *Id.* at 1336. The Eleventh Circuit concluded that remand was required because the text of the statute, which provides for removal *by* "any officer . . . of the United States" (28 U.S.C. § 1442(a)(1)), "does not apply to *former* federal officers." 88 F.4th at 1338. Plaintiffs here argue that *Meadows* compels remand because 3M no longer makes AFFF. Pl. Mem. 25 n.12. But the Fourth Circuit has not adopted *Meadows*' holding, which the Eleventh Circuit acknowledged was unsupported by any caselaw "in the 190-year history of the federal officer removal statute." 88 F.4th at 1342. Moreover, 3M did not remove these cases on the ground that it is or was itself an "officer"; 3M removed these cases based on different text in § 1442(a)(1) authorizing removal by "any person acting under" a federal officer. *Meadows* did not address that provision, and so did nothing to abrogate the many cases upholding removal by private defendants based on their past manufacture of military products. Courts have "decline[d] to twist the Eleventh Circuit's holding" to remand cases on the basis that private defendants "formerly acted under the actions of" a federal officer. *Goffner v. Avondale Indus., Inc.*, 2024 WL 2844542, at *4 (E.D. La. June 5, 2024); *accord Michigan v. Keely*, 2024 WL 5066093, at *2 (W.D. Mich. Dec. 11, 2024) (collecting cases). In any event, *Meadows* is also distinguishable because 3M is *still* acting under federal officers: 3M no longer makes AFFF but continues to make other MilSpec products for the federal government. Finally, applying *Meadows* as suggested by Plaintiffs would lead to the absurd result that any entity selling a product to the federal government pursuant to military specifications would have the government contractor defense evaporate after the sale was completed—a result that would undermine the very purpose of the doctrine.

[17] *See, e.g.*, 1969 MilSpec § 3.2, ECF No. 1966-1; 2017 MilSpec § 3.2, ECF No. 1966-11.

[18] Plaintiffs cite *Parks v. Guidant Corp.*, 402 F. Supp. 2d 964 (N.D. Ind. 2005), which merely held—like the Supreme Court in *Watson*—that a manufacturer is not "acting under" the federal government whenever it complies with federal regulations. *Id.* at 968; *see Watson*, 551 U.S. at 152. *Parks* did not involve any government product specifications.

requirement of the federal officer removal statute, but rather, assessed whether defendants had established the government contractor defense as a matter of law. *See In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *3-5; *see also infra* at 18-26. The "acting under" requirement is assessed independently, and it is met here regardless of whether 3M ultimately prevails on its federal defense. Plaintiffs cite no contrary caselaw requiring the Court to reconsider its prior rulings that AFFF manufacturers acted under federal officers in producing MilSpec AFFF. *See, e.g.*, *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266 at *2.[19]

### C.    Plaintiffs' Claims Are Related To 3M's Manufacture Of MilSpec AFFF.

These cases also are "for or relating to" acts taken at the direction or guidance of a federal officer. 28 U.S.C. § 1442(a)(1). A lawsuit is "for or relating to" an act under color of federal office if there is "a *connection or association* between the act in question and the federal office." *Sawyer*, 860 F.3d at 258 (internal quotation marks omitted). Thus a defendant "must show it is being sued for an act or acts that it claims were done under—or related to acts done under—federal authority." *Maryland*, 130 F.4th at 389. Courts "credit Defendants' theory of the case when determining whether there is such a connection or association." *Id*. (internal quotation marks omitted).

Under the Fourth Circuit's decision in *Maryland*, 3M clearly has satisfied this element. *Maryland* is indistinguishable with respect to the relationship between Plaintiffs' claims and 3M's conduct in manufacturing MilSpec AFFF. In *Maryland*, 3M plausibly alleged that "the PFAS from 3M's non-AFFF products" putatively at issue in the State of Maryland's and the State of South Carolina's lawsuits "indistinguishably commingled with the PFAS from 3M's Military AFFF." 130 F.4th at 386. The Court had "no trouble considering as plausible 3M's allegations that some

---

[19] Plaintiffs do cite some cases in which courts concluded *both* that the defendant was not "acting under" federal authority *and* that the defendant was not subject to "reasonably precise" government specifications. Pl. Mem. 24; *see, e.g.*, *Cabalce v. VSE Corp.*, 922 F. Supp. 2d 1113, 1123-1125 (D. Haw. 2013), *aff'd sub. nom. Cabalce v. Thomas E. Blanchard & Assocs., Inc.*, 797 F.3d 720 (9th Cir. 2015). But it does not follow that the "acting under" and "colorable federal defense" requirements may be conflated. *See, e.g.*, *Holdren v. Buffalo Pumps, Inc.*, 614 F. Supp. 2d 129, 149 (D. Mass. 2009) (ruling that defendants were "acting under" federal authority in producing military equipment even though removal was improper because there were no "reasonably precise" specifications governing the defendant's allegedly deficient provision of product warnings).

15

of the PFAS contamination at issue even in the non-AFFF complaints may come from their Military AFFF production," because the States had "plead general PFAS contamination near military bases where 3M alleges it sold Military AFFF." *Id*. at 390. Notwithstanding the States' alleged disclaimers of AFFF-related relief, the Fourth Circuit concluded that 3M had "satisfied the nexus requirement" because the court could "plausibly infer that 3M's Military AFFF contributed to at least a 'portion of their relevant conduct.'" *Id*. at 392 (quoting *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 945 (7th Cir. 2020)). The Fourth Circuit endorsed 3M's argument that the "charged conduct related to [3M's] federal work" because "deciding whether certain PFAS contamination came from 3M's Military AFFF or from its non-AFFF products presents a challenging causation question . . . that will ultimately fall to a factfinder" who "must then apportion how much of a given sample of PFAS contamination came from Military AFFF compared to non-AFFF products." *Id*. at 391; *see id.* at 392. Because those questions implicate federal interests and 3M's federal contractor defense, the court concluded that 3M is entitled to "'present [its] version of the facts to a federal, not a state, court.'" *Id*. (quoting *Willingham*, 395 U.S. at 409).

The Fourth Circuit's analysis in *Maryland* applies on all fours in these cases. Here too, 3M alleged that the claimed PFAS contamination derives at least in part from the use, storage, or disposal of MilSpec AFFF, and that PFAS from MilSpec AFFF is commingled with PFAS from alleged "non-AFFF" sources. *See supra* at 7-8. A factfinder will have to decide the extent to which the alleged contamination in each case derived from 3M's MilSpec AFFF products and apportion the alleged contamination between MilSpec AFFF and non-AFFF sources. Under *Maryland*, these cases are therefore related to 3M's conduct under federal office for purposes of § 1442(a)(1).

Plaintiffs nominally contend that 3M cannot meet the "nexus" requirement (Pl. Mem. 25-27), but they offer no argument or evidence to support that contention. They do not (and cannot) argue that the Fourth Circuit's decision in *Maryland* is distinguishable—in fact they barely mention *Maryland* because they have no answer for it. They offer no argument or evidence to contradict 3M's allegations that the alleged PFAS contamination plausibly derived from MilSpec AFFF. Their argument that the MilSpec was not "reasonably precise" (*id*. at 25-26) has nothing to

do with this element of federal officer removal (and in any case is flawed, *see infra* at 18-22). They argue that their complaints do not allege that PFAS in their water supplies derives from MilSpec AFFF, but neither did the complaints at issue in *Maryland*, where the Fourth Circuit correctly credited 3M's theory that the PFAS nonetheless derived in part from MilSpec AFFF. 130 F.4th at 389.

In *only one* of these nine cases—*City of Columbia*—does the Plaintiff actually try to challenge the plausibility of 3M's allegations, but Plaintiff's arguments are not persuasive. City of Columbia argues that 3M's notice of removal is deficient "[o]n its face" (Pl. Mem. 32), supposedly because the military facilities identified by 3M are not on the same watersheds as its water intakes, so any "run-off" from those sites would not have impacted its water supply because it would have flowed in a different direction (*id*. at 31-32). That bare assertion cannot counter 3M's "plausible allegation" that PFAS in City of Columbia's water supply derived in part from MilSpec AFFF use at those nearby military sites. *Dart*, 574 U.S. at 89; *see Maryland*, 130 F.4th at 390. 3M supported this allegation with evidence showing that at least some PFAS releases from those military sites would migrate in the direction of Plaintiff's water sources. *See Columbia* NOR ¶ 29 (citing PFAS site inspections describing some AFFF releases at Fort Jackson flowing westward, *i.e.* in the direction towards City of Columbia's water intakes). Plaintiff does nothing either to address that evidence or to explain why it is insufficient to show a plausible connection between Plaintiff's water supply and MilSpec AFFF. *City of Columbia* thus relates to 3M's conduct in producing MilSpec AFFF (no less than the other eight cases here), and Plaintiffs fail to show otherwise.[20]

---

[20] Additionally, 3M's allegations in *City of Columbia* indicated that PFAS in the City's Broad River and Lake Murray water supplies may have derived from MilSpec AFFF use at facilities other than those specifically identified in the notice of removal. *See, e.g.*, *Columbia* NOR ¶ 32. Subsequent to 3M's removal of *City of Columbia*, 3M's ongoing investigations determined that (in addition to AFFF discharges at military installations identified in the *City of Columbia* notice of removal), PFAS in Lake Murray also plausibly derived from MilSpec AFFF use at the Army Aviation Support Facility Upstate (as alleged in 3M's notices of removal in other cases here involving Lake Murray). *See JMWSC* NOR ¶¶ 2, 31-33; *Saluda County* NOR ¶¶ 2, 30-32; *Lexington* NOR ¶¶ 2, 31-33. Plaintiffs do not purport to deny that PFAS from MilSpec AFFF at that military site may also have contributed to PFAS in City of Columbia's water sources.

**D.        3M Has Asserted A Colorable Federal Government Contractor Defense.**

As required to remove these cases, 3M pleaded a "*colorable*" government contractor defense. *Sawyer*, 860 F.3d at 255 (emphasis added). "A removing defendant faces a low bar to show that his federal defense is colorable. . . . To be colorable, [the defense] must only be plausible." *CaremarkPCS Health*, 140 F.4th at 198 (internal quotation marks omitted). A federal defense thus is colorable "unless it is immaterial and made solely for the purpose of obtaining jurisdiction or wholly insubstantial and frivolous." *Moore v. Elec. Boat Co.*, 25 F.4th 30, 37 (1st Cir. 2022) (internal quotation marks omitted); *accord Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 297 (5th Cir. 2020). Under the liberal standards applicable to federal officer removal, a defendant "need not win his case before he can have it removed." *Willingham*, 395 U.S. at 407; *see also id.* (the defense need not be "clearly sustainable"); *Cuomo v. Crane Co.*, 771 F.3d 113, 116 (2d Cir. 2014) ("Precisely in those cases where a plaintiff challenges the factual sufficiency of the defendant's defense, the defendant should 'have the opportunity to present [his] version of the facts to a federal, not a state, court.'" (quoting *Willingham*, 395 U.S. at 409)).

3M's notices of removal specifically pleaded each of the required elements of the government contractor defense that the Supreme Court recognized in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988). Under *Boyle*, a defendant is not liable for allegedly defective products "when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id*. at 512. "Case law since *Boyle* has expanded the circumstances where a contractor may satisfy the first prong of *Boyle* without the necessity of showing that the government's specifications were 'reasonably precise,'" holding that "a contractor may satisfy the first prong of *Boyle* by showing that the government continued to use the product after acquiring full knowledge of its defects and risks." *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *4. 3M's notices of removal pleaded those elements of its colorable federal defense: 3M alleged that the government approved rigorous specifications for AFFF both in issuing the MilSpec itself and in continuously purchasing and

18

using MilSpec AFFF over decades; 3M alleged that the military placed 3M's MilSpec AFFF products on its Qualified Products List based on a determination that they conformed to the MilSpec; and 3M alleged that the government was aware of the alleged environmental and health hazards of PFAS-containing MilSpec AFFF yet continued to purchase and use the products.[21]

Plaintiffs argue that 3M cannot establish the *Boyle* elements because the government did not approve "reasonably precise" specifications for AFFF and because 3M did not sufficiently warn the government of product-related risks. Those arguments are meritless. Plaintiffs confuse the governing legal standard: 3M had to plead only a "*plausible*" defense under *Boyle* to remove these cases, *CaremarkPCS Health*, 140 F.4th at 198 (emphasis added), yet Plaintiffs essentially challenge the *merits* of 3M's defense. The Court cannot evaluate the merits of 3M's government-contractor defense at this stage. The purpose of the removal analysis is only to decide whether 3M's has plausibly alleged a colorable federal defense; if so, removal is appropriate.

In addition, Plaintiffs are wrong on the substance of their argument. Plaintiffs rely heavily on this Court's order denying 3M and other defendants summary judgment on the merits of their government contractor defense, *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357; *see* Pl. Mem. 10, but such reliance is misplaced for two reasons. First, to the extent that the Court made any rulings adverse to 3M that relate to the *merits* of 3M's federal defense, those rulings cannot show that 3M lacked a *colorable* federal defense sufficient to remove this case. Second, the Court's summary-judgment order in fact *supports* 3M's removal of this case based on its colorable federal defense, because the Court found that 3M's government contractor defense presents triable issues of fact, demonstrating that 3M's defense is necessarily colorable, at a minimum.

---

[21] *See Columbia* NOR ¶¶ 41-48; *Cheraw* NOR ¶¶ 45-53; *Georgetown* NOR ¶¶ 43-51; *GCWSD* NOR ¶¶ 43-51; *JMWSC* NOR ¶¶ 44-52; *Saluda County* NOR ¶¶ 43-51; *Whitmire* NOR ¶¶ 43-51; *Lexington* NOR ¶¶ 44-52; *Berkeley County* NOR ¶¶ 46-54.

### 1.    The Court's Prior MDL Rulings Support 3M's Plausible Defense Based On The MilSpec's "Reasonably Precise" Specifications.

As a threshold matter, the Court's summary-judgment ruling in a different case does not control here. 3M needed to plead only a colorable, plausible federal defense for removal to be appropriate. *See CaremarkPCS Health*, 140 F.4th at 198. Any merits ruling that the Court has made or might make in the future does not determine whether 3M properly removed these cases.

By contrast, this Court *repeatedly* has found that AFFF manufacturers have "a 'colorable' federal defense of government contractor immunity" because they "contend[ed] that [their] AFFF products were manufactured according to the U.S. military's MilSpec specifications, which included specifications for the chemical class that includes PFOS/PFOA," and because they also alleged that they "adequately informed the U.S. military of dangers associated with its AFFF products of which the military was not already aware" by "point[ing] to materials" in which the government "acknowledged . . . concerns with PFOS/PFOA in drinking water." *In re AFFF Prods. Liab. Litig.*, 2019 WL 2807266, at *3; *see* Order 4, ECF No. 320; Order 4-5, ECF No. 325; Order 4, ECF No. 2559; *accord Nessel*, 2021 WL 744683, at *4 (finding that AFFF manufacturers established a colorable federal defense because "the Government provided specifications for the MilSpec"); *Ayo*, 2018 WL 4781145, at *9-15. 3M removed these cases based on substantially similar allegations, and there is no reason for the Court to reach any different conclusion here.

As those orders show, 3M properly removed these cases based on its plausible allegation that the AFFF MilSpec is a "reasonably precise" military specification that expressly required the use of AFFF (among numerous other requirements on AFFF's physical characteristics, performance, and environmental impact).[22] Plaintiffs point to the Court's summary-judgment finding that the MilSpec is "not reasonably precise" under *Boyle* (*In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *8), and argue that that ruling precludes removal here. Pl. Mem. 12-13. But the Court's summary-judgment finding, based on a different record developed at a different stage

---

[22] *See Columbia* NOR ¶ 44; *Cheraw* NOR ¶ 48; *Georgetown* NOR ¶ 46; *GCWSD* NOR ¶ 46; *JMWSC* NOR ¶ 47; *Saluda County* NOR ¶ 46; *Whitmire* NOR ¶ 46; *Lexington* NOR ¶ 47; *Berkeley County* NOR ¶ 49.

in litigation, is not inconsistent with the *plausibility* of 3M's allegation that the MilSpec is "reasonably precise." Plaintiffs also point to the Court's supposed ruling that the AFFF MilSpec is a performance specification (Pl. Mem. 2-3; *see In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at \*7), but that finding does not bear on the removal analysis in any meaningful way. In fact, performance specifications may qualify as "reasonably precise" specifications under *Boyle* when they "constrain the contractor's design choices"—as the MilSpec here does by "compel[ling] manufacturers to include [PFAS] in their formulations." *Ayo*, 2018 WL 4781145, at \*10-12.

Particularly instructive is the approach taken by another MDL court—the court overseeing the *In re 3M Combat Arms Earplug Prods. Liab. Litig.* MDL—which has also had to address how a summary-judgment ruling on the government contractor defense impacts subsequent rulings on motions to remand under the federal officer removal statute. In January 2020, that court denied hundreds of motions to remand based on its conclusion that 3M had a "plausible" government contractor defense and therefore properly removed the cases based on federal officer jurisdiction. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 365617, at \*5 (N.D. Fla. Jan. 22, 2020). In July 2020, however, the court *granted* summary judgment *for plaintiffs* on 3M's government contractor defense, concluding based on the record that "the government contractor defense is not available" to 3M or other defendants. *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 474 F. Supp. 3d 1231, 1257 (N.D. Fla. 2020). Subsequently, the court addressed additional motions to remand. Considering the impact of the court's summary judgment order on those additional motions, the court concluded that, "because the summary judgment standard substantially differs from the plausibility standard for removal, the Court's Summary Judgment Order *does not impact* the Court's analysis in the First Remand Order or its finding that Defendants advanced a colorable federal defense." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 WL 5835311, at \*2 (N.D. Fla. Oct. 1, 2020); *see id.* ("When considering a motion for summary judgment, the Court examines the record to determine whether there are any genuine disputes of material fact . . . . In contrast, no determination of fact is required at the removal stage. . . . Rather, the Court examines whether the movant has made *plausible* jurisdictional allegation[s] . . . ."

(internal quotation marks omitted)). The court thus denied the plaintiffs' motions to remand, ruling that the defendants had met the requirements of the federal officer removal statute "consistent with the First Remand Order." *Id.* at \*4; *accord LeBlanc v. Huntington Ingalls Inc.*, 2025 WL 1481961, at \*3 (E.D. La. May 23, 2025) (rejecting plaintiff's argument that the defendant's "asserted federal defenses are not colorable '[i]n light of the many rulings' rejecting them on summary judgment," because "the likelihood of success of [those] defenses under a summary-judgment standard is immaterial" when "[t]he standard for removal under § 1442(a) is colorability"); *LeBoeuf v. Huntington Ingalls, Inc.*, 2025 WL 1403139, at \*3 (E.D. La. May 15, 2023) (similar).

Similarly here, this Court's summary-judgment order does nothing to contradict the Court's previous orders denying remand. Those orders concluded that AFFF manufacturers properly removed cases because they asserted a *colorable* federal government contractor defense based on the AFFF MilSpec's "reasonably precise" specifications, and for the same reason, 3M has shown a colorable government contractor defense in these cases. The Court's summary judgment order was based on a record and a legal standard that do not apply here, and the Court should adhere to its prior orders on motions to remand. The different outcomes at different stages of litigation make perfect sense: A defendant with a plausible federal defense is entitled to have a federal court adjudicate the defense, even though the court ultimately may rule against the defendant or conclude that the defense is unavailable.[23] As the Fourth Circuit has explained, "[n]othing in the federal removal statutes authorizes the remand of a case that has been properly removed under § 1442(a)(1) on the ground that the [defendant's] immunity defense is later rejected"—in such circumstances, a district court has "no right to decline to exercise jurisdiction over the removed action." *Jamison v. Wiley*, 14 F.3d 222, 239 (4th Cir. 1994).[24]

---

[23] That includes the right to a federal appeals court, in the event that 3M were to decide at an appropriate time to challenge the Court's rulings on the availability of 3M's defense on appeal.

[24] Although Plaintiffs claim that MilSpec AFFF was commercially available for sale to non-military users (Pl. Mem. 13-14), 3M's production of AFFF in accordance with a MilSpec suffices for 3M to invoke its defense. *See Ayo*, 2018 WL 4781145, at \*13 (whether MilSpec AFFF

### 2.     3M Plausibly Pleaded Its Federal Defense Based On "Continuing Use."

Moreover, when this Court denied 3M's and other AFFF manufacturer defendants' motions for summary judgment on their government contractor defense, the Court did *not* in any way reject 3M's ability to assert its government contractor defense. Far from it: The Court concluded that "there are numerous material factual disputes in this voluminous record that make disposition of the issue of government contractor immunity by summary judgment inappropriate." *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357, at *15. The Court's ruling made clear that "[t]hese disputed issues of material fact, vigorously contested by the parties, require a full factual presentation at trial and a resolution by a final jury verdict." *Id*. Under that ruling, 3M is entitled to make "a full factual presentation at trial" of the facts supporting its defense, so that its defense may be resolved "by a final jury verdict." *Id*.; *see id.* at *12 (holding that "the parties will have the opportunity at trial to litigate, and the jury to decide, these hotly contested issues").[25]

The Court's ruling that 3M's government contractor defense raises triable issues of fact necessarily means that the defense is at least colorable for purposes of removal. The existence of triable issues means that 3M's defense is at least "plausible" (*CaremarkPCS Health*, 140 F.4th at 198), and is neither "immaterial" nor "wholly insubstantial and frivolous" (*Moore*, 25 F.4th at 37). 3M is thus entitled to a federal forum to present its version of the facts to, and have its federal defense decided by, a federal jury. *See Willingham*, 395 U.S. at 407 ("[o]ne of the primary purposes of the [federal officer] removal statute" is to have federal "defenses litigated in the federal courts").

The Court ruled that 3M's defense raised triable issues of fact *even though* the Court also found, based on "the record before the Court," that "the AFFF MilSpec is not a reasonably precise specification under the first prong of *Boyle*." *In re AFFF Prods. Liab. Litig.*, 2022 WL 4291357,

---

was sold "to non-federal agencies is not determinative; the critical question is whether the government exercised discretion with respect to the allegedly defective design element").

[25] Plaintiffs speciously cite the Court's order in the *City of Stuart, Florida* bellwether case, in which the Court granted in part a motion *in limine* to exclude evidence related to the government contractor defense—but that order was based on the fact that the defendants in *City of Stuart* agreed not to assert the government contractor defense because that case did not relate to MilSpec AFFF. *See In re AFFF Prods. Liab. Litig.*, 2023 WL 3521472, at *1 (D.S.C. May 12, 2023).

23

at *8. 3M respectfully disagrees with that aspect of the Court's prior ruling, but even Plaintiffs recognize that it does not prevent 3M from asserting its defense, because the first *Boyle* element may be established in another way: "[A] contractor may satisfy the first prong of *Boyle* by showing that the government continued to use the product after acquiring full knowledge of its defects and risks." 2022 WL 4291357, at *4; *see Ramey v. Martin-Baker Aircraft Co.*, 874 F.2d 946, 950 (4th Cir. 1989) ("even though the military had not developed or approved the specifications for the component at issue, '[t]he length and breadth of the [military's] experience with the component—and its decision to continue using it—amply establish government approval of the alleged design defects.'" (quoting *Dowd v. Textron, Inc.*, 792 F.2d 409, 412 (4th Cir. 1986))).

So, even though the Court found on the record before it that the AFFF MilSpec is not a "reasonably precise specification" under *Boyle*, the Court appropriately went on to conclude that 3M could establish that element on the merits by showing at trial "that the government's continuous use of the product was with full knowledge of its defects and risks and that the contractor warned the government of defects and risks known to it but not the government, as required under prong three" of *Boyle*. 2022 WL 4291357, at *8; *see id*. at *12 (recognizing "material factual disputes" regarding 3M's defense under the continued-use doctrine); *id*. at *15.

In each of these cases here, consistent with the Court's summary-judgment order, 3M has pleaded that same colorable federal defense by alleging not only that the AFFF MilSpec is reasonably precise but also that the government continued to use and purchase 3M's MilSpec AFFF products for decades, including after 3M stopped producing MilSpec AFFF and the government indisputably was aware of the alleged risks of PFAS contained in MilSpec AFFF. 3M's notices of removal alleged that the government continued to purchase and use 3M's MilSpec AFFF products with awareness of their alleged risks and made a discretionary determination to

purchase and use the products by weighing their benefits against those risks.[26] Those allegations are sufficient to support a plausible defense under the continued-use doctrine.[27]

Even though Plaintiffs recognize that 3M may establish its government contract defense based on the continued-use doctrine (Pl. Mem. 15), they argue that 3M has failed to plead a colorable defense because the "undisputed record" supposedly shows that 3M withheld material information from the government related to the risks of AFFF (*id*. at 16, 19). But 3M has plausibly alleged the defense in its notices of removal, which is what matters at this stage. Plaintiffs seek to have the Court resolve their motions to remand based on further findings on the *merits* of 3M's defense, but that is patently improper under the legal standards applicable at the removal stage. 3M was not required to *prove* its defense on the merits to remove these cases. *Willingham*, 395 U.S. at 407 (holding that a defendant "need not win his case before he can have it removed"). 3M needed only to plead a "colorable" defense based on "plausible" allegations. *CaremarkPCS Health*, 140 F.4th at 198; *see Cuomo*, 771 F.3d at 116. 3M plausibly alleged its defense in these cases based on the continued-use doctrine, and Plaintiffs—whose motions to remand simply ignore the governing legal standards—cannot argue otherwise. As the removing defendant, 3M is entitled to "the benefit of all reasonable inferences from the facts alleged." *Baker*, 962 F.3d at 94.

In any event, Plaintiffs' characterizations of the factual record are incorrect; as the Court is aware, the record is hotly disputed. For example, Plaintiffs assert that 3M allegedly failed to timely disclose the presence of PFOS in human blood; that 3M allegedly failed to timely disclose that PFOS was toxic; that 3M's alleged non-disclosures purportedly delayed regulatory action by the U.S. Environmental Protection Agency ("EPA") to address PFOS/PFOA and prolonged the military's use of MilSpec AFFF; and that 3M denies that PFOS/PFOA cause human health effects.

---

[26] *See Columbia* NOR ¶¶ 44, 47; *Cheraw* NOR ¶¶ 48, 51; *Georgetown* NOR ¶¶ 46, 49; *GCWSD* NOR ¶¶ 46, 49; *JMWSC* NOR ¶¶ 47, 50; *Saluda County* NOR ¶¶ 46, 49; *Whitmire* NOR ¶¶ 46, 49; *Lexington* NOR ¶¶ 47, 50; *Berkeley County* NOR ¶¶ 49, 52.

[27] Plaintiffs cited several cases supposedly showing that 3M cannot establish a colorable federal defense because the MilSpec was not "reasonably precise" (Pl. Mem. 11), but none of these cases addressed the continued-use doctrine.

25

Pl. Mem. 16-22. But 3M disputes that it withheld any material knowledge from the government. In fact, 3M disputed each of Plaintiffs' contentions in its summary-judgment briefing based on record evidence showing that 3M disclosed the relevant alleged potential risks of PFOS/PFOA; the government independently knew of such risks; the government *indisputably* knew of such risks many years before EPA or the military took action to address PFOS/PFOA; and that (notwithstanding 3M's disclosures and the government's knowledge related to *potential* risks of PFOS/PFOA) a direct causal link to human health effects has not yet been scientifically established.[28] Based on the parties' briefing, this Court concluded that 3M's defense raised triable issues of fact. 2022 WL 4291357, at *12. That entitles 3M to a federal forum here.

## II.    The Court Has Diversity Jurisdiction Over *Town Of Cheraw*.

The Court also should deny Plaintiff Town of Cheraw's motion to remand because the Court has diversity jurisdiction over the action under 28 U.S.C. §§ 1332(a) and 1441(a), in addition to federal officer jurisdiction under 28 U.S.C. § 1442(a). A defendant may remove a case to federal court based on diversity jurisdiction when the parties are completely diverse and the amount in controversy exceeds $75,000 exclusive of interest and costs. 28 U.S.C. § 1332(a); *see, e.g.*, *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 170 (4th Cir. 2014).

As 3M pleaded in its notice of removal, Plaintiff Town of Cheraw is a South Carolina citizen that has brought suit against eleven defendants—none of which is a citizen of South Carolina or was a citizen of South Carolina at the time of removal—and Plaintiff has made a request for wide-ranging damages that plainly seeks more than $75,000, including the costs for upgrading its water treatment plant to remove PFAS and for monitoring and testing its water supply for PFAS. *Cheraw* NOR ¶¶ 55-74.[29] That shows that the Court has diversity jurisdiction.

---

[28] *See* Def. Mem. of Law In Support of Mot. For Partial Summ. J. 19-35, ECF No. 1965-1; 3M Mem. of Law In Support of Def. Mot. For Partial Summ. J. 8-17, ECF No. 2347; 3M Reply In Support of Mot. For Partial Summ. J. 5-15, ECF No. 2437.

[29] As 3M explained (*Cheraw* NOR ¶ 68), one of the defendants, Delta Mills, Inc., used to be a Delaware corporation with its principal place of business in South Carolina—but because the corporation is now dissolved, it is no longer a citizen of South Carolina and is a citizen of Delaware only. *See Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 292 (4th Cir. 1999) (holding that

Plaintiff's motion to remand does not challenge 3M's removal of *Town of Cheraw* based on diversity jurisdiction. Plaintiff's memorandum is entirely limited to challenging federal officer jurisdiction and does not address diversity jurisdiction. Plaintiff thus offers no reason to doubt either that the parties are completely diverse or that the amount-in-controversy requirement is met.

## III.    The Court Should Not Transfer These Cases Out Of The MDL.

3M also properly removed these cases to the MDL docket. There is no basis for Plaintiffs' alternative request that the Court transfer these cases so that they may proceed in federal court, but separately from the MDL, and separately from each other in four different divisions of the District of South Carolina.[30] These putative "non-AFFF" cases concerning alleged PFAS contamination of drinking water and wastewater in South Carolina are clearly related to cases in the MDL—in addition to being within the scope of the MDL as it has been established by the JPML—and should therefore proceed before the MDL Court in the interest of judicial efficiency.

### A.    These Cases Are Related To Cases In The MDL.

After the JPML established this MDL, this Court entered a consolidation order pursuant to Fed. R. Civ. P. 42, in which the Court consolidated for pretrial purposes all cases related to the

---

a dissolved corporation no longer had the citizenship of its former principal place of business). As 3M also explained (*Cheraw* NOR ¶ 67 & n.29), one other defendant, Burlington Industries, Inc., has been placed in receivership by a South Carolina state court that appointed an individual who allegedly is a South Carolina citizen as its receiver—but the receiver has no control over or connection to the company outside of those proceedings, so his appointment does not defeat diversity. *See Messer v. American Gems, Inc.*, 612 F.2d 1367, 1375 (4th Cir. 1980) (disregarding citizenship of administratrix appointed to handle litigation on behalf of out-of-state citizens). There are no other alleged bases for deeming any of the defendants to be a South Carolina citizen.

[30] Plaintiffs seemingly move to transfer six cases to three different divisions of this District. They move to transfer *City of Columbia*, *JMWSC*, and *Town of Lexington* to the Columbia Division. Pl. Mem. 29; *JMWSC* Mem. 34, ECF No. 6962-1; *Lexington* Mem. 29, ECF No. 6987-1. They move to transfer *Town of Cheraw* to the Florence Division. *Cheraw* Mem. 34, ECF No. 6970-1. They move to transfer *Saluda County* to the Greenwood Division. *Saluda County* Mem. 35, ECF No. 6961-1. They move to transfer *Town of Whitmire* and seem to suggest that it should proceed in the Greenwood Division, too. *Whitmire* Mem. 28, ECF No. 6978-1. Plaintiffs do not deny that *Berkeley County*, *GCWSD*, and *City of Georgetown* should proceed here in the Charleston Division, but move to "transfer" those cases "from the AFFF MDL docket." *Berkeley County* Mem. 34, ECF No. 6998-1; *GCWSD* Mem. 34, ECF No. 6969-1; *Georgetown* Mem. 35, ECF No. 6964-1.

subject matter of the MDL that had been or would be transferred to, filed in, or removed to this Court. *See* CMO No. 1 ¶¶ 1-3, ECF No. 3. As relevant here, the Court consolidated "all related cases (*i.e.*, civil actions where plaintiff(s) allege injuries or damages caused by groundwater contaminated with chemicals found in aqueous film-forming foam products) . . . removed to this Court, including related cases . . . removed to . . . this Court after the date of th[e] Order." *Id*. ¶ 1.

Complying with the Court's order, 3M removed these cases from South Carolina state court directly to the MDL docket because each of these cases is "related" to AFFF cases in the MDL. *Id*. Although these cases do not expressly assert AFFF claims, they do assert claims for injuries and damages from alleged contamination of drinking water supplies caused by the "chemicals found in" AFFF—namely PFAS, including PFOA and PFOS. *Id*. They were thus subject to the Court's consolidation order upon removal, and 3M accordingly filed its notices of removal on the MDL docket. At the time of removal, 3M's Responses to Local Rule 26.01 Interrogatories identified each of these cases as an "action that is related in whole or in part to" the cases in the MDL, including other cases alleging contamination of drinking water sources in South Carolina. D.S.C. L.R. 26.01; *see* 3M's Resps. To L.R. 26.01 Interrogs., ¶ E (identifying cases as "related" to AFFF cases in the MDL "alleging PFAS contamination and/or exposure in South Carolina").

Plaintiffs concede that when cases related to the MDL are filed in or removed to the District of South Carolina, they are "automatically" consolidated with the MDL. Pl. Mem. 34. Under JPML rules, the JPML has no role to play in determining whether cases filed in or removed to the District of South Carolina should be transferred to this MDL. JPML Rule 7.2 provides that "[p]otential tag-along actions filed in the transferee district do not require Panel action," and parties should seek assignment to the MDL "in accordance with applicable local rules." JPML R. 7.2(a).

Plaintiffs' only argument for transferring these cases away from the MDL is that the JPML has denied transfer of some putative "non-AFFF" PFAS cases to the MDL (Pl. Mem. 29-35), but that argument is irrelevant to the key issue here. Those JPML orders considered only whether certain putative "non-AFFF" cases filed *outside* South Carolina should be transferred to this District for inclusion in the MDL, or instead should proceed in other federal districts where they

28

were either filed or removed. As Plaintiffs note, those orders imposed on 3M a "burden" of persuading the JPML that transfer of putative "non-AFFF" actions filed outside South Carolina "will not undermine the efficient progress of the MDL." Pl. Mem. 30 (quoting Order 2, *In re AFFF Prods. Liab. Litig.*, MDL No. 2873, ECF No. 541 (J.P.M.L. Dec. 18, 2019)). Those JPML orders do not apply here. *These* cases were filed in South Carolina state courts and properly removed to this District, so the issue here is simply whether this Court should hear the cases in coordination with the MDL, or instead whether the cases should be heard separately from the MDL by other judges in this District. That question is decided under the local rules, which call for assignment to the same judge whenever it "would entail substantial duplication of labor if [they] were heard by different judges." D.S.C. L.R. 26.01(E). Indeed, this Court's consolidation order deemed actions like these involving the same PFAS "chemicals" found in AFFF (like PFOS/PFOA) to be "related" to the MDL and consolidated such actions in the MDL for pretrial purposes.

So even if these cases were outside the scope of the MDL as specified by the JPML (they are not, as explained below, and consistent with the Fourth Circuit's decision in *Maryland*), this Court previously has found that cases may be "related" to the MDL and properly before the MDL Court even if they were technically outside the scope of the MDL as specified by the JPML's transfer orders. Thus this Court ruled that certain insurance-coverage actions concerning AFFF lawsuits are "related" to the MDL *regardless* of whether they are within the scope of the MDL. *See In re AFFF Prods. Liab. Litig.*, 2023 WL 6846676, at *4 n.2 (D.S.C. Oct. 17. 2023).

Similarly here, even ignoring the fact that these cases will involve MilSpec AFFF and the government contractor defense, these cases unquestionably are related to cases and sites already in the MDL, and it would promote judicial efficiency for this Court to hear them in coordination with the MDL. These cases relate to alleged contamination in South Carolina with the same PFAS chemicals contained in AFFF at issue in the MDL; this Court is already familiar with the complex issues raised here concerning the chemical properties of PFAS and the defendants' knowledge over time of their environmental effects; and this Court has devoted substantial time managing

29

discovery and pretrial proceedings similar to those necessary here.[31] It will be far more efficient for this Court to oversee these cases in coordination with the MDL than to have them transferred to several different divisions where multiple other judges would need to start from scratch.[32]

It is particularly appropriate for these cases to be coordinated with the MDL because the MDL includes several actions that, like these cases, bring claims for PFAS contamination of drinking water and wastewater *in South Carolina*. The South Carolina Attorney General has filed two actions seeking to recover for alleged PFAS contamination of South Carolina's natural resources, including drinking water, from "AFFF" and "non-AFFF" sources respectively—and both those actions are pending in the MDL (the latter on remand from the Fourth Circuit). *See* AG AFFF Compl. ¶¶ 130-139; Compl. ¶¶ 133-161, *South Carolina v. 3M Co.*, No. 2:23-cv-05979 (D.S.C.), ECF No. 1-1 ("AG PFAS Compl."). The MDL also includes putative class actions to recover for alleged AFFF contamination of drinking water and wastewater on behalf of South Carolina water providers and wastewater service providers. *See* Compl. ¶ 239, *Comm'rs. of Pub. Works of the City of Charleston v. 3M Co.*, No. 2:23-cv-01357 (D.S.C.), ECF No. 1; Compl. ¶ 233, *Comm'rs. of Pub. Works of the City of Charleston v. 3M Co.*, No. 2:23-cv-01075 (D.S.C.), ECF No. 1. The allegedly contaminated water and wastewater at issue in these cases substantially overlaps the sweeping claims at issue in those lawsuits—indeed, the State's lawsuits encompass PFAS contamination from both AFFF and non-AFFF sources of drinking water in every river basin in South Carolina, so they necessarily overlap with these cases, each of which is related to

---

[31] To the extent that Plaintiffs' motion includes any request to transfer these cases *before* the Court rules on their motions to remand, that would clearly be inefficient, as this Court has decided similar motions to remand before and is already familiar with the issues raised by Plaintiffs' motions.

[32] Although Judge Austin is presiding over a PFAS case in the Florence Division, that is a site-specific case filed by individual property owners seeking damages from alleged PFAS releases from a particular facility, the Galey & Lord plant in Darlington County. *See* Compl., *Weatherford et al. v. E.I. du Pont de Nemours & Co.*, No. 4:22-cv-01427 (D.S.C.), ECF No. 1-1. Plaintiffs here do not suggest that their cases should be coordinated with that case. In any event, the MDL Court unquestionably has far greater experience with the issues raised by PFAS litigation filed by water providers, including from presiding over 3M's class-action settlement of water provider lawsuits. *See* Order on Final Approval of 3M Class Action Settlement, ECF No. 4754 (Mar. 29, 2024).

PFAS contamination of some of those same surface water bodies. *See* AG AFFF Compl. ¶¶ 131-139; AG PFAS Compl. ¶¶ 133, 136. Additionally, the MDL includes numerous cases filed by individual plaintiffs alleging personal injuries from consuming drinking water in South Carolina. There can be no doubt that these cases are related to numerous cases in the MDL, and assignment of these cases to the MDL Court would eliminate the duplication of work by different judges.[33]

To the extent that Plaintiffs argue that the MDL Court should hear their cases separate from the MDL, the Court also should deny their request. It makes no sense for PFAS cases before the MDL Court not to be efficiently coordinated with similar cases in the MDL, and it would be unfair to other MDL litigants if these cases were put on a separate track from other water provider cases.

**B.    Denying Transfer Is Consistent With JPML And MDL Precedents.**

The JPML's concerns over the manageability of the MDL are not implicated by allowing these cases to proceed before the MDL Court. Plaintiffs argue that the JPML previously had "denied a motion by 3M to define the scope of the MDL to encompass not just cases involving AFFFs, but all cases relating to 3M's manufacture, management, disposal, and sale of PFAS" due to certain "concerns for the manageability" of the MDL, including that a "'non-AFFF MDL'" would "'include far more site-specific issues.'" Order 2, *In re AFFF Prods. Liab. Litig.*, MDL No. 2873, ECF No. 3260 (J.P.M.L. Feb. 12, 2025) (quoting *In re AFFF Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1396 (J.P.M.L. 2018)); *see* Pl. Mem. 29. But permitting these cases involving alleged PFAS contamination and plausible commingling with MilSpec AFFF in South Carolina to proceed before this Court would not expand this Court's docket to include all "non-AFFF" PFAS cases. Additionally, many site-specific issues raised by these cases are already at issue in cases in the MDL related to alleged PFAS contamination across South Carolina, including the State's lawsuits.

---

[33] The City of Columbia argues that its case does not belong in the MDL because nearby military bases where MilSpec AFFF was used are not located on the same watersheds—the Saluda and Broad River watersheds—as its water supply. *See supra* at 17. But the City of Columbia cannot deny that the Saluda and Broad River watersheds are at issue in other MDL cases, including the State's PFAS lawsuits. *See* AG AFFF Compl. ¶¶ 131-139 & Figs. 1-3; AG PFAS Compl. ¶ 136.

Moreover, JPML precedents *support* coordination of these cases in the MDL. The JPML has routinely transferred even putative "non-AFFF" cases for coordination in the MDL when they arise from PFAS contamination of drinking water supplies already at issue in AFFF cases in the MDL.[34] Just last month, the JPML transferred *City of Savannah* to the MDL—a putative "non-AFFF" case seeking to recover for PFAS in the City of Savannah's drinking water supply—because a single personal-injury plaintiff in an AFFF case pending in the MDL had alleged injuries resulting from his consumption of drinking water provided by the City of Savannah. *See* Transfer Order 2-3, *In re AFFF Prods. Liab. Litig.*, MDL No. 2873, ECF No. 3536 (J.P.M.L. June 2, 2025). The JPML concluded that coordination with the MDL "is justified when such overlap exists." *Id*. at 2. But just such overlap exists here as well: 75 individual plaintiffs in the MDL—who allege injuries purportedly from drinking PFAS-contaminated water—have submitted an Amended Personal Injury Plaintiff Fact Sheet or Personal Injury Plaintiff Profile Form identifying one or more of the Plaintiffs in these nine water-provider cases as a source of *AFFF-contaminated water* to which they were exposed. Eight of the Plaintiffs in these actions (all except Town of Whitmire) are identified as water providers by personal-injury plaintiffs litigating their claims in the MDL. Under the JPML's *City of Savannah* order, these cases merit coordination in the MDL to avoid overlapping discovery and pretrial proceedings related to the exact same drinking water supplies.

Transfer of these cases simply is not warranted. Plaintiffs fail to identify any "good cause" for transferring these cases either to a different division of this District or away from the MDL. D.S.C. L.R. 3.01(C). Nor do they show that transfer would be "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Instead, misapplying JPML precedents, Plaintiffs argue that the cases do not sufficiently overlap the issues in the MDL because the complaints do not allege AFFF claims and purport to disclaim recovery for AFFF

---

[34] *See, e.g.*, Transfer Order 3, *In re AFFF Prods. Liab. Litig.*, MDL No. 2873, ECF No. 1927 (J.P.M.L. June 5, 2023) (transferring State of Illinois' putative "non-AFFF" lawsuit because "[i]t is sufficient that multiple [community water supply] complaints in the MDL involve the same water sources as the State of Illinois complaint," and therefore "transfer of *State of Illinois* is necessary to avoid overlapping discovery and duplicative pretrial proceedings").

contamination. Pl. Mem. 33. But numerous cases before the Court in the MDL include claims to recover for non-AFFF PFAS contamination in cases in which the plaintiffs purport to disclaim recovery for AFFF. The JPML has repeatedly transferred cases to the MDL involving both AFFF and non-AFFF PFAS contamination, even if plaintiffs allege disclaimers of recovery for AFFF.[35] Transfer here would be inefficient and would undermine the overall management of this MDL.

Plaintiffs also argue that these cases should be transferred away from the MDL because the Court previously remanded South Carolina's putative "non-AFFF" PFAS lawsuit in light of the State's alleged disclaimer of AFFF-related relief (Pl. Mem. 32)—but the Fourth Circuit reversed this Court's remand order. *Maryland*, 130 F.4th 380. If anything, the Fourth Circuit's decision shows that even putative "non-AFFF" PFAS cases are related to AFFF cases in the MDL and should proceed before the MDL Court when, as here, the cases present the "challenging causation question" of whether the "PFAS contamination came from 3M's Military AFFF or from its non-AFFF products," and the factfinder must "apportion how much of a given sample of PFAS contamination came from Military AFFF compared to non-AFFF products." *Id*. at 391. Especially when the Fourth Circuit has held that alleged commingling of PFAS from non-AFFF and MilSpec AFFF sources demonstrates a nexus between putative "non-AFFF" cases and 3M's production of MilSpec AFFFF for purposes of federal-officer removal, cases like these involving commingling of non-AFFF and AFFF PFAS sources in South Carolina should be coordinated with the MDL.

## CONCLUSION

The Court should deny Plaintiffs' motions to remand and motions to transfer.

---

[35] *See, e.g.*, Transfer Order 4 & n.5, *In re AFFF Prods. Liab. Litig.*, MDL No. 2873, ECF No. 1020 (J.P.M.L. June 7, 2021) (transferring State of Michigan's "non-AFFF" lawsuit, even though the State is "not seeking damages for AFFF-related damages," because the lawsuit involved "multiple locations at which PFAS contamination from both AFFF and non-AFFF sources is alleged").

Respectfully submitted,

July 30, 2025

s/ Brian C. Duffy
Brian C. Duffy (Fed ID No. 9491)
DUFFY & YOUNG, LLC
96 Broad Street
Charleston, SC 29401
(843) 720-2044
(843) 720-2047
bduffy@duffyandyoung.com

Daniel L. Ring, Esq.
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654
(312) 923-2625
dring@jenner.com

*Counsel for Defendant 3M Company*

34